No. 13-17132   [Dist Ct. No.: 3:12-CV-03288-WHO]

_____

IN THE
UNITED STATES COURT OF APPEAL
FOR THE NINTH CIRCUIT

_____

JOHN TEIXEIRA; et al.,
*Plaintiffs – Appellants,*

vs.

COUNTY OF ALAMEDA; et al.,
*Defendants – Appellees.*

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

**APPELLANTS' OPENING BRIEF**

_____

Donald E. J. Kilmer, Jr.
CA State Bar No.: 179986
1645 Willow Street, Suite 150
San Jose, California 95125
Voice: 408/264-8489
Fax: 408/264-8487
Don@DKLawOffice.com

*Charles W. Hokanson
CA State Bar No. 163662
4401 Atlantic Ave, Suite 200
Long Beach, California 90807
Voice: (562) 316-1476
Fax: (562) 316-1477
CWHokanson@TowerLawCenter.com

*Counsel of Record for Plaintiff - Appellants*

# CORPORATE DISCLOSURE STATEMENT

Appellant The CalGuns Foundation, Inc. ("CGF") is a non-profit organization organized and existing under the laws of the State of California with its principal place of business in San Carlos, California. CGF's supports the California firearms community by promoting education about California and federal firearms laws, rights and privileges, and defending and protecting the civil rights of California gun owners. It is not a publicly traded corporation.

Appellant Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization organized and existing under the laws of the State of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including California. SAF provides education and conducts research concerning constitutional rights to privately own and possess firearms, as well as the consequences of gun control. It also pursues legal action focused on those matters. It is not a publicly traded corporation.

Appellant California Association Of Federal Firearms Licensees,

Inc. ("Cal-FFL") is a non-profit industry association of firearms manufacturers, dealers, collectors, training professionals, shooting ranges, and others, advancing the interests of its members and the general public through strategic litigation, legislative efforts, and education.  It is not a publicly traded corporation.

All three of these institutional plaintiffs have provided significant funding for this suit.

Dated: March 14, 2014

/s/ *Charles Hokanson* ___
Charles W. Hokanson
Attorney for Appellants

# TABLE OF CONTENTS

Corporate Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Primary Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.      The Second Amendment Extends Beyond the Home. . . . . 11

          A.    The Seventh Circuit Holds that Second
               Amendment Rights Extend Beyond the Home. . . . . .12

          B.    The Seventh Circuit has Held that the Second
               Amendment Includes Ancillary Rights. . . . . . . . . . . 14

          C.    The Ninth Circuit has Recently Adopted
               The Approach of the Seventh Circuit. . . . . . . . . . . . .22

    II.    The Second Amendment Includes the Right to
          Acquire Firearms and the Right to Sell Them. . . . . . . . . .24

Appellants' Opening Brief                        *Teixeira v. Alameda Co.*

A.   Commerce in Firearms is Protected by
     The Second Amendment. . . . . . . . . . . . . . . . . . . . . . .24

B.   Alameda's Ordinance is Not Presumptively Valid . . .28

III.  Appellants Properly Alleged an Equal
      Protection Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Certificate of Compliance

Statement of Related Cases

# TABLE OF AUTHORITIES

**Cases**

. *Annex Books v. City of Indianapolis,*
 581 F.3d 460 (7th Cir. 2009) ...................................................... 15

*Carey v. Brown,*
 447 U.S. 455 (1980). ...................................................................... 6

*Carlin v. DairyAmerica*
 688 F.3d 1117 (9th Cir. 2012) ...................................... 6, 7, 10, 12

*City of Los Angeles v. Alameda Books, Inc.,*
 535 U.S. 425 (2002) .................................................................. 9, 14

*Desaigoudar v. Meyercord,*
 223 F.3d 1020 (9th Cir. 2000) ...................................................... 11

*District of Columbia v. Heller,*
 554 U.S. 570, 595 (2008). .................................................... *passim*

*Eatwell v. Beck,*
 41 Cal. 2d 128, 136, 257 P.2d 643 (1953) ................................... 35

*Ezell v. City of Chicago,*
 651 F.3d 684 (7th Cir. 2011) ................................................ *passim*

*District of Columbia v. Heller,*
 554 U.S. 570 (2008) ............................................................. *passim*

*Jackson v. State of Alabama State Tenure Com'n,*
 405 F.3d 1276 (11th Cir. 2005) .................................................... 36

*Leadsinger, Inc. v. BMG Music Publishing,*
 512 F.3d 522 (9th Cir. 2008). .................................................. 7, 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
 519 F.3d 1025 (9th Cir. 2008) .............................................. 11, 12

*McDonald v. City of Chicago,*
 130 S. Ct. 3020 (2010) ......................................................... *passim*

*Moore v. Madigan,*
 702 F. 3d 933 (7th Cir. 2102) ...................................................... 17

*Nordyke v. King,*
 681 F.3d 1041 (9th Cir. 2012). .................................................... 16

*People v. Banks*,
 53 Cal. 2d 370, 1 Cal. Rptr. 669, 348 P.2d 102 (1955) ................... 35

*Peruta v. County of San Diego,*
2014 U.S. App. LEXIS 2786 (9th Cir. 2014). ..................................16
*Police Department of Chicago v. Mosley,*
408 U.S. 92  (1972) ..................................................................6
*Carey v. Brown,*
447 U.S. 455 (1980). ..............................................................41
*Renton v. Playtime Theatres Inc.,*
475 U.S. 41 (1986) ..............................................................9, 14
*Thomas v. Bible,*
983 F. 2d 152 (9th Cir. 1993) ................................................36
*U.S. v. Chovan,*
735 F.3d 1127 (9th Cir. 2013) ...............................................25
*U.S. v. Marzzarella,*
614 F.3d 85, 89 (3d Cir. 2010)).............................................26

## Consitutional Provisions and Statutes

28 U.S.C. § 1291 .........................................................................4
28 U.S.C. § 1331 .........................................................................4
28 U.S.C. § 2201 .........................................................................4
28 U.S.C. § 2202.........................................................................4
42 U.S.C. § 1983 .........................................................................4
42 U.S.C. §1988...........................................................................4
US Const., Second Amendment ....................................... *passim*
US Const., Fourteenth Amendment........................................... *passim*

## Rules

Fed.R.Civ.Pro. 12(b) ...............................................................6
Fed.R.Civ.Pro. 65.....................................................................6

## <u>INTRODUCTION</u>

This case extends the current debate on the nature and scope of the SECOND AMENDMENT'S "*right to keep and bear arms*" into the realm of local land use restrictions relating to the commercial sale of firearms.

The regulation of commercial gun sales by federal and state law is already extensive and addresses such issues as: (1) customer base (by definition all gun buyers are law-abiding, because sales require criminal background checks); (2) registration of products (as of January 1, 2014, California mandates that all retail firearm transactions, not just handguns, require registration of the sale with the State of California); (3) inventory control (federal and state law already requires gun dealers to log the acquisition and disposition of all firearms that come into their store as inventory and leave as completed sales); and (4) the promulgation of safety training and safe storage of firearms (the State of California requires gun dealers to act as test proctors for safety exams and as instructors in safe handling demonstrations of the guns they sell, California also requires dealers to insure that gun buyers

have obtained the necessary equipment for the safe storage of their firearms in the home).

While not an exhaustive list, these state and federal rules leave little room for additional local legislation that could directly address public safety. Part of Plaintiffs' theory of their case is that once these state and federal rules addressing public safety are accounted for, firearms fall into the same category as books, i.e., commercial products specifically mentioned by and protected by a Constitutional Amendment.

In other words, gun stores that presumptively comply with federal and state law, should be treated under the SECOND AMENDMENT, in the same way book stores are treated under the FIRST AMENDMENT. Arbitrary restrictions on the sale of such items are presumptively unconstitutional unless the government can plead and show, with admissible evidence, that gun stores are a threat to public safety and that any proposed regulation will address that threat.

## JURISDICTIONAL STATEMENT

The trial court's federal question jurisdiction is under the Second and Fourteenth Amendments to the United State Constitution under a theory that a state actor has violated a fundamental right of the plaintiffs and is therefore actionable under 42 U.S.C. §§ 1983, 1988.

As the Plaintiff-Appellants are also seeking declaratory relief, both the trial court and this appellate court have jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.  Additionally, as this action arises under the United States Constitution the trial court and this court have jurisdiction pursuant to 28 U.S.C. § 1331.

Appellate jurisdiction is based on 28 U.S.C. § 1291.  The order and/or judgment appealed from were filed on September 23, 2013.  A timely Notice of Appeal was filed on October 23, 2013.

## STATEMENT OF ISSUES

Does the "right to keep and bear arms" extend beyond the home?

Does the "right to keep and bear arms" extend to the right to acquire and therefore purchase firearms?

Must a local land use ordinance that restricts the location of gun stores, which will in turn restrict the sale of firearms, be based on real evidence of a public threat, or may the government rely on mere assertions and conjecture?

What kind of scrutiny, and who bears the burden of proof and by what standard, should be applied when a trial court is evaluating any local ordinance that restricts the sale of firearms?

## <u>PRIMARY AUTHORITY</u>

The primary authority relied upon by the plaintiffs is the SECOND AMENDMENT to the United States Constitution:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

The 14th Amendment Equal Protection claim is predicated on the allegation that a state actor is engaged in unequal treatment of similarly situated persons exercising a fundamental right and requires the application of strict scrutiny. *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) and *Carey v. Brown*, 447 U.S. 455 (1980).

## STATEMENT OF THE CASE

Based on a prior iteration of the Complaint in this matter, Defendants brought a motion to dismiss under Fed.R.Civ.Pro. 12(b) and Plaintiffs sought injunctive relief under Fed.R.Civ.Pro. 65. The trial court denied Plaintiffs request for injunctive relief and granted Defendants motion to dismiss with leave to amend. (ER: 000001-000019; Doc # 56.)

Plaintiffs filed a First Amended Complaint. (ER: 000070-000095; Doc # 40.) Defendants filed a Motion to Dismiss pursuant to Fed.R.Civ.Pro. 12 (b). The trial court granted the motion without leave to amend. (ER: 00001-000019; Doc. # 56.) Plaintiffs filed this appeal.

## STATEMENT OF FACTS

Because this appeal arises out of a trial court's order granting a motion to dismiss without leave to amend under Fed.R.Civ.Pro. 12(b), this Court must accept as true the factual allegations of the operative complaint, and construe those facts in the light most favorable to the non-moving party – Plaintiff-Appellants. *Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1127 (9th Cir. 2012); *Manzarek v. St. Paul Fire &*

*Marine Ins.* Co., 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 526 (9th Cir. 2008).

The substantive facts from the First Amended Complaint are that the individual plaintiffs (Teixeira, Nobriga and Gamaza) wanted to open a gun store in the unincorporated area of Alameda County. They applied for and were initially granted a variance to an Alameda Ordinance that prohibits a gun store from operating within 500 feet of certain other structures. The only relevant structures that came close to disqualifying the gun store's location were residentially zoned. (i.e., The proposed site of the gun store was NOT within 500 feet of any school, liquor store or other firearm store.) Only three private residences came anywhere near meeting the definition under the "500-Foot Rule." One was across a major thoroughfare and other two were located across 12 lanes of Interstate 880. Plaintiffs contend that private residences cannot, as a matter of law, be classified as sensitive places.

Furthermore there exists and remains a controversy over how this 500 feet is to be measured and this forms part of the basis of plaintiffs' equal protection claim in that the rules for taking the measurement

appear to depend on the kind of business looking for the variance. Politically unpopular gun stores being are subject to different rules for where the measurement is to be taken. Should the measurement be taken from the front door of the usual business or the closest wall to the disqualifying structure of the potential gun store?.

Plaintiffs brought suit challenging the "500-foot rule" on its face and as applied to them, based on the constitutional status of the products they intended to sell. Specifically, they contend that once public safety considerations are accounted for through federal and state laws regulating the sale of firearms, then guns are analogous to books. That means this case is subject to the legal precedence of the line of cases that grew out of *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002) and *Renton v. Playtime Theatres Inc.,* 475 U.S. 41 (1986), and *Ezell v. City of Chicago.*

Therefore, not only must the government bear the burden to justify their regulations, but that concrete evidence must be produced by them to show: (1) there is a public safety hazard and/or negative secondary effect of a new gun store and (2) that the regulation

promoted will address those public safety concerns.

Furthermore, the First Amended Complaint alleged that the 500 Foot Rule acts as a *de facto* ban on any new gun stores opening in the unincorporated areas of Alameda County. (ER: 000070-000095; Doc # 40.) The trial court erred when it brushed away this allegation by considering the existence of current gun stores that: (1) were not required to comply with the 500 Foot Rule (especially when they were not in unincorporated Alameda County), and (2) there was no data that these existing gun stores are subject to the same rules that were going to be imposed on plaintiffs herein. (ER: 000070-000095; Doc # 40.)

A second theory of constitutional liability was advanced against the County on the grounds that plaintiffs and their customers are engaged in the exercise of a necessary subsidiary of a fundamental right and are being treated differently without an important/significant justification based on the exercise of that right. (ER: 000070-000095; Doc # 40.) The first Dismissal Order (Doc # 37) imposed a "class-of-one" rule, found that the plaintiffs had not sufficiently plead their Equal Protection claim and dismissed with leave to amend. The second

Dismissal Order (ER: 00001-000019; Doc. # 56) reasoned it was constrained by the "law of the case" doctrine and made the same finding, but dismissed without leave to amend. Of course, the Ninth Circuit panel assigned to this case is not bound by the "law of the case" doctrine as review by this Court is *de novo.*

## STANDARD OF REVIEW

Dismissals without leave to amend for failure to state a claim are reviewed de novo. Such dismissal will be affirmed only if it appears 'beyond a doubt' that the complaint cannot be saved by further amendment. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000). *Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1127 (9th Cir. 2012); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 526 (9th Cir. 2008).

Review is limited to the face of the complaint, including materials incorporated by reference and matters of judicial notice. All well-pleaded allegations of material fact are accepted as true and construed

in the light most favorable to the nonmoving party (plaintiff in the proceedings below). *Carlin v. DairyAmerica*, supra, 688 F.3d at 1127; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, supra, 519 F.3d at 1030-1031; *Leadsinger, Inc. v. BMG Music Publishing*, supra, 512 F.3d at 526.

## SUMMARY OF ARGUMENT

Appellants contend that the trial court erred by reading the SECOND AMENDMENT too narrowly in its September 9, 2013 Order. (ER: 00001-000019; Doc. # 56.) Subsequently, on November 18, 2013 this Court issued its opinion in *U.S. v. Chovan*, wherein a new standard of review was promulgated for SECOND AMENDMENT claims in this Circuit. On February 13, 2014 this Court issued another opinion interpreting the SECOND AMENDMENT that bears on the issues raised in this case. *Peruta v. County of San Diego,* 2014 U.S. App. LEXIS 2786 (9th Cir. 2014)(filed February 13, 2014).

The primary error by the trial court is contained in the clause: "[...] because there is a <u>rational basis</u> to treat gun stores differently than

other commercial retailers, [...] the Motion to Dismiss [...] is GRANTED WITH PREJUDICE." [ER. Page 2, lines 4–11] (emphasis added)

If the Second Amendment is to be taken seriously by the Courts, then rigorous constitutional analysis that is faithful to a fundamental enumerated right is required. Governments cannot be allowed to merely assert a public safety justification for a law without producing some evidence that a danger beyond that inherent in the exercise of fundamental rights exists and that the proposed law will address that specific danger. In this instance, given the procedural posture of the case, the County has not produced ANY evidence that gun stores impose any unique dangers or that they generate negative secondary effects that would permit the government to adopt regulations (much less a ban) that burdens a fundamental right. *Renton v. Playtime Theatres Inc.* (1986) 475 U.S. 41; *City of Los Angeles v. Alameda Books, Inc.*, (2002) 535 U.S. 425.

Interpreting the rationale set forth in *Alameda Books, Inc.*, the Seventh Circuit recently held:

[...] [B]ecause books (even of the "adult" variety) have a

constitutional status different from granola and wine, and laws requiring the closure of bookstores at night and on Sunday are likely to curtail sales, the public benefits of the restrictions must be established by evidence, and not just asserted. The evidence need not be local; Indianapolis is entitled to rely on findings from Milwaukee or Memphis (provided that a suitable effort is made to control for other variables). See *Andy's Restaurant*, 466 F.3d at 554-55. **But there must be evidence; lawyers' talk is insufficient.**

Annex Books v. City of Indianapolis, 581 F.3d 460, 463 (7th Cir. 2009) (emphasis added.)

Books occupy the same relationship to the First Amendment that guns occupy with respect to the Second. Commercial restrictions on either that purport to address public safety must be based on evidence that those restrictions serve at least a important government purpose that isn't simply to lessen the scope of the right. The trial court erred when it dismissed this case without that specific evidence before it.

## ARGUMENT

## I.  The Second Amendment Extends Beyond the Home.

The trial court relied almost exclusively for its ruling on a very narrow reading of the Second Amendment. (ER: 00001-000019; Doc. # 56.)

The reading was wrong then, but within the margin of error based on the state of the law in this circuit when the dismissal was granted in September of 2013. The margins have now been moved to more accurately reflect a fundamental right by *U.S. v. Chovan,* 735 F.3d 1127 (9th Cir. 2013)(filed November 18, 2013) and *Peruta v. County of San Diego*, 2014 U.S. App. LEXIS 2786 (9th Cir. 2014)(filed February 13, 2014).

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." This is a fundamental, individual right and it is binding upon the States through the Fourteenth Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010); *Nordyke v. King*, 681 F.3d 1041 (2012).

A. <u>The Seventh Circuit Holds that Second Amendment Rights Extend Beyond the Home</u>.

Following *Heller* and *McDonald*, the Seventh Circuit directly faced the question of "whether the Second Amendment creates a right of self-

defense outside the home" in the case of *Moore v. Madigan*, 702 F. 3d 933, 935 (2102). That decision involved two consolidated cases where the district courts had ruled that there was no Second Amendment right to carry a firearm in public for self-defense. The Seventh Circuit, in a decision authored by Judge Posner, reversed and invalidated the Illinois statutes that barred carrying of firearms in public after finding that they impermissibly burdened Second Amendment rights without justification.

In reaching its decision, the Seventh Circuit noted that although both "*Heller* and *McDonald* do say that 'the need for defense of self, family, and property is most acute' in the home [citation omitted]... that doesn't mean it is not acute outside the home." *Id*. at 936. And, it also noted that "*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' [citation omitted] Confrontations are not limited to the home." *Id*.

Going further, the *Moore* court acknowledged that it could not

"ignore the implication of the analysis [in *Heller* and *McDonald*] that the constitutional right of armed self-defense is broader than the right to have a gun in one's home." *Id.* at 935. After all, it stated, "[t]he first sentence of the *McDonald* opinion states that 'two years ago, in *District of Columbia v. Heller,* we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense' [citation omitted] and later in the opinion we read that *'Heller* explored the right's origins, noting that the 1689 English Bill of Rights explicitly protected a right to keep arms for self-defense [citation omitted] and that by 1765, Blackstone was able to assert that the right to keep and bear arms was 'one of the fundamental rights of Englishmen,' [citation omitted] And immediately the Court adds that 'Blackstone's assessment was shared by the American colonists.'" *Id.* To the Seventh Circuit, such language clearly pointed to broad rights to have a firearm available for self-defense outside the home, which were clearly protected by the Second Amendment.

  Finally, the *Moore* court reasoned that the language of the Second Amendment supported its ruling that the Second Amendment protected

a right to carry firearms in public for self defense. It wrote that the Amendment's enumeration of "[t]he right to 'bear' as distinct from the right to 'keep' arms is unlikely to refer to the home. To speak of 'bearing' arms within one's home would at all times have been an awkward usage." *Id* at 936. It therefore concluded that a "right to bear arms thus implies a right to carry a loaded gun outside the home." *Id.*

    B.  <u>The Seventh Circuit has held that the Second Amendment Includes Ancillary Rights</u>.

Another earlier case from the Seventh Circuit found that the Second Amendment protects ancillary matters and access to all things necessary for the proper exercise of that core right. In *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011), the court conducted a comprehensive analysis of the Second Amendment rights enumerated in *Heller* and *McDonald* in connection with a challenge to the statutory scheme that the City of Chicago enacted (entitled the "Responsible Gun Owners Ordinance") when its total ban on handgun possession was invalidated in *McDonald. Id.* at 689. The new ordinance mandated one hour of training at a firing range "as a prerequisite to lawful gun

ownership [citation omitted] yet at the same time prohibit[ed] all firing ranges in the city." *Id.* The Appellants contended that "the Second Amendment protects the right to maintain proficiency in firearm use — including the right to practice marksmanship at a range — and the City's total ban on firing ranges is unconstitutional." *Id. at* 690. But the trial court denied their motion for a preliminary injunction.

The Seventh Circuit reversed, but it also noted that "[t]o be fair [to the trial court], the standards for evaluating Second Amendment claims are just emerging, and this type of litigation is quite new." *Id.* at 690. It then proceeded to analyze the Appellants' claims in perhaps the most instructive opinion yet regarding Second Amendment claims (and which will discussed in much more detail below).

In the end, after setting out the appropriate framework for analysis of claims that governmental action improperly burdens rights protected by the Second Amendment, the *Ezell* court found that the City had not met its burden of justifying range ban law under the level of heightened scrutiny that it found to apply. In so doing, the *Ezell* court held that the Second Amendment applied to protect all things necessary

for an individual to exercise his or her right to self defense, to possess a firearm for that purpose and that the challenged law impermissibly impinged on that right. It therefore remanded to the trial court with instructions to enter a preliminary injunction barring the enforcement of the City's firing range ban.

*Ezell* is perhaps the most comprehensive and instructive post-*Heller* case about the analytical framework to be applied to claims that government conduct impermissibly infringes upon the basket of rights protected by the Second Amendment. It specified that the government has the burden of showing that some claimed rights are not protected by the Second Amendment and also that "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights" satisfies a heightened level of scrutiny.

The *Ezell* court began its analysis by observing that the "district court got off on the wrong foot [in ruling on plaintiff's motion for limit injunction] by accepting the City's argument that its ban on firing ranges cause[d] only minimum harm to the Appellants... and that this harm [could] be adequately compensated by money damages." *Id.* at

694. The court then noted that this "confused approach" caused several legal errors concerning "(1) the organizational Appellants' standing; (2) the nature of the Appellants' harm; (3) the scope of the Second Amendment right as recognized in *Heller* and applied to the States in *McDonald*; and (4) the structure and standards for judicial review of laws alleged to infringe Second Amendment rights. The court then reviewed each of those errors.

It began by finding that each of the individual and organizational Appellees had the requisite standing to challenge the firing range ban. Then, it went on to discuss the requirements of irreparable harm and inadequacy of any legal remedy that are prerequisites of an injunction. It found that the "City's misplaced focus on the availability of firing ranges outside the city also infected the district court's evaluation of irreparable harm" in that it "framed the relevant harm as strictly limited to incidental travel burdens" associated with going to those out-of –city ranges.

The *Ezell* court went on to explain that it was inappropriate and "profoundly mistaken" to "assume that the harm to a constitutional

right is measured by the extent to which it can be exercised in another jurisdiction." It reasoned that "the Second Amendment, [like the First Amendment] protects similarly intangible and unquantifiable interests" and the clear rule in the First Amendment context that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place" applied with equal force in the context of the Second Amendment. The court colorfully stated that it would be "hard to imagine anyone suggesting that Chicago may prohibit the exercise of a free speech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs" and also that such an "arguments should be no less unimaginable in the Second Amendment context." This portion of the court's opinion effectively disposes of Appellees' argument here that the existence of other gun stores in Cities inside the County means, in and of itself, there is no substantial infringement of rights protected by the Second Amendment.

From there, the court went on to discuss the plaintiff's' likelihood of success on the merits. In so doing, it set up the framework to be

followed in analyzing Second Amendment litigation. After observing that "*Heller* focused almost exclusively on the original public meaning of the Second Amendment," consulting the text and relevant historical materials to determine how the Amendment was understood at the time of ratification, the Court then went on to conclude that "the Second Amendment secures a pre-existing natural right to keep and bear arms; that the right is personal and not limited to militia service; and that the "central component of the right" is the right of armed self-defense, most notably in the home. *Id.* at 701*701 (*citing Heller,* 554 U.S. at 595, 599-600, 128 S.Ct. 2783); *see also McDonald,* 130 S.Ct. at 3036-37, 3044.

However, the *Ezell* court also noted that *Heller* did not specify a standard of scrutiny to be applied to claims of Second Amendment infringement. Rather, the "Court said [that the laws attacked in *Heller*] were unconstitutional '[u]nder any ... standard[] of scrutiny."*Ezell* went on to state that "[f]or our purposes, however, we know that *Heller's* reference to 'any standard of scrutiny' means any *heightened* standard of scrutiny [because] the Court specifically excluded rational-basis review."

In light of its review, the *Ezell* court found that the "passages from *Heller* holds several key insights about judicial review of laws alleged to infringe Second Amendment rights" and set out a two-step framework for inquiry and analysis. "First, the threshold inquiry in some Second Amendment cases will be a 'scope' question: is the restricted activity protected by the Second Amendment right in the first place?" Answering this first question where a local government regulation is challenged requires analysis of how Second Amendment rights were understood at the time the Second and Fourteenth Amendment were ratified. And, the *Ezell* court noted that the "Supreme Court's free-speech jurisprudence contains a parallel for this kind of threshold 'scope' inquiry" where "some categories of speech are [held to be] unprotected as a matter of history and legal tradition." Following that kind of analysis, "***if the government can establish*** that a challenged firearms law regulates activities falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment ... then the analysis can stop there; the regulated activity is categorically unprotected and the law is not subject to further Second

Amendment review." (Emphasis added) However, "[i]f the government cannot establish this-if the historical evidence is inconclusive or suggest that the regulated activity is not categorically unprotected-then there must be a Second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights."

Tuning to application of its announced framework to the firing range ban, the *Ezell* court found that historical sources suggested that target practice to be proficient in the use of a firearm was with the scope of the Second Amendment when it was ratified. It then proceeded "to the second inquiry, which asks whether the City's restriction on range training survives Second Amendment scrutiny ... [and] this requires [the reviewing court] to select an appropriate standard of review. Although the Supreme Court did not do so in either *Heller* or *McDonald*, the Court did make it clear that the deferential rational-basis standard is out, and with it the presumption of constitutionality.... This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review."

To select an appropriate standard of review, the court turned to "First Amendment analogues" which it found to be suggested by both *Heller* and *McDonald*. Indeed, the court stated that because of the suggestions in those cases, the Seventh "and other circuits ha[d] already begun to adapt First Amendment Doctrine to the Second Amendment context." It next reasoned that in "free-speech cases, the applicable standard of judicial review depends on the nature and degree of the governmental burden on the First Amendment right and sometimes also on the specific iteration of the right" and gave examples of various regulations and the standard under which they were to be reviewed.

## C. The Ninth Circuit has Recently Adopted the Approach of the Seventh Circuit.

Until recently, the Ninth Circuit had not decided what level of scrutiny to apply to restrictions on the right to bear arms. In *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), the Ninth Circuit addressed the question of the level of scrutiny to apply to limitations on the right to keep and bear arms. The court analyzed the different approaches taken by other Circuits and ultimately adopted the two-step Second

Amendment inquiry announced best in *Ezell* and undertaken by the Third, Fourth, Seventh, Tenth, and D.C. Circuits. *Id.* at 1136. The court states: "[t]he two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id.* (*citing U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010), *U.S. v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)).

The Court in *Heller* found that "...it always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Heller* at 592. Accordingly, "...determining the limits on the scope of the right is necessarily a matter of historical inquiry." *Chester* at 679; *see Peruta v. San Diego*, 2014 U.S. App. LEXIS 2786 at *11. If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then you move to the second prong of the analysis. *See Chovan* at 1137; *Ezell v. City of Chicago*, 651 F.3d 684, 702-703 (7th Cir. 2011) . If the historical record is inconclusive, it must be assumed that Second Amendment rights are intact and entitled to

some measure of protection. *Id.*

In this case, the trial court's finding that no Second Amendment rights were at stake, because the scope of the right did not extend beyond the home was error and requires reversal.

## II.  The Second Amendment Includes the Right to Acquire Firearms, and the Right to Sell Them.

Under the current Ninth Circuit framework articulated in *Chovan*, the first step is to determine whether the challenged law burdens a right protected under the Second Amendment.  The Alameda Ordinance treats gun stores differently from other retail stores by placing them in a 500 foot bubble with respect to certain other land uses.  Plaintiffs have alleged that this operates as a *de facto* ban on the opening of new gun stores in the Alameda unincorporated areas and it certainly has stopped plaintiffs herein from opening the store where they initially obtained a variance from this rule and then had it revoked by the Board of Supervisors.

A. Commerce in Firearms is Protected by the Second Amendment.

There can be no question that acquisition of a firearm is a

necessary prerequisite to exercising the right keep and bear arms. In *Andrews v. State* – cited favorably in *District of Columbia v. Heller*, 128 S.Ct. 2783, 2806, 2809, 2818 (2008), the High Court of Tennessee found much in common between that State's guarantee of the "right to keep and bear arms" and the Second Amendment. It held:

> The right to keep and bear arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and purchase and provide ammunition suitable for such arms, and keep them in repair. [...]
>
> *Andrews v. State*, 50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871)

Furthermore, Plaintiffs as gun dealers can assert the rights of their customers. See generally: *Craig v. Boren*, 429 U.S. 190 (1976).

The liberties enumerated in the First Amendment do not expressly include the ancillary freedoms to acquire or engage in commerce regarding books, printing presses, or bibles. Yet cities and counties have routinely been held to constitutional standards when using land use statutes to regulate adult book stores. See generally: *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *Schad v. Mt. Ephraim*, 452 U.S. 61 (1981); and *City of L.A. v. Alameda Books*, 535

U.S. 425 (2002).

Importantly, a common gun store like the one the plaintiffs wish to open is certainly closer to the core of the Second Amendment than an adult book store is to the core of the First Amendment. And adult book stores remain protected by searching scrutiny of local regulation. A law-abiding citizen's fundamental right to "keep and bear arms" means little if his/her ability to acquire the means of exercising that right in a well-regulated manner is chilled or zoned out of existence by local government regulations that bear no rational relationship to the states' legitimate interest in public safety.

A proper adjudication of this case will require the County to establish some kind of important or compelling interest that is protected by their 500-foot rule.

The First Amended Complaint alleges that the employees, patrons and vendors of gun stores are, by definition, law-abiding people. The symphony of federal and state laws that regulate the firearms industry, and retail sales in particular, do not need to be recounted here. It is enough that this Court be made aware that the traffic through a

properly licensed gun store cannot be compared with the traffic that would attend: liquor stores, adult bookstores, tattoo parlors, strip-clubs and other establishments that have traditionally been subject to a secondary effects analysis.  See: *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) and *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991).  These properly plead facts invite the question: What makes a retail gun store, presumptively in compliance with state and federal laws, more dangerous than a retail shoe store?

The County should be required to prove that "residential districts" are a sensitive place as that proposition would seem to flatly contradict the holdings of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. ___, 130 S.Ct. 3020 (2010). Furthermore, that proposition would also run afoul of the pair of California cases that stand for the proposition that local governments cannot regulate the law-abiding possession of firearms in a residence. *Doe v. City and County of San Francisco*, 136 Cal. App. 3d 509 and *Fiscal v. City and County of San Francisco*, 158 Cal. App. 4th 895.

39.

These questions must be put to the County and they must provide answers that would survive "almost strict scrutiny." *Ezell v. City of Chicago*, 651 F.3d 684, 708-709 (7th Cir. 2011).

Finally, even if the County tenders some kind of justification for the "500 foot rule" – that justification must be based on evidence. From *Ezell*, at 709:

> [T]he government must supply actual, reliable evidence to justify restricting protected expression based on secondary public-safety effects. See *Alameda Books, Inc.*, 535 U.S. at 438 (A municipality defending zoning restrictions on adult bookstores cannot "get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance."); see also *Annex Books, Inc. v. City of Indianapolis*, 624 F.3d 368, 369 (7th Cir. 2010) (affirming preliminary injunction where a city's "empirical support for [an] ordinance [limiting the hours of operation of an adult bookstore] was too weak"); *New Albany DVD, LLC v. City of New Albany*, 581 F.3d 556, 560-61 (7th Cir. 2009) (affirming preliminary injunction where municipality offered only "anecdotal justifications" for adult zoning regulation and emphasizing the necessity of assessing the seriousness of the municipality's concerns about litter and theft).

The lower court did find that gun stores were treated differently, but also found that this different treatment was "rational" because there is no Second Amendment right to engage in commercial

transactions involving firearms. This was error and requires reversal.

B.   <u>Alameda's Ordinance is Not Presumptively Valid.</u>

Similarly, the trial court was wrong to rely upon dicta in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller,* 554 U.S. 570, 626-27 (2008).

This amounts to an evidentiary "presumption" of validity that Appellants must "rebut" in order to state a claim for infringement of Second Amendment rights. The argument is ironic given the County's insistence on narrowly reading the issue the Court actually did decide. (That the Second Amendment only applies in the home.) Regardless, the argument is plainly wrong.

Cases are not precedent for issues that they do not decide. *People v. Banks*, 53 Cal. 2d 370, 389, 1 Cal. Rptr. 669, 348 P.2d 102 (1955); *Eatwell v. Beck* (1953), 41 Cal. 2d 128, 136, 257 P.2d 643 (1953) ("It is

elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court); *Cf. Thomas v. Bible,* 983 F. 2d 152 (1993) ("the issue in question must have been decided either expressly or by necessary implication in [the] previous disposition.'"); *Jackson v. State of Alabama State Tenure Com'n,* 405 F.3d 1276, 1283 (11th Cir. 2005) ("only those legal issues that were actually, or by necessary implication, decided in the former proceeding" are binding).

In *Heller,* the issue before the court was whether certain Washington D.C. statutes impinged upon individuals' Second Amendment rights. That was the issue that the Court decided. It was not faced with, and did not rule upon, all laws from every jurisdiction that might affect Second Amendment rights. Its statement that many longstanding laws were "presumptively" valid is dicta, not precedent. There is no indication that the Court had local zoning ordinances in mind when it rendered its decision. And, if it had, the Court would have no doubt discussed the specifics of such laws as well as the legal requirements related to evidentiary presumptions and presumed facts

in detail. It did not. The dicta that the trial court relied upon is thus best seen as an offhand prediction that long standing laws related to certain aspects of firearms would survive heightened scrutiny if and when the validity of those laws was challenged (and perhaps an assurance to some that the sky was not falling). Nothing more.

More fundamentally, a "presumption of validity" of the kind that the trial court embraced would be completely inconsistent with the tenets of the *Heller* and *McDonald* decisions. As the 7th Circuit set out in *Ezell*, when deciding on an appropriate level of review for the statutes at issue there: "Although the Supreme Court did not [specify the required level of scrutiny] in either *Heller* or *McDonald*, the Court did make it clear that the deferential rational-basis standard is out, ***and with it the presumption of constitutionality***. [citation omitted] This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review." [emphasis added] *Heller*, 554 U.S. at 628 n. 27 (citing *United States v. Carolene Prods.*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)). Furthermore, *McDonald* specifically rejected the idea of allowing "state

and local governments to enact any gun control law that they deem to be reasonable ", which would be permissible if the presumption that Appellees suggest actually existed. 130 S.Ct. at 3046.

Simply put, the dicta in *Heller* that the trial court relied upon to suggest there is some presumption of validity of the County's zoning ordinances cannot support the weight placed upon it. The *Heller* Court did not issue some blanket "amnesty" ruling that approved of all existing laws that might be alleged to infringe upon Second Amendment rights. It could not do so. Such issues were not before the Court. Accordingly, the trial court's finding regarding this supposed presumption provides no basis to grant a motion to dismiss the case.

Further, the types of laws that place "conditions and qualifications on the commercial sale of arms" are far more analogous to those that are already placed on buyers and sellers by current State and Federal Law. A complete prohibition on the opening of new gun stores in Alameda County is neither a condition nor a qualification. It is an outright ban – closer in kind to the law struck without resort to levels of scrutiny – in *Heller*.

### III.  Appellants Properly Alleged an
### Equal Protection Claim

Appellants' equal protection claim is simply an assertion that they are being treated differently than other retailers because they are a gun shop and that there is no justification for such disparate treatment. They further allege that the very requirement that they obtain a conditional use permit to operate their business when other retailers are not required to do so violates their right to equal protection. They further allege that currently existing gun stores throughout Alameda County are not subject to the same restrictions on location.

As noted above, they also alleged that the County has presented no evidence or proper basis to suggest that operation of a gun shop will have any deleterious effects on the surrounding community that would justify restrictions upon them.

Finally, Appellants alleged that the County is using zoning laws to redline or ban retail gun stores from Unincorporated Alameda County. All of that amounts to adequately pleaded equal protection claims.

Nonetheless, the trial court found that the amended complaint "fails to identify any similarly situated business" and that this is fatal to the equal protection claims in the first amended complaint. This was error.

Appellants' position is that they are similarly situated with all other general retailers who are entitled to open shop in commercially zoned areas in unincorporated Alameda County without having to apply for and obtain an additional conditional use permit, with its many additional restrictions.

The County could hardly be heard now to claim that gun stores are patently dissimilar to other retailers when it waited until 1998 to enact this "500-foot rule." Firearms have been constitutionally significant property since 1791. Which itself is further evidence that this zoning ordinance is not a "long-standing regulation of commercial firearm sales." The reasonable inference that plaintiffs are entitle to is that the County itself made no distinction between stores that sell firearms and other retailers until 15 years ago.

Disparate treatment under the law, when engaged in activities

that are a fundamental right are actionable under the Fourteenth Amendment's Equal Protection clause. *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972) and *Carey v. Brown*, 447 U.S. 455 (1980).

## CONCLUSION

Changes in Ninth Circuit law that occurred after the motion to dismiss was granted, make this an easy call. Second Amendment rights are at stake based on a fair reading of the First Amended Complaint, and the Plaintiffs have properly plead a violation of the Equal Protection Clause of the Fourteenth Amendment.

The dismissal should be reversed and case should be remanded to trial court where the County of Alameda must be required to prove that their 500 Foot Rule addresses some actual public safety concern, based on real evidence, or be ordered to permit the plaintiffs to open their gun store.

Respectfully Submitted on March 14, 2014.

/s/ *Charles Hokanson*
Charles W. Hokanson
Attorney for Appellants

## STATEMENT OF RELATED CASE(S)

Appellants are not aware at this time of any cases pending in the Ninth Circuit that are related to this action as that term is defined in Circuit Rule 28-2.6.

Date: March 14, 2014

/s/ *Charles Hokanson*
Charles Hokanson
Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. Rule 32(a)(7)(B). It contains 8522 words using Microsoft Word in Century Schoolbook 14 point font.

Date: March 14, 2014

/s/ *Charles Hokanson*
Charles Hokanson
Attorney for Appellants

Case Number: 13-17132

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

---

JOHN TEIXEIRA;  STEVE NOBRIGA;  GARY GAMAZA;  CALGUNS FOUNDATION, INC.;  SECOND AMENDMENT FOUNDATION, INC.; and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES,

Plaintiffs and Appellants,

v.

COUNTY OF ALAMEDA,  ALAMEDA BOARD OF SUPERVISORS (as a policy making body),  WILMA CHAN in her official capacity,  NATE MILEY in his official capacity, and  KEITH CARSON in his official capacity,

Defendants and Appellees.

---

On Appeal From The United States District Court
For The Northern District of California
(Case Number:  3:12-CV-03288-WHO)

---

## PROOF OF SERVICE OF APPELLANTS'
## OPENING BRIEF

---

Donald E.J. Kilmer, Jr., (CASB No. 179986)      Charles W. Hokanson (CASB No. 163662)
Law Offices of Donald Kilmer, APC               4401 Atlantic Ave, Suite 200
1645 Willow Street, Suite 150                   Long Beach, California 90807
San Jose, California 95125                      Telephone:  (562) 316-1476
Telephone: (408) 264-8489                       Facsimile:  (562) 316-1477
Facsimile: (408) 264-8487

Attorneys for Plaintiffs and Appellants

PROOF OF SERVICE


I, Charles Hokanson, hereby certify that I electronically filed the document entitled

**Appellants' Opening Brief** in this matter with the Clerk of the Court for the United States Court

of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 15, 2014.

I also certify that all participants in the case are registered CM/ECF users and that service

will be accomplished by the appellate CM/ECF system.


___ s/ *Charles Hokanson* ____
Charles W. Hokanson
Attorney for Appellants