Case Number: 13-17132

# IN THE UNITED STATES COURT OF APPEAL
## FOR THE NINTH CIRCUIT

---

JOHN TEIXEIRA;  STEVE NOBRIGA;  GARY GAMAZA;  CALGUNS
FOUNDATION, INC.;  SECOND AMENDMENT FOUNDATION, INC.; and
CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES,

Plaintiffs and Appellants,

v.

COUNTY OF ALAMEDA,  ALAMEDA BOARD OF SUPERVISORS (as a
policy making body),  WILMA CHAN in her official capacity,  NATE MILEY in
his official capacity, and  KEITH CARSON in his official capacity,

Defendants and Appellees.

---

On Appeal From The United States District Court
For The Northern District of California
(Case Number:  3:12-CV-03288-WHO)

---

## APPELLANTS' EXCERPTS OF THE RECORD

---

| | |
|---|---|
| Donald E.J. Kilmer, Jr., (CASB No. 179986) | *Charles W. Hokanson (CASB No. 163662) |
| Law Offices of Donald Kilmer, APC | 4401 Atlantic Ave, Suite 200 |
| 1645 Willow Street, Suite 150 | Long Beach, California 90807 |
| San Jose, California 95125 | Telephone:  (562) 316-1476 |
| Telephone: (408) 264-8489 | Facsimile:  (562) 316-1477 |
| Facsimile: (408) 264-8487 | |

### Attorneys for Plaintiffs and Appellants

*Counsel of Record for Plaintiffs-Appellants

**TABLE OF CONTENTS**

| Tab | Date | Document | Page |
|-----|------|----------|------|
| 1 | 10/21/2013 | Notice of Appeal | 1 |
| 2 | 9/23/2013 | Judgment Following Order Granting Defendants' Motion to Dismiss | 5 |
| 3 | 9/9/2013 | Order Granting Motion to Dismiss First Amended Complaint With Prejudice | 7 |
| 4 | 9/4/2013 | Reporter's Transcript of Proceedings | 26 |
| 5 | 8/2/2013 | Defendant County Of Alameda's Reply In Support Of Motion To Dismiss Plaintiffs' First Amended Complaint | 44 |
| 6 | 7/19/2013 | Plaintiffs' Opposition to Motion to Dismiss | 53 |
| 7 | 5/28/2013 | Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint | 76 |
| 8 | 4/1/2013 | First Amended Complaint for Damages, Injunctive Relief and/or Declaratory Judgment | 94 |
| 9 | 3/14/2014 | Civil Docket Sheet For Case #: 3:12-cv-03288-WHO | 120 |

Dated:  March 14, 2014.

    /s/ *Charles W. Hokanson*_____

Charles W. Hokanson
Attorney for Plaintiffs and Appellants

1  Donald E.J. Kilmer, Jr., (CA State Bar No. 179986)
   Law Offices of Donald Kilmer
2  A Professional Corporation
   1645 Willow Street, Suite 150
3  San Jose, California 95125
   Telephone: (408) 264-8489
4  Facsimile: (408) 264-8487
   EMail: Don@DKLawOffice.com
5
   Charles W. Hokanson (CA State Bar No. 163662)
6  4401 Atlantic Ave, Suite 200
   Long Beach, California 90807
7  Telephone:  (562) 316-1476
   Facsimile:  (562) 316-1477
8  Email: CWHokanson@TowerLawCenter.com

9  Attorneys for All Plaintiffs

10
                IN THE UNITED STATES DISTRICT COURT
11
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

13
   JOHN TEIXEIRA, STEVE NOBRIGA, GARY          Case No. 3:12-CV-03288-WHO
14 GAMAZA, CALGUNS FOUNDATION (CGF),
   INC., SECOND AMENDMENT FOUNDATION          **NOTICE OF APPEAL (with Local Rule 3-2**
15 (SAF), INC., and CALIFORNIA ASSOCIATION    **Representation Statement attached)**
   OF FEDERAL FIREARMS LICENSEES (Cal-
16 FFL),

17        Plaintiffs,

18 vs.

19 COUNTY OF ALAMEDA, ALAMEDA BOARD
   OF SUPERVISORS (as a policy making body),
20 WILMA CHAN in her official capacity, NATE
   MILEY in his official capacity, and KEITH
21 CARSON in his official capacity,

22        Defendants.

23

24

25

26

27

28

                        NOTICE OF APPEAL (WITH LOCAL RULE 3-2
                        REPRESENTATION STATEMENT ATTACHED)

Notice is hereby given that Plaintiffs in the above named case, JOHN TEIXEIRA; STEVE NOBRIGA; GARY GAMAZA; CALGUNS FOUNDATION, INC.; SECOND AMENDMENT FOUNDATION, INC.; and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, hereby appeal to the United States Court of Appeals for the Ninth Circuit from the Final Judgment entered in this action on the September 23, 2013 [Docket # 58] and all interlocutory orders prior to entry of that judgment, including, but not limited to the court's Order Granting Defendants' Motion To Dismiss And Denying Plaintiff's Motion For A Preliminary Injunction entered on February 26, 2103 [Docket # 37] and the court's Order Granting Motion To Dismiss First Amended Complaint With Prejudice entered on September 9, 2013 [Docket # 56].

A Local Rule 3-2 Representation Statement is attached hereto.

Respectfully Submitted,

October 21, 2013

*Charles W Hokanson*

Charles W. Hokanson
Attorney for All Plaintiffs

1

Excerpts of Record, page 000002

## LOCAL RULE 3-2 REPRESENTATION STATEMENT

1) All Plaintiffs and Appellants in this matter are represented by:

Donald E.J. Kilmer, Jr., (CA State Bar No. 179986)
Law Offices of Donald Kilmer
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125
Telephone: (408) 264-8489
Facsimile: (408) 264-8487
EMail: Don@DKLawOffice.com

Charles W. Hokanson (CA State Bar No. 163662)
4401 Atlantic Ave, Suite 200
Long Beach, California 90807
Telephone:  (562) 316-1476
Facsimile:  (562) 316-1477
Email: CWHokanson@TowerLawCenter.com

2) All Defendants (Appellees) in this matter are represented by:

DONNA R. ZIEGLER (CA State Bar No. 142415)
County Counsel
MARY ELLYN GORMLEY (CA State Bar No. 154327)
Assistant County Counsel
Office of the County Counsel
COUNTY OF ALAMEDA
1221 Oak Street, Suite 450
Oakland, California 94612
Telephone: (510) 272-6700
Facsimile: (510) 272-5020
Email: mary.ellyn.gormley@acgov.org

Respectfully Submitted,

October 21, 2013

_____
Charles W. Hokanson
Attorney for  All Plaintiffs

DECLARATION OF SERVICE BY CM/ECF

I, Charles Hokanson, declare as follows:

      1.      I am a member of the bar of this court and am counsel of record in this case to all Plaintiffs and Appellants. I am over the age of 18 years and not a party to the action. My business address is 4401 Atlantic Ave, Ste 200, Long Beach, CA 90807.

      2.      I served the foregoing document, entitled NOTICE OF APPEAL (with Local Rule 3-2 Statement of Representation attached) on the interested parties in this action by using the Case Management/Electronic Case Filing System of the United States District Court for Northern District of California.

      3.      All participants in this case are registered CM/ECF users such that service will be accomplished by that system.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

      Executed this 21st day of October, 2013 at Long Beach, California.

_Charles W Hokanson_
Charles W. Hokanson
Attorney for All Plaintiffs

3

NOTICE OF APPEAL (WITH LOCAL RULE 3-2
REPRESENTATION STATEMENT ATTACHED)

1   DONNA R. ZIEGLER [142415]
    County Counsel
2   By: MARY ELLYN GORMLEY [154327]
    Assistant County Counsel
3   SAMANTHA STONEWORK-HAND [245788]
    Associate County Counsel
4   Office of County Counsel
    County of Alameda
5   1221 Oak Street, Suite 450
    Oakland, California 94612
6   Telephone:    (510) 272-6700

7   Attorney for County of Alameda

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DIVISION OF CALIFORNIA

10

11  JOHN TEIXEIRA, STEVE NOBRIGA, GARY        Case No.: 3:12-CV-03288 (WHO)
    GAMAZA, CALGUNS FOUNDATION
12  (CGF), INC., SECOND AMENDMENT            **JUDGMENT**
    FOUNDATION (SAF), INC., and              **FOLLOWING ORDER GRANTING**
13  CALIFORNIA ASSOCIATION OF FEDERAL        **DEFENDANTS' MOTION TO**
    FIREARMS LICENSEES (Cal-FFL),            **DISMISS**
14

15

16                   Plaintiffs,

17          v.

18  COUNTY OF ALAMEDA, ALAMEDA
    BOARD OF SUPERVISORS (as a policy
19  making body), WILMA CHAN in her official
    capacity, NATE MILEY in his official capacity,
20  and KEITH CARSON in his official capacity,

21                   Defendants.

22

23

24

25

26

27

28

Excerpts of Record, page 000005

The Court entered an Order **DISMISSING** the First Amended Complaint **WITH PREJUDICE** for failure to state a claim upon which relief may be granted on September 9, 2013. Judgment is accordingly entered in favor of the Defendants and against Plaintiffs.

**IT IS SO ORDERED**.

Dated:    September 23, 2013

_____

Hon. William H. Orrick

UNITED STATES DISTRICT JUDGE

Excerpts of Record, page 000006

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN TEIXEIRA, et al.,

      Plaintiffs,

    v.

COUNTY OF ALAMEDA, et al.,

      Defendants.

Case No. 12-cv-03288-WHO

**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE**

Re: Dkt. No. 44

## INTRODUCTION

When the Supreme Court decided in *District of Columbia v. Heller,* 554 U.S. 570 (2008), that the Second Amendment confers an individual right to possess handguns in the home for self-protection—a right which the Supreme Court later held, in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), was incorporated against states and municipalities through the Fourteenth Amendment—it took pains to assure that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Dist. of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). The Supreme Court identified these sorts of laws as "presumptively lawful regulatory measures" and emphasized that "our list does not purport to be exhaustive." *Id.* at 627 n.26. That assurance was reiterated in *McDonald*. 130 S. Ct. at 3047.

In this case, plaintiffs John Teixeira, Steve Nobriga, and Gary Gamaza (collectively, the "individual plaintiffs"), as well as The Calguns Foundation, Inc., Second Amendment Foundation, Inc., and California Association of Federal Firearms Licensees, Inc., seek on Second Amendment

and Equal Protection grounds in their First Amended Complaint ("FAC") to invalidate an Alameda County ordinance that prohibits a gun store from being located within 500 feet of any residential district, school, other gun store, or establishment that sells liquor. Because the ordinance is a presumptively lawful regulatory measure under *Heller*, and because there is a rational basis to treat gun stores differently than other commercial retailers, after consideration of the parties' briefs, argument of counsel, and for the reasons below, the Motion to Dismiss filed by defendants County of Alameda, Alameda Board of Supervisors (the "Board of Supervisors"), Supervisor Wilma Chan of the Alameda Board of Supervisors in her official capacity, Supervisor Nate Miley of the Alameda Board of Supervisors in his official capacity, and Supervisor Keith Carson of the Alameda Board of Supervisors in his official capacity is GRANTED WITH PREJUDICE.

## FACTUAL BACKGROUND

The plaintiffs allege the following facts: In the fall of 2010, Teixeira, Nobriga, and Gamaza formed a partnership called Valley Guns and Ammo ("VGA") to open a gun store in Alameda County. FAC ¶ 26. VGA conducted "market research" prior to opening its store and concluded that "a full service gun store located in San Lorenzo would be a success, in part, because existing retail establishments (e.g., general sporting good [sic] stores) do not meet customer needs and demands" based on feedback from approximately 1,400 "gun enthusiasts." FAC ¶ 27.

In November 2010, the individual plaintiffs were informed that any gun store could not be located within 500 feet of any residentially zoned district, school, other gun store, or establishment that sells liquor ("disqualifying property") as mandated by Alameda County Land Use Ordinance § 17.54.131 (the "Ordinance"). FAC ¶ 32. This "is a recent land use regulation." FAC ¶ 34. In addition, any applicant for a gun store license must obtain a conditional use permit from the County. FAC ¶ 33. Alameda County only requires conditional use permits for retail stores selling guns. FAC ¶ 35. On information and belief, the plaintiffs allege that as of February 2013, Alameda County had 29 Federal Firearm Licensees, many of whom "are not located in commercial buildings open for retail firearm sales." FAC ¶ 36. The plaintiffs also allege on

2

1  information and belief that the Ordinance's requirements have not been imposed on "many" of the

2  29 licensees, who are either not complying or were never required to comply with the restrictions

3  imposed against VGA.  FAC ¶ 37.

4       The Alameda County Planning Department told VGA that the 500-foot measurement

5  would be taken from the closest door in the proposed gun store to the front door of any

6  disqualifying property.  FAC ¶ 38.  Based on this requirement, the individual plaintiffs leased

7  property at 488 Lewelling Boulevard, San Leandro, California.  FAC ¶ 39.  The property only has

8  one door facing Lewelling Boulevard.  FAC ¶ 40.  A survey the individual plaintiffs obtained

9  showed that no disqualifying property is within a 500-foot radius of the front door of VGA's

10  property.  FAC ¶¶ 41-42.

11       On November 16, 2011, the West County Board of Zoning Adjustment (the "Zoning

12  Board") was scheduled to hold a hearing to determine whether VGA should be issued a

13  conditional use permit and a variance (although the hearing was ultimately rescheduled).  FAC

14  ¶ 44.  A staff report based on information publicly available prior to the hearing concluded that

15  VGA's property was less than 500 feet from a disqualifying property and recommended denying a

16  variance.  FAC ¶ 44.  It concluded that "[t]he measurement taken from the closest exterior wall of

17  the gun shop to the closest property line of a residentially zoned district is less than 500 feet in two

18  directions."  FAC Ex. A at 8.  Specifically, the gun shop was measured to be 446 feet away from

19  residences on Albion Avenue and 446 feet away from residentially zoned properties on Paseo del

20  Rio in San Lorenzo Village, which is separated from the gun shop by Interstate 880.  FAC Ex. A.

21  at 8.  The County "measured from the closest building exterior wall of the gun shop to the

22  property line of the residentially zoned district."  FAC Ex. A at 3.  The report reflects that there are

23  no other disqualifying properties within 500 feet of the gun store.  FAC Ex. A at 8.

24       The staff report tentatively found a "public need" to "provide the opportunity to the public

25  to purchase firearms in a qualified, licensed environment."  FAC Ex. A at 9.  The report also

26  tentatively found that the proposed use relates to other land uses and facilities in the vicinity, and

27  that the store would not "materially affect adversely the health or safety of persons residing or

28  working in the vicinity, or be materially detrimental to the public welfare or injurious to property

3

1    or improvements in the neighborhood." FAC Ex. A at 9. However, the report found that the gun

2    store would be "contrary to the specific intent clauses or performance standards for the District in

3    which it is to be considered" based on the fact that the location does not meet the 500-foot rule.

4    FAC Ex. A at 9. It noted that one of the residential sites is on the other side of a highway, "which

5    cannot be traversed," but the other site "can be easily accessed." FAC Ex. A at 10. The plaintiffs

6    allege that there is a fence between the gun store and the latter site, but the report does not reflect

7    this. FAC ¶¶ 46(f)(ii)(2) and 46(g)(i). The report tentatively found that a variance for the gun

8    store "will be detrimental to persons or property in the neighborhood or to the public welfare"

9    because it is less than 500 feet away from the residentially zoned properties near Albion Avenue,

10   but "there would be no detriment" to San Lorenzo Village due to the highway. FAC Ex. A at 11.

11        The Zoning Board held the hearing on December 24, 2011, after which it issued a revised

12   staff report. The revised report acknowledged that different ways of defining the starting point for

13   the measurement would alter the distance to the nearest residentially zoned property. FAC Ex. B

14   at 5. Nonetheless, under all three ways it applied (starting from the gun shop's building wall, front

15   door, or property line), the Zoning Board still found the gun shop to be less than 500 feet away

16   from the closest residence. FAC Ex. B. at 5. Based on these measurements, the staff

17   recommended denying a conditional use permit and variance to VGA. FAC Ex. B at 2.

18        The plaintiffs used the front door of the gun shop as a starting point to measure distance,

19   however, and submitted its own figure showing that the gun shop was at least 532 feet away from

20   the closest residence. FAC ¶ 47(c). The plaintiffs claim that the Zoning Board's measurements

21   are wrong because it measured "from the front doors of the disqualifying residential properties to

22   the closest possible part" of VGA's building—"a brick wall with no door." FAC ¶ 45. By

23   "moving the end-points," VGA did not qualify for a variance. FAC ¶ 45.

24        Despite the staff report's recommendation, the Zoning Board passed a resolution granting

25   VGA a conditional use permit and variance. FAC Ex. C. In a December 16, 2011, letter, the

26   individual plaintiffs were informed that the resolution would be effective on December 26, 2011,

27   unless an appeal was filed with the Alameda County Planning Department. FAC ¶¶ 50, 52. On

28   February 23, 2012, the individual plaintiffs were informed that the San Lorenzo Village Homes

4

Association filed an appeal on or after December 29, 2011, challenging the Zoning Board's resolution. FAC ¶ 52. On February 28, 2012, the Board of Supervisors, "acting through Supervisors CHAN, MILEY and CARSON voted to sustain the late-filed appeal" and overturned the Zoning Board's decision, thereby revoking the conditional use permit and variance granted to VGA. FAC ¶ 54.

The plaintiffs allege that the Board of Supervisors "appeared to be acting with deliberate indifference to the rights of the Plaintiffs and overt hostility to the fact that it was a gun store." FAC ¶ 55. They argue that the report found no public safety concerns with granting the permit and variance, and that the 500-foot rule is "wholly arbitrary" and "erroneous and unreasonable." FAC ¶ 55. The individual plaintiffs tried to find other properties that they could use as a gun store; they also commissioned a study, which found that "there are no parcels in the unincorporated areas of Alameda County which would be available for firearm retail sales" due to the 500-foot rule. FAC ¶¶ 60-61.

### PROCEDURAL BACKGROUND

On June 25, 2012, the plaintiffs filed their original complaint asserting four causes of action: (1) denial of Due Process; (2) denial of Equal Protection; (3) violation of the Second Amendment on its face; and (4) violation of the Second Amendment as applied. Dkt. No. 1 ¶¶ 48, 50, 52, 54.[1] Following the defendants' motion to dismiss (Dkt. No. 13) and the plaintiffs motion for a preliminary injunction (Dkt. No. 21), on February 26, 2013, the Honorable Susan Illston dismissed with leave to amend the plaintiffs' Equal Protection and Second Amendment claims, and denied the plaintiffs' motion for a preliminary injunction (Dkt. No. 37).

The plaintiffs filed the FAC on April 1, 2013. Dkt. No. 40. In it, the plaintiffs assert that the 500-foot rule "is not reasonably related to any possible public safety concerns," and that Alameda County is unable to "articulate how the '500 Foot Rule' is narrowly tailored to achieve any legitimate government interest." FAC ¶ 63. The First Cause of Action alleges that the defendants "have intentionally discriminated against" the individual plaintiffs by "not requiring

---

[1] The parties later stipulated to dismissing the Due Process claim.

Excerpts of Record, page 000011

1    the [conditional use permit] of similar situated parties" and that they violated the Equal Protection

2    Clause as applied to the individual plaintiffs. FAC ¶¶ 68-75. The Second Cause of Action

3    challenges the requirements for getting a conditional use permit, in particular, the 500-foot rule,

4    which allegedly gives gun stores "different treatment from similarly situated retail businesses," as

5    unconstitutional on its face under the Equal Protection Clause. FAC ¶ 74. The Third Cause of

6    Action challenges the Ordinance as "hav[ing] no proper basis" and being "constitutionally

7    impermissible" on its face under the Second Amendment. FAC ¶ 78. The Fourth Cause of Action

8    alleges that the 500-foot rule "is irrational as applied to the facts of this case" and thus violates the

9    Second Amendment as applied to the individual plaintiffs. FAC ¶ 80. The plaintiffs seek

10   declaratory and injunctive relief stating that the Board of Supervisor's grant of the San Lorenzo

11   Village Homes Association's appeal was improper and that the 500-foot rule is unconstitutional

12   facially and as-applied, and they also seek damages and attorney's fees.

13        The defendants then moved to dismiss the FAC. Dkt. No. 44.

14                              **LEGAL STANDARD**

15        A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

16   pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The

17   Court must "accept factual allegations in the complaint as true and construe the pleadings in the

18   light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

19   F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the

20   nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). However, a

21   complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is

22   plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

23   plausibility when the pleaded factual content allows the court to draw the reasonable inference that

24   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

25   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

26   inapplicable to legal conclusions." *Id.* at 678. Similarly, "a complaint [does not] suffice if it

27   tenders naked assertions devoid of further factual enhancement," *id.* (quotation marks and brackets

28   omitted), and the court need not "assume the truth of legal conclusions merely because they are

                                          6

United States District Court
Northern District of California

1    cast in the form of factual allegations," *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

2    1981).

3         If a motion to dismiss is granted, a court should normally grant leave to amend unless it

4    determines that the pleading could not possibly be cured by allegations of other facts. *Cook,*

5    *Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).[2]

6                                            **DISCUSSION**

7    **I.    LAW OF THE CASE**

8         The plaintiffs argue that the Court's "ruling on the prior motion to dismiss [Order Granting

9    Defendants' Motion to Dismiss and Denying Plaintiffs' Motion for a Preliminary Injunction

10   ("Order")] was clearly erroneous." Opp'n 1. They dispute the Court's conclusion that the

11   Ordinance is "presumptively valid," and say that the Court was incorrect to "suggest[] that there

12   was [no] Second Amendment right outside of one's home" (which the Court did not suggest).

13   Opp'n 1. They assert that because the ruling was only an order of this Court and not an appellate

14   court, the Court "is absolutely free to, and should," revisit its earlier Order since the "law of the

15   case" doctrine does not apply here. Opp'n 6.

16        While it is true, as the plaintiffs say, that the "law of the case" doctrine prohibits a trial

17   court from revisiting a decision by an appellate court, Opp'n 1, it is not true that the doctrine does

18   not caution a trial court against reconsidering its own prior decisions. *See United States v. Houser*,

19   804 F.2d 565, 567 (9th Cir. 1986) (stating that "reconsideration of legal questions previously

20   decided should be avoided"). The Ninth Circuit has said that "[u]nder the 'law of the case'

21   doctrine, a court is ordinarily precluded from reexamining an issue *previously decided by the same*

22   *court*, or a higher court, in the same case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir.

23   2004) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)) (emphasis added).

24   "Issues that a district court determines during pretrial motions become law of the case." *United*

25   *States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004). "The doctrine is a judicial invention

26   designed to aid in the efficient operation of court affairs, and is founded upon the sound public

27   _____

28   [2] At oral argument on the Motion to Dismiss the FAC, plaintiffs conceded that they had no
     additional facts to allege in support of their claims.

                                                      7

1   policy that litigation must come to an end." *Smith*, 389 F.3d at 948 (citations and quotation marks

2   omitted). At the same time, the "law of the case" doctrine is "not an inexorable command,"

3   *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 686 (9th Cir. 1988) (citation omitted), and is

4   "discretionary." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

5          Asking the Court to wholly revise its interpretation of the law applied in an earlier motion

6   to dismiss merely because a new motion to dismiss is pending, without providing the Court

7   "strong and reasonable [grounds for deciding] that the earlier ruling was wrong," goes against the

8   purpose and intent of the doctrine. *Smith*, 389 F.3d at 949. Here, the Court will exercise its

9   discretion to follow the law as explained in its earlier Order.

10  **II.     PLAINTIFFS DO NOT STATE A CLAIM UNDER THE SECOND AMENDMENT.**

11         **A. Third Cause of Action: Facial Second Amendment Challenge**

12         Plaintiffs facially challenge the Ordinance under the Second Amendment. "A facial

13  challenge to a legislative [a]ct is, of course, the most difficult challenge to mount successfully,

14  since the challenger must establish that *no* set of circumstances exists under which the [a]ct would

15  be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added). Plaintiffs fail to

16  sufficiently allege that the Ordinance is facially unconstitutional under the Second Amendment.

17         The Court noted in its earlier Order that "[n]either the Supreme Court nor the Ninth Circuit

18  has articulated the precise methodology to be applied to Second Amendment claims." Order 7.

19  Drawing from other authorities, however, the Court applied a two-step analysis that most other

20  courts have applied in this context. As the Fifth Circuit explained it, "the first step is to determine

21  whether the challenged law impinges upon a right protected by the Second Amendment—that is,

22  whether the law regulates conduct that falls within the scope of the Second Amendment's

23  guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the

24  law, and then to determine whether the law survives the proper level of scrutiny." *Nat'l Rifle*

25  *Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194

26  (5th Cir. 2012) (citing *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)); *Heller v. Dist.*

27  *of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (Heller II); *Ezell v. City of Chicago*, 651 F.3d

28  684, 701-04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United*

8

*States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). *But see United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010).).

The first step of the analysis is dispositive in this case: under the Supreme Court's decisions in *Heller* and *McDonald*, the Ordinance is presumptively lawful. Critically, as previously noted, the Supreme Court has cautioned that *nothing* in the *Heller* opinion "should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. The Supreme Court explained that its list of "presumptively lawful regulatory measures" was "not [] exhaustive." *Id.* at 627 n.26. It reiterated these principles two years later in *McDonald*, 130 S. Ct. at 3047 ("We repeat those assurances here."), and the Ninth Circuit followed them in *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).[3]

The Ordinance, which requires that gun stores obtain a permit to operate and be at least 500 feet away from sensitive locations are regulatory measures, is quite literally a "law[] imposing conditions and qualifications on the commercial sale of arms," which the Supreme Court identified as a type of regulatory measure that is presumptively lawful. *Heller*, 554 U.S. at 626-27. In addition, the Ordinance shares the same concerns as "laws forbidding the carrying of firearms in sensitive places" because it requires the selling of guns to occur at least 500 feet away

---

[3] The plaintiffs argue that *Heller*'s discussion of presumptively lawful regulatory measures is merely dicta and provides "no basis" to decide this case. Opp'n 10-12. The Ninth Circuit has explicitly rejected the contention that this portion of *Heller* is somehow not controlling. In *United States v. Vongxay*, the court said, "[The defendant] nevertheless contends that the Court's language about certain long-standing restrictions on gun possession is dicta, and therefore not binding. We disagree." 594 F.3d 1111, 1115 (9th Cir. 2010). Even if the Supreme Court's statements were dicta, as the Ninth Circuit has repeatedly said, courts "do not treat considered dicta from the Supreme Court lightly." *United States v. Augustine*, 712 F.3d 1290, 1295 (9th Cir. 2013). Given the importance of the issues of first impression addressed by *Heller*, and the fact that the Supreme Court reaffirmed its statements about presumptive lawfulness again in *McDonald*, 130 S. Ct. at 3047 ("We repeat those assurances here."), the plaintiffs cannot seriously argue that the Supreme Court's analysis was not "considered." This Court follows the Supreme Court's guidance.

Excerpts of Record, page 000015

1   from schools, residences, establishments that sell liquor, and other gun stores. *Id.* It is not a total

2   ban on gun sales or purchases in Alameda County. On its face, the Ordinance is part of the

3   Supreme Court's non-exhaustive list of regulatory measures that are constitutional under the

4   Second Amendment. *Id.*

5   While both the Supreme Court and the Ninth Circuit left unanswered precisely how broad

6   the scope of the Second Amendment is, *Nordyke*, 681 F.3d at 1044, they have not extended the

7   protections of the Second Amendment to the sale or purchase of guns. Plaintiffs have failed to

8   explain how the Ordinance unconstitutionally burdened their "core right to possess a gun in the

9   home for self-defense articulated in *Heller*" or any right they have to sell or purchase guns—"a

10  right which the U.S. Supreme Court has yet to recognize." Order 8. The Ninth Circuit observed

11  that "[t]he Supreme Court has made it clear that the government can continue to regulate

12  commercial gun dealing." *United States v. Castro*, No. 10-50160, 2011 WL 6157466, at *1 (9th

13  Cir. Nov. 28, 2011), *cert. denied*, 132 S. Ct. 1816 (2012). In *Nordyke v. King*, the Ninth Circuit

14  upheld an Alameda County ban on guns on County property due to such property's nature as a

15  "sensitive" place. 681 F.3d at 1044. As another court in this circuit held, "*Heller* said nothing

16  about extending Second Amendment protection to firearm manufacturers or dealers. If anything,

17  *Heller* recognized that firearms manufacturers and dealers are properly subject to regulation . . . ."

18  *Mont. Shooting Sports Ass'n v. Holder*, CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D.

19  Mont. Aug. 31, 2010), *adopted by* CV-09-147-DWM-JCL, 2010 WL 3909431, at *1 (D. Mont.

20  Sept. 29, 2010).

21  Nor is the Court aware of any authority outside the Ninth Circuit that would support

22  plaintiffs' claims. The Fourth Circuit has explicitly held that "although the Second Amendment

23  protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right

24  to sell a firearm." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011). Analogizing

25  from the First Amendment context, the Fourth Circuit in *Chafin* cited the Supreme Court's

26  decision in *United States v. 12 200-Foot Reels of Super 8mm. Film* for the proposition that "the

27  protected right to possess obscene material in the privacy of one's home does not give rise to a

28  correlative right to have someone sell or give it to others." 413 U.S. 123, 128 (1973). And the

10

1   Third Circuit's understanding is persuasive that the "longstanding limitations" listed in *Heller*—

2   such as laws regulating the sale of guns—are "exceptions to the right to bear arms." *United States*

3   *v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010).

4       The plaintiffs cite to two Seventh Circuit cases as support for deeming the Ordinance

5   unconstitutional: *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), and *Moore v. Madigan*,

6   702 F.3d 933 (7th Cir. 2012). Neither helps them. In *Ezell v. City of Chicago*, where the Seventh

7   Circuit applied the same two-step approach detailed above to assess whether the lower court erred

8   in denying a preliminary injunction against the law at issue, the circuit court found that the

9   plaintiffs showed a strong likelihood of establishing that a ban on firing ranges in Chicago violated

10  the Second Amendment. But *Ezell* is inapposite because, as the Seventh Circuit noted, "[t]he

11  City's firing-range ban is not merely regulatory; it *prohibits* the law-abiding, responsible citizens

12  of Chicago from engaging in target practice." *Ezell*, 651 F.3d at 708. *Ezell* recognized the

13  difference between a ban and "laws that merely regulate rather than restrict, and modest burdens

14  . . . may be more easily justified." *Id.* Here, the Ordinance merely regulates how far a gun store

15  must be from certain types of sensitive establishments—a requirement that gun stores be at least

16  500 feet from certain areas is far from the total ban on firing ranges in *Ezell*.

17      The plaintiffs' reliance on *Moore v. Madigan* is similarly misplaced because that case also

18  involved a near-total ban, this time on carrying a gun in public. The Seventh Circuit found the law

19  to be unconstitutional, but stated that "reasonable limitations, consistent with the public safety,"

20  could save the law. 702 F.3d at 942. *Moore* does not help the plaintiffs any more than *Ezell* does:

21  the Ordinance is not a ban, and possessing a gun implicates a different interest than selling one.

22  The Ordinance is a "reasonable limitation[], consistent with the public safety" that creates a

23  "barrier" that is "*de minimis*." Order 9.

24      Given the *Heller* court's recognition that "laws imposing conditions and qualifications on

25  the commercial sale of arms" are "presumptively lawful," and the fact that the Ordinance falls

26  squarely into that category by its terms, the plaintiffs fail to adequately allege that the Ordinance is

27  facially unconstitutional. They are unable to show that there is "no set of circumstances [] under

28  which the Ordinance would be valid." *Salerno*, 481 U.S. at 745.

Excerpts of Record, page 000017

The Court's decision that the Ordinance is presumptively lawful makes unnecessary any analysis under the second step in the Second Amendment inquiry, i.e., applying the applicable level of constitutional scrutiny. Suffice it to say, the Ordinance would pass any applicable level of scrutiny.

First, the Ordinance is based on important governmental objectives. Alameda County has an "interest in protecting public safety and preventing harm in populated, well-traveled, and sensitive areas such as residentially-zoned districts." Reply 6. It "has an interest in protecting against the potential secondary effects of gun stores" and "a substantial interest in preserving the character of residential zones." *Id.* The Supreme Court has held that "[t]he State's interest in protecting the well-being [and] tranquility . . . of the home is certainly of the highest order." *Frisby v. Schultz*, 487 U.S. 474, 484 (1988). The Ninth Circuit also held that local governments "have a substantial interest in protecting the aesthetic appearance of their communities" and "in assuring safe [] circulation on their streets." *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998); *see also Schneider v. State of N.J., Town of Irvington*, 308 U.S. 147, 160 (1938) (holding that municipalities have an interest in "public safety, health, [and] welfare").

Second, there is a reasonable fit between the Ordinance and its objectives. Alameda County's Ordinance only regulates *where* a gun store may be located, restricting them from being within 500 feet of sensitive places. While keeping a gun store 500 feet away from a residential area does not guarantee that gun-related violence or crimes will not occur, the law does not require a perfect match between the Ordinance's means and objectives, nor does the law require the Ordinance to be foolproof. For these same reasons, another judge in this district has upheld a restriction against gun possession within 1,000 feet of a school—double the distance mandated by the Ordinance here—stating that such a regulation would be constitutional "[u]nder any of the potentially applicable levels of scrutiny." *Hall v. Garcia*, No. 10-cv-3799-RS, 2011 WL 995933, at *4 (N.D. Cal. March 17, 2011).

At oral argument, plaintiffs suggested for the first time that the appropriate analysis for regulations that impinge on Second Amendment rights is the three-part analysis used in First Amendment cases involving adult bookstores and movie theaters: whether the ordinance is a ban

12

1   or a time, place and manner regulation; whether the ordinance is content neutral or content based;

2   and, whether the ordinance is designed to serve a substantial government interest and reasonable

3   alternative avenues of communication remain available. *City of Renton v. Playtime Theaters, Inc.*,

4   475 U.S. 41, 46-47, 50 (1986) (holding that a municipal ordinance that prohibited any adult movie

5   theater from being within 1,000 feet of any residential zone, family dwelling, church, park, or

6   school is valid). The Court is unaware of (nor do the plaintiffs cite) any authority that applied this

7   analysis in the Second Amendment context, nor will it adopt this analytical framework because a

8   gun store, by its nature, does not have the expressive characteristics that allow for this sort of

9   content-based analysis. If it did, the Ordinance would pass muster anyway. First, as discussed

10  above, the Ordinance merely regulates the places where gun stores may be located, i.e., away from

11  sensitive locations, but it does not ban them. Second, the Ordinance is content-neutral because it

12  is aimed at the secondary effects of gun stores on the surrounding neighborhood, not to suppress

13  gun ownership. *City of Renton*, 475 U.S. at 48. Finally, as discussed above, the Ordinance was

14  designed to serve a substantial government interest. Furthermore, reasonable locations to operate

15  a gun store in Alameda County exist, as evidenced by the many stores that sell guns there. Thus

16  even if this alternative analysis were applicable, it would not help the plaintiffs.

17         The crux of *Heller* and *McDonald* is that there is a "personal right to keep and bear arms

18  for lawful purposes, most notably for self-defense within the home." *McDonald*, 130 S. Ct. at

19  3044. *See United States v. Morsette*, 622 F.3d 1200, 1202 (9th Cir. 2010) ("*Heller* and *McDonald*

20  concern the right to possess a firearm in one's home for self-defense."). But that does not mean

21  that there is a correlative right to sell firearms. As discussed above, the Ordinance is

22  presumptively valid. It survives any applicable level of scrutiny or alternative analysis proposed

23  by the plaintiffs. Because the plaintiffs fail to adequately allege that "no set of circumstances

24  exists under which the [Ordinance] would be valid," *Salerno*, 481 U.S. at 745, their facial

25  challenge under the Second Amendment cannot succeed. *See United States v. Kaczynski*, 551 F.3d

26  1120, 1125 (9th Cir. 2009) ("a generally applicable statute is not facially invalid unless the statute

27  can *never* be applied in a constitutional manner") (quotation marks omitted).

28

Excerpts of Record, page 000019

1

**B. Fourth Cause of Action: As-Applied Second Amendment Challenge**

2   The plaintiffs also make an as-applied challenge to the Ordinance. "An as-applied

3   challenge contends that the law is unconstitutional as applied to the litigant's particular [] activity,

4   even though the law may be capable of valid application to others." *Foti*, 146 F.3d at 635. But

5   the plaintiffs plead no facts showing that the Ordinance is unconstitutional as applied to them, and

6   for the reasons discussed with respect to their facial challenge they have failed to state a claim.

7   The FAC states that the Ordinance "is irrational as applied to the facts of this case and

8   cannot withstand any form of constitutional scrutiny" and has "no proper basis and [is]

9   constitutionally impermissible." FAC ¶¶ 80-81. These assertions are nothing more than "legal

10  conclusions . . . cast in the form of factual allegations" and cannot support a cause of action. *W.*

11  *Min. Council*, 643 F.2d at 624.

12  The plaintiffs also allege that "existing retail establishments (e.g., general sporting good

13  [sic] stores) do not meet customer needs and demands. In fact, gun stores that can provide the

14  level of personal service contemplated by VGA are a central and important resource for

15  individuals trying to exercise their Second Amendment rights" because "they also provide

16  personalized training and instruction in firearm safety and operation." FAC ¶ 27. The plaintiffs

17  also state that "[t]he burdens on the plaintiffs and their customers' Second Amendment rights

18  include . . . a restriction on convenient access to a neighborhood gun store," resulting in

19  customers' "having to travel to other, more remote locations." FAC ¶ 45.

20  Assuming the plaintiffs have standing to represent their prospective customers' interests, it

21  is hard to understand how these facts would support an as-applied challenge. They are equally

22  applicable to any prospective gun store owner or customer. Further, these allegations are

23  insufficient to show that Alameda County residents' right to possess guns is impinged by the

24  Ordinance. Although the plaintiffs allege that some customers may appreciate additional gun

25  stores that provide a better level of "personal service" and "personalized training and instruction,"

26  the plaintiffs do not allege that customers cannot buy guns in Alameda County or cannot receive

27  training and instruction. The FAC makes quite clear that there *are* existing retail establishments

28  operating in Alameda County that provide guns. Indeed, the FAC admits that Teixeira himself

Excerpts of Record, page 000020

1  "had previously owned a gun store in Castro Valley," located in Alameda County.  FAC ¶ 29.

2  Teixeira makes no allegation that the Ordinance hampered his ability to operate a gun store before,

3  nor do the plaintiffs allege that the "existing retail establishments" that sell guns are unable to

4  comply with the Ordinance.

5       The Court is unaware of any authority stating or implying that the Second Amendment

6  contemplates a right to "convenient access to a neighborhood gun store."  FAC ¶ 45.  The Second

7  Amendment's core right of the individual to possess guns is not impinged by the Ordinance as

8  applied to the plaintiffs since it merely regulates the distance that all gun stores must be from

9  certain sensitive establishments.  The Ordinance is presumptively lawful.  The plaintiffs' Second

10  Amendment as-applied challenge does not state facts sufficient to support a cause of action.

11  **III.  PLAINTIFFS DO NOT STATE A CLAIM UNDER THE EQUAL PROTECTION**

12         **CLAUSE.**

13       **A.  Second Cause of Action:  Facial Equal Protection Challenge**

14       The essence of the plaintiffs' Equal Protection claims is that gun shops "are being treated

15  differently than other retailers because they are [] gun shop[s] and [] there is no justification for

16  such disparate treatment."  Opp'n 15.  The plaintiffs point out that gun stores are required to

17  obtain conditional use permits while other retailers are not—allegedly for no apparent reason—

18  thus violating their right to Equal Protection.  *Id*. at 15-16.

19       As with the facial challenge to the Ordinance under the Second Amendment, to succeed on

20  a facial challenge under the Equal Protection Clause, the plaintiffs must show "that no set of

21  circumstances exists under which the [a]ct would be valid."  *Salerno*, 481 U.S. at 745.  And as

22  with the facial Second Amendment challenge, the plaintiffs fail to adequately plead that the

23  Ordinance is facially unconstitutional under the Equal Protection Clause.

24       In *Freeman v. City of Santa Ana*, the Ninth Circuit explained that "[t]he first step in equal

25  protection analysis is to identify the [] classification of groups."  68 F.3d 1180, 1187 (9th Cir.

26  1995) (citations omitted).  "To accomplish this, a plaintiff can show that the law is applied in a

27  discriminatory manner or imposes different burdens on different classes of people."  *Id.*  Based on

28  the class identified, the next step is to determine the appropriate level of scrutiny.  *Id.*  "[U]nless a

Excerpts of Record, page 000021

1    classification warrants some form of heightened review because it jeopardizes exercise of a

2    fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal

3    Protection Clause requires only that the classification rationally further a legitimate state interest."

4    *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

5        The plaintiffs cite no authority that gun store owners are a protected class because they

6    have an "inherently suspect characteristic," or, as discussed above, that there is a "fundamental

7    right" to selling guns.  Even assuming that gun shops constitute a cognizable class, Alameda

8    County need only have a rational basis for passing the Ordinance.

9        Under the rational basis test, a "classification must be upheld against equal protection

10    challenge if there is *any* reasonably conceivable state of facts that could provide a rational basis

11    for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (emphasis added).  "A

12    legislature that creates these categories need not actually articulate at any time the purpose or

13    rationale supporting its classification.  Instead, a classification must be upheld against equal

14    protection challenge if there is any reasonably conceivable state of facts that could provide a

15    rational basis for the classification. . . . Finally, courts are compelled under rational-basis review to

16    accept a legislature's generalizations even when there is an imperfect fit between means and

17    ends." *Id.* at 320-21 (citations and quotation marks omitted).

18        The Ordinance passes the rational basis test.  The plaintiffs have not "allege[d] facts

19    sufficient to overcome the presumption of rationality that applies to government classifications."

20    *See Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992) (applying the rational

21    basis standard on a motion to dismiss).  Under a section titled "Facts Relating to the '500 Foot

22    Rule,'" the plaintiffs merely state in conclusory fashion that the Ordinance "is not reasonably

23    related to any possible public safety concerns a retail gun store might raise . . . [n]or does Alameda

24    County articulate how the '500 Foot Rule' is narrowly tailored to achieve any legitimate

25    government interest." FAC ¶ 63.  Without pleading facts to support these conclusions, the

26    plaintiffs have not sufficiently pleaded a cause of action.  Nonetheless, the defendants explain that

27    the 500-feet rule is intended to "protect[] public safety and prevent[] harm in populated, well-

28    traveled, and sensitive areas such as residentially-zoned districts," as well as to "protect[] against

16

the potential secondary effects of gun stores" and to "preserv[e] the character of residential zones." Reply 6. They also justify their classification of gun stores separate from other retail stores based on "the many state and federal laws that regulate retail firearm sales." Br. 7 (citing FAC ¶¶ 17, 19-25). As discussed above, these are legitimate aims and rationales for a local government to act upon. To establish the constitutionality of the Ordinance, the defendants do not have to demonstrate that treating gun stores differently from other retailers is the best way to achieve those goals. The Ordinance satisfies the rational basis test.[4]

**B. First Cause of Action: As-Applied Equal Protection Challenge**

The plaintiffs fail to allege that the Ordinance as applied to them violates their Equal Protection rights. "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [government] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citation omitted). The plaintiff bears the burden of pleading what other entities are similarly situated with him and how they are so. *Scocca v. Smith*, No. 11-cv-1318-EMC, 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012). "A class of one plaintiff must show that the discriminatory treatment was intentionally directed just at him, as opposed to being an accident or a random act." *N. Pacifica*, 526 F.3d at 486 (ellipses and quotation marks omitted). Showing that the treatment was "intentional" does not require showing subjective ill will. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

The plaintiffs fail to adequately allege that the defendants treated the individual plaintiffs differently from any other similarly situated party, or that the defendants did so intentionally and without a rational basis. The plaintiffs state, "Plaintiffs' position is that they are similarly situated

---

[4] Even if the Ordinance had to satisfy a heightened level of scrutiny because it jeopardizes the exercise of a fundamental right, it would do so easily. Because gun stores are especially susceptible to issues of public safety, which the Ordinance is intended to address, the statutory classification is undoubtedly "substantially related" to Alameda County's "important governmental objective" of "protecting public safety and preventing harm." Reply 6; *see Clark*, 486 U.S. at 461 ("To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective."). The plaintiffs allege no facts to show that this is not the case.

Excerpts of Record, page 000023

1   with all other general retailers who are entitled to open shop in commercially zoned areas." Opp'n

2   16. They argue that their allegation that they "are being treated differently than other retailers

3   because they are a gun shop and that there is no justification for such disparate treatment," coupled

4   with their assertion that "Defendants are using zoning laws to redline or ban retail gun stores from

5   Unincorporated Alameda County," is sufficient to plead a violation of Equal Protection. Opp'n

6   15-16. The plaintiffs point to the fact that before the Board of Supervisors passed the Ordinance,

7   gun stores were "not distinguished from other retail stores." RJN Ex. H at 4. Thus, they argue

8   that the defendants should be estopped from claiming that gun stores are dissimilar to other

9   retailers. Opp'n 16.

10      The plaintiffs meet none of the criteria to successfully plead that they are "a class of one."

11  Their allegations appear equally applicable to any other prospective gun store owner covered by

12  the Ordinance. There is a rational basis for the Ordinance. And there is no allegation with facts

13  showing that the plaintiffs were treated differently than others similarly situated. The plaintiffs

14  reiterated at oral argument, as they said in their papers, that they believe gun stores are similarly

15  situated to other commercial retailers that do not sell weapons. This is simply wrong, as

16  underscored by plaintiffs' recognition that gun stores are "strictly licensed and regulated by state

17  and federal law." By those laws and regulations Congress and state legislatures have

18  demonstrated their understanding that gun stores are different from, say, clothing or convenience

19  stores. FAC ¶¶ 17-24.

20      Finally, the plaintiffs' argument that the defendants have no right to enact the Ordinance

21  merely because gun stores were not regulated in this manner before cannot be taken seriously—

22  otherwise, new legislation could never be passed.

23      Because the plaintiffs fail to adequately plead that the defendants intentionally treated the

24  individual plaintiffs differently from others similarly situated with no rational basis, they fail to

25  adequately allege a violation of Equal Protection as the Ordinance was applied to them.[5]

26

27  [5] To the extent the plaintiffs plead that they are being treated differently than the other 29 Federal
    Firearm Licensees, their claim still fails. At oral argument, the plaintiffs made clear that this is not
28  their claim, but the FAC is somewhat ambiguous on this point so the Court will address it in

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

The plaintiffs fail to adequately plead that the Ordinance is facially unconstitutional under the Second Amendment and Equal Protection Clause. The plaintiffs also fail to adequately plead that the Ordinance was unconstitutionally applied to them under the Second Amendment and Equal Protection Clause.

At oral argument, the Court inquired whether the plaintiffs could or wished to plead any additional facts in a further amendment to their complaint. The plaintiffs declined. Accordingly, the First Amended Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: September 9, 2013



_____
WILLIAM H. ORRICK
United States District Judge

---

passing. The plaintiffs allege that many of those licensees "are not located in commercial buildings open for retail firearm sales," and that the Ordinance's requirements have not been imposed on "many" of the 29 licensees, who are either not complying or were never required to comply with the restrictions imposed against VGA. FAC ¶¶ 36-37. However, the plaintiffs do not explain or provide any facts to show how these licensees are similarly situated with the individual plaintiffs. *Scocca*, 2012 WL 2375203, at *5. Even assuming the 29 licensees are similarly situated, the plaintiffs do not allege any facts to *plausibly* show that the defendants *intentionally* treated the individual plaintiffs differently or that the defendants did so without a rational basis beyond the defendants' bare assertions, e.g., that the defendants sought to "trick" the individual plaintiffs or "red-lin[e] them out of existence." FAC ¶¶ 45, 63.

Excerpts of Record, page 000025

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

JOHN TEIXEIRA, STEVE NOBRIGA,  )
GARY GAMAZA, CALGUNS FOUNDATION)
(CGF), INC., SECOND AMENDMENT  )
FOUNDATION (SAF), INC., and    )
CALIFORNIA ASSOCIATION OF      )
FEDERAL FIREARMS LICENSEES     )
(CAL-FFL),                     )
                               )
          Plaintiffs,          )
                               )
  VS.                          )        No. C 12-3288 WHO
                               )
COUNTY OF ALAMEDA, ALAMEDA     )
BOARD OF SUPERVISORS (as a     )
policy making body), WILMA CHAN)
in her official capacity, NATE )
MILEY in his official capacity,)
and KEITH CARSON in his        )
official capacity,             )
                               )
          Defendants.          )
_____)        Pages 1 - 17

                              San Francisco, California
                              Wednesday, September 4, 2013

   **TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**
                       **RECORDING**

**APPEARANCES**:

For Plaintiffs:
                        **CHARLES W. HOKANSON**, Esq.
                        Attorney at Law
                        4401 Atlantic  Boulevard
                        Suite 200
                        Long Beach, California  90807

         (Appearances continued on next page)

Transcribed By:         Candace Yount, CSR# 2737, RMR, CCRR
                        Contract Court Reporter/Transcriber
                        U.S. District Court
                 Computerized Transcription By Eclipse

Excerpts of Record, page 000026

For Plaintiffs (continued):

                        Offices of Donald Kilmer
                        1645 Willow Street
                        Suite 150
                        San Jose, California  95125
            BY:  **DONALD E.J. KILMER**, **JR.,** Esq.


For Defendants:

                        Office of the County Counsel
                        County of Alameda
                        1221 Oak Street
                        Suite 450
                        Oakland, California  94612
            BY:  **MARY ELLYN GORMLEY**, Esq.
                  **SAMANTHA STONEWORK-HAND**, Esq.

1  Wednesday - September 4, 2013                        2:00 p.m.

2                    **P R O C E E D I N G S**

3                        ---oOo---

4       **THE CLERK:**  Calling civil matter 12-3288, Teixeira vs.

5  County of Alameda, et al.

6     Counsel, please come forward and state your appearance.

7       **MS. GORMLEY:**  Good afternoon, Your Honor.  Mary Ellyn

8  Gormley on behalf of defendants County of Alameda.

9       **MS. STONEWORK-HAND:**  Good afternoon, Your Honor.

10 Samantha Stonework-Hand on behalf of defendant County of

11 Alameda.

12      **MR. HOKANSON:**  Afternoon, Your Honor.  Charles

13 Hokanson on behalf of the plaintiffs.

14      **MR. KILMER:**  Good afternoon, Your Honor.  Donald

15 Kilmer on behalf of plaintiffs.

16      **THE COURT:**  Welcome.

17    So, let's take up the motion to dismiss first.  And I'd

18 like to divide things and first talk about the Second Amendment

19 claims and then go on to the equal protective claims.

20      **MR. HOKANSON:**  Thank you, Your Honor.  Mr. Hokanson.

21    May I proceed?

22      **THE COURT:**  Please.

23    So let me just tell you, Mr. Hokanson, where I'm coming at

24 this and then you can take your whacks at -- at where -- what

25 I'm thinking, because I'm -- with respect to the Second

Excerpts of Record, page 000028

1 Amendment claim, I'm planning to grant the moment -- the motion

2 to dismiss.

3    Here's why:  The -- I don't spend any time on the law of

4 the case.  I do agree with Judge Illston's analysis.  And I

5 think the -- what I wanted to hear is substantively why it's

6 wrong and not whether the law of the case applies, because it

7 seems to me that I -- *Heller* and Mc -- and *McDonald* expressly

8 allow this sort of regulation.  To me, it seems reasonable to

9 have an ordinance banning gunshots within 500 feet of

10 residential areas and schools.

11    I don't think this is a case like *Ezell*, which banned

12 firing ranges.  I don't think it's one like *Moore*, which banned

13 the carrying of guns.  And I don't think it's a burden on the

14 Second Amendment right to bear arms.  There are 20 gun stores

15 in Alameda County.

16    So all of those things make me think that the Second

17 Amendment claims are doomed, but -- but please go ahead and

18 tell me why I'm wrong.

19    **MR. HOKANSON:**  Okay.  Rather than attack it credibly

20 like that, let me try it a different way.

21    As we argued in our brief, the -- the trend of the law is

22 to use First Amendment analogues to the Second Amendment right.

23 Both are intangible rights.  Both of them seem to follow sort

24 of the same route.

25    And, in fact, in the reply brief, the defendants agreed

that it was appropriate to look for First Amendment analogues,

but then they went to a substantial burden analysis which

appears Your Honor's kind of accepted.  Unfortunately, that's

the wrong step.

If you accept that First Amendment analogues should apply,

then where you go is to the zoning rules dealing with adult

bookstores.  Those are the most directly-on-point analogous

situations in First Amendment law.  And there's a three-part

test in -- in those cases.

And, in fact, the plaintiffs (sic) cited to the leading

case, *Renton*.  But there are others and they were actually

cited in our Complaint.

The three-part test first looks at whether or not there's

a ban.  In this case, you have to concede that it's not a ban.

The second test looks at whether or not it is

content-based.  If it is content-based, then it's presumptively

invalid.

In this instance, we know that it is directed directly at

firearm sales because that's what the legislative finding was.

"We want to regulate gun sales."  So I would argue that, in the

analogous situation, is a -- is content-based and, therefore,

it's presumptively invalid.

But even if you find that it's not content-based by

suggesting, as I think your Court -- the Court alluded to, that

we're really dealing with secondary effects, and that's

 1  something that's also conceded in the reply.

 2      If you're dealing with secondary effects, then the law is

 3  that there has to be legis -- specific legislative findings and

 4  evidence on which the legislature can find that there are

 5  secondary effects and that this will ameliorate those secondary

 6  effects.  And the -- And the leading case on that is *City of*

 7  *L.A. v. Alameda Books*.

 8      And the Ninth Circuit held in that case that the City of

 9  Los Angeles couldn't rely on a report that was about 20 years

10  old that details certain crime findings.

11      The Supreme Court ultimately overturned that and said,

12  "No, it's reasonable for them to rely on that."  That report

13  said, "Crime increases when we have these adult bookstores

14  congregated together.  It's reasonable for them to rely on that

15  evidence."

16      In this case, in stark contrast, there are no legislative

17  findings, and that's the key.  Rather, what you have, from the

18  evidence that was submitted by the defendants, is simply the --

19  the legislative body saying, "We are engaged in this process of

20  wanting to regulate firearms."  There's no justification.

21  There's no suggestion that gun stores have any secondary

22  effects.

23      And Your Honor said it seems reasonable, but -- and the

24  plaintiffs argue, well, look at all these different things that

25  could happen.

Excerpts of Record, page 000031

1     All of that is speculative and, more importantly, it's

2   beside the point.  Because the issue is, did the legislative

3   body have some evidence on which it could rely to find that

4   there were secondary effects that could be ameliorated by this

5   zoning rule.

6     And it's clear that there -- it's clear that there is no

7   such evidence by what's been submitted.

8     So, I would submit, Your Honor, that following that line

9   of cases, you should find that the statute is presumptively --

10  (clearing throat) -- excuse me, I'm getting -- getting a little

11  hoarse -- presumptively invalid -- I'm okay -- presumptively

12  invalid but, secondarily, even if it's not presumptively

13  invalid, then we have gotten by the pleading stage, and now the

14  question is going to be, can they come up with even more facts?

15    And going to *Ezell*, just to -- I know you've taken a

16  different factual situation.  But it definitely says, when you

17  are facing a motion to dismiss, all you have to do is allege

18  statute and standing and you get by the motion.  And we've done

19  that.  I think we're entitled to go forward.

20        **THE COURT:**  Okay.  So do you -- How do you deal with

21  the fact that both *Heller* and *McDonald* have this express

22  language that seems to deal precisely with this situation?

23        **MR. HOKANSON:**  I don't -- I'm sorry.

24        **THE COURT:**  Go ahead.

25        **MR. HOKANSON:**  I don't think it deals with this

1  situation.  It really is -- It really is dicta.

2      And as I read the cases, frankly, I think that Justice

3  Scalia's comment's really directed to the dissent because the

4  dissent was saying, well, if you knock this one down, we're

5  going to have this row of dominoes that go down.  And I really

6  think that Scalia's saying these -- these laws -- these

7  long-standing laws are presumptively valid, was really just a

8  bump to the dissent.

9      But it is clear dicta.  It is nothing more than that.

10      The Court can't issue -- They could not possibly have

11  issued a ruling that says every law that is -- that affects the

12  Second Amendment is valid.

13          **THE COURT:**  Yeah, but -- Well, it is dicta.  It is

14  from the Supreme Court.  It was picked up again and reaffirmed

15  in *McDonald*.  And then there is the Ninth Circuit case that I

16  can't pronounce that said that it applies in the Ninth Circuit.

17  What am I supposed to do with that?

18          **MR. HOKANSON:**  I don't think that there is a Ninth

19  Circuit case that says -- that relies on the presumption that

20  was stated in *Heller*.

21          **THE COURT:**  No, it does state the language at the

22  bottom here or something.

23              (Pause in proceedings.)

24          **MR. HOKANSON:**  Oh, yes, I'm familiar with the case

25  you're talking about, Your Honor.

1      I don't think that that situation is analogous, but I will

2  say this:  It is much more likely that Justice Scalia was

3  talking about things like the national firearm statutes that

4  have been around really for a long time.

5      This statute is fairly recent.  It's 1998.  That's not

6  ancient, it's not yesterday, but it is relatively recently in

7  legislative history.

8      This is a -- rather than a long-standing, "No, you can't

9  have guns.  We're going to have background checks.  Nobody gets

10  a machine gun," which have been around for -- for a long time,

11  this -- this is not a long-standing statute.

12         **THE COURT:**  Let me hear from you, Miss Gormley.

13         **MS. STONEWORK-HAND:**  Samantha Stonework-Hand for the

14  Defendants, Your Honor.

15      First of all, I'd like to address the First Amendment

16  analogue.

17      Defendants do agree that this case can be analyzed similar

18  to the First Amendment and *Ezell* actually discusses this.  It

19  talks about the *Heller* language and the carveout of the *Heller*

20  language, and those are exceptions to the Second Amendment.

21      And *Ezell* also compares that list of presumptively lawful

22  regulatory measures to those classes of speech in the First

23  Amendment that are categorically unprotected, like obscenity

24  and defamation and (inaudible).  And it says just as some

25  categories of speech are categorically unprotected, so, too,

Excerpts of Record, page 000034

1    are with the Second Amendment.

2         And because *Heller* had called out commercial sale of

3    firearms, that is -- that is some activity that is

4    categorically unprotected and, therefore, the law is not

5    subject to further Second Amendment review.  And that's in the

6    case that plaintiff relies so heavily on.

7         Further, with regard to evidence, we were going to take

8    that line of analysis (inaudible) switched (inaudible) we shall

9    regarding the secondary (inaudible).

10        The recent Third Circuit case, *Drake v. Filko* that

11   defendants filed following the reply, discusses why, one, that

12   courts -- should courts have substantial deference to the

13   legislators' predictive judgments.

14        And in this case, the predictive judgment of the County is

15   that keeping gun stores away from sensitive areas, such as

16   schools and daycare centers, as well as the residentially-zoned

17   districts, furthers substantial interest and public safety and

18   preserving the character of the residential zone.

19        Further, the Third Circuit discusses why it's not

20   surprising.  There is a long legislative history from these

21   laws that, because as of yet in 1998, or in that case, there

22   was no -- there was -- *Heller* hadn't been decided yet.  There

23   was no individual right to bear arms that the legislator could

24   have kept in the back of his mind to develop this legislative

25   history.  And so it's not surprising that we don't have a

1   voluminous history, the cited studies regarding crime.

2        At the time, it was just common sense and reasonable that

3   you would keep gun stores away from residentially-zoned

4   districts.

5        Finally, regarding the long-standing (inaudible)

6   ordinance, it's true it was enacted in 1998, which is 15 years

7   ago.  However, also, in *Drake v. Filco*, it teaches that the

8   analysis of whether an ordinance in long-standing doesn't -- it

9   need not turn the history of the particular ordinance.

10       It doesn't -- It need not turn the history of a particular

11  ordinance in the particular jurisdiction.  In fact, they look

12  to comparable laws in other cities and states in that case

13  regarding the Open Carry law.  And, here, *Heller* already

14  designated regulations on commercial-zoned property of sales of

15  arms that's long-standing.

16       And if -- It doesn't -- Alameda County didn't have to

17  impact this law in 1910 in order for it to be held as a

18  long-standing ordinance.  It was something that was

19  historically regulated.

20            **THE COURT:**  Mr. Hokanson.

21            **MR. HOKANSON:**  Yes.  Thank you, your Honor.

22       *Renton* was around a long time before 1998, and *Renton*

23  deals with what you can and cannot do with your zoning

24  regulations to deal with businesses that you don't want.

25       And, secondarily . . .

Excerpts of Record, page 000036

1    Sometimes, it's difficult to present this side of the

2 argument because it's very easy to say, well, gun sales, you

3 know, don't want them around.  Neighborhoods, you don't want

4 them around.  Bars, you don't want them around.

5    It's very easy to conclude that without thinking.  But you

6 really have to think about them.  And you have to think about

7 what interest does a local legislative body have in deciding

8 whether or not a given building is occupied by a gun store or a

9 general retailer?  Really, not much.

10    There's certainly no evidence in this record that there

11 are any secondary offense from -- from a gun store, that it

12 would decrease property values or lead to crime.

13    Certainly, I would say that the inferences are to the

14 contrary, because is so highly regulated at the Federal and

15 State level.

16       **THE COURT:**  But isn't that a distinction between all

17 those other stores?  Isn't that a reason why the County might

18 want to take a different look if it is close to a store, the

19 drugstore or something like that?

20       **MR. HOKANSON:**  Two responses, Your Honor.  The first

21 one is -- is no, because, the -- from a city's level, those

22 kinds of regulations don't matter any more than Federal

23 regulations related to a bank matter.  That's not within the

24 city's purview.

25    But second -- But the second answer is really a more

1  direct answer, and that's this:  The city didn't do that.  The

2  city didn't -- Notwithstanding what counsel has told you about

3  the city made this substantial judgment, and this and that, the

4  fact of the matter is, from the record that they supplied, you

5  can see that that is not the case.

6      There is nothing in the legislative record that says

7  anything other than, "We want to regulate firearm sales," and

8  that's not their job.

9          **THE COURT:**  All right.  Well, let's move on and --

10 Unless you have anything you want to add, let's move on to the

11 equal protection claims.

12     And I just -- I want to make sure -- You said this in the

13 brief and I just want to make sure that I'm not missing

14 anything else.

15     The equal protection claim that you have is that there's

16 no justification for disparate treatment of gun shops vis-à-vis

17 other commercial retailers.

18         **MR. HOKANSON:**  That's correct.  That's part of it.

19         **THE COURT:**  Well, it's --

20         **MR. HOKANSON:**  That's the main part, Your Honor.

21 That's what is in issue in this motion.

22     The First Cause of Action alleges a class of -- of one

23 intentional treatment.

24     And our -- our response to the motion focused, rather, on

25 the second claim and one of the paragraphs in the first claim

1  that focuses on the fact that gun stores are treated

2  differently than -- than retailers, general retailers.

3        **THE COURT:**  And so, then, the -- the argument of

4  public safety.  Why doesn't public safety differentiate your --

5  your gun shop and the drugstores and the other commercial

6  retailers?

7        **MR. HOKANSON:**  Sure.  Again, it's a two-fold answer.

8      The first answer is, there's no evidence in the record

9  that gun stores are any more dangerous or invite unsavory

10  characters or -- or have any secondary effects on the

11  neighborhood that another general retailer wouldn't have.

12  There really is nothing here.

13      You can say public safety, but parroting those words

14  doesn't get you through the legislative door.  It doesn't get

15  you the evidence that -- that this is an appropriate statute to

16  address the substantial interest.

17      Without the -- And here it gets to the second part.

18  Without those legislative findings, and without some basis when

19  the statute was enacted, to say that this statute is addressed

20  to secondary effects, there's no way you can say that it is not

21  content-based and, therefore, presumptively invalid.

22      There is no evidence in the record.  And, in fact, the

23  record says pretty clearly that that kind of:  Why are we doing

24  this?  What are we trying to achieve?  What's the evidence that

25  there's a problem here that we're trying to address?  The

1   record is very clear that none of that ever happened and, on

2   that basis alone, the statute should be invalid.

3             **THE COURT:**  Miss Stonework-Hand.

4             **MS. STONEWORK-HAND:**  There's actually a California

5   case, *City of -- City of Lafayette*, that says it is reasonable

6   to keep gun stores away from residentially-zoned districts

7   simply because gun stores are heavily regulated, their patrons

8   are heavily regulated, their owners are heavily regulated, and

9   exactly the type of person should not be in a gun store can

10  be -- can be attracted to that area so there is secondary

11  effect.

12      And it is public safety to keep them away from the

13  (inaudible) but it is a part of the burden of (inaudible).

14            **THE COURT:**  What about the *City of Lafayette* case,

15  Mr. Hokanson?

16            **MR. HOKANSON:**  Very limited case, said that gun --

17  said that zoning can address -- I guess I shouldn't

18  characterize it as "very limited."

19      It said that zoning can address gun shops.  It did not say

20  that the legislature could do away with the findings of -- the

21  legislative findings necessary in order to regulate.

22            **THE COURT:**  Do you have anything further, Miss Hand?

23            **MS. STONEWORK-HAND:**  (Shaking head.)

24            **THE COURT:**  So another thing that I'm thinking about

25  is, if I end up sticking with where I'm tentatively going, are

 1  there other facts, Mr. Hokanson, that you would want and be

 2  able to need to address the concerns that Judge Illston has

 3  expressed and that I've expressed here?

 4          **MR. HOKANSON:**  Well, you never want to give up --

 5          **THE COURT:**  No, I --

 6          **MR. HOKANSON:**  -- the bigger part of the apple; right?

 7  Because --

 8          **THE COURT:**  I've been -- I've been where you're

 9  standing.  I just -- The -- This is an issue that ultimately

10  you'll probably seek some other review and -- but -- but I

11  just -- I'd like to know whether there's something else that's

12  there that -- that you would want to take another crack at the

13  pleading.

14          **MR. HOKANSON:**  I really don't think so, Your Honor.  I

15  think that we have -- we have pled the sufficient facts.

16      If -- If Your Honor decides against us, you know, we'll --

17  we'll go forward.

18          **THE COURT:**  So, I will take this under advisement and

19  I am -- and -- and I'll try and get an order out pretty

20  quickly.

21      And -- And then I appreciate your candor and -- and the

22  arguments of both of you today were quite good.

23      And I don't think there's much reason to have a Case

24  Management Conference at the moment.  If -- If we come back,

25  then we can deal with scheduling at that time.

1          MR. HOKANSON:  Very well.

2          MR. KILMER:  Thank you, Your Honor.

3          THE COURT:  Anything else?

4          MS. STONEWORK-HAND:  Thank you, Your Honor.

5                (Speaker not at microphone:)

6          UNIDENTIFIED SPEAKER:  On the case management, would

7    the Court's order (inaudible) case management (inaudible)?

8          THE COURT:  What we would end up doing is, if I allow

9    leave to amend, when we came back here, I suspect there would

10   be another motion to dismiss and then we could deal with it at

11   that time.

12         UNIDENTIFIED SPEAKER:  All right.  (Inaudible)?

13         THE COURT:  Yes.

14      All right.  Thanks very much.

15         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

16              (The proceedings concluded at 2:22 p.m.)

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____

Candace Yount, Contract Transcriber

Friday, March 7, 2014

Candace Yount, CSR# 2737, RMR, CCRR
Contract Court Reporter - United States District Court

1  DONNA R. ZIEGLER [142415]
   County Counsel
2  By: MARY ELLYN GORMLEY [154327]
   Assistant County Counsel
3  SAMANTHA N. STONEWORK-HAND [245788]
   Associate County Counsel
4  Office of County Counsel
   COUNTY OF ALAMEDA
5  1221 Oak Street, Suite 450
   Oakland, California 94612
6  Telephone:     (510) 272-6700

7  Attorneys for County of Alameda, Alameda
   Board of Supervisors, Wilma Chan,
8  Nate Miley, and Keith Carson

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DIVISION OF CALIFORNIA

12

13
   JOHN TEIXEIRA, STEVE NOBRIGA, GARY        Case No.: CV12-3288 (WHO)
14 GAMAZA, CALGUNS FOUNDATION
   (CGF), INC., SECOND AMENDMENT            **DEFENDANT COUNTY OF**
15 FOUNDATION (SAF), INC., and             **ALAMEDA'S REPLY IN SUPPORT OF**
   CALIFORNIA ASSOCIATION OF FEDERAL       **MOTION TO DISMISS PLAINTIFFS'**
16 FIREARMS LICENSEES (Cal-FFL),           **FIRST AMENDED COMPLAINT**

17                                          Date:      September 4, 2013
                Plaintiffs,                 Time:      2:00 p.m.
18                                          Location:  Ctrm 2, 17th Floor
                                                       450 Golden Gate Ave
19      v.                                             San Francisco, CA

20 COUNTY OF ALAMEDA, ALAMEDA
   BOARD OF SUPERVISORS (as a policy
21 making body), WILMA CHAN in her official
   capacity, NATE MILEY in his official capacity,
25 and KEITH CARSON in his official capacity,

22              Defendants.

23

24

26

27

28
   _____
   DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINITFFS' FIRST AMENDED COMPLAINT, Case No. CV12-
   3288 (WHO)

# I.    INTRODUCTION

Although Second Amendment jurisprudence is complex and evolving, this case is simple. Even assuming Plaintiffs' factual allegations are true, they have failed to sufficiently plead an equal protection or Second Amendment claim as a matter of law. Plaintiffs' equal protection claims fail because the First Amended Complaint does not contain facts sufficient to show that Defendants intentionally granted conditional use permits and variances to other similarly-situated businesses while denying them to Plaintiffs. Plaintiffs failed to identify a comparator that was treated differently. The lack of a comparator is fatal to their equal protection claims. Plaintiffs have also failed to allege anything more than conclusory allegations in support of their Second Amendment claims. Alameda County Land Use Ordinance 17.54.131 is presumptively lawful and there are no allegations to rebut this presumption. Even if the Ordinance were not presumptively lawful, there are no allegations demonstrating that the Ordinance substantially burdens the core Second Amendment right. Further, the Ordinance, as previously held by this Court, is constitutional under any applicable level of scrutiny. Accordingly, this Court must grant Defendants' Motion to Dismiss without leave to amend.

# II.    MOTION TO DISMISS STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the purposes of deciding a motion to dismiss, only well-pled factual allegations shall be accepted as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). On a motion to dismiss, the Court may consider documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

Excerpts of Record, page 000045

# III. LEGAL ARGUMENT

## A. Plaintiff's Equal Protection Claims Must Fail

Plaintiffs assert a "class of one" equal protection claim. (FAC ¶¶ 69-75.) To sufficiently establish a class of one claim, a plaintiff must first allege that others, "similarly situated in every material respect" were treated differently. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). To survive a motion to dismiss the plaintiff must specifically identify the similarly-situated businesses. *See Vogt v. City of Orinda,* No. C 11–2595 CW, 2012 WL 1565111 at *3 (N.D. Cal. May 2, 2012); *Scocca v. Smith,* No. C-11-1318 EMC, 2012 WL 2375203 at *5 (N.D. Cal. June 22, 2012). A plaintiff must then show the difference in treatment was without rational basis, that is, the government action was "irrational and abusive," *Jicarilla*, 440 F.3d at 1211, and "wholly unrelated to any legitimate state activity." *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (quotation omitted).

The allegations in the FAC establish that retail gun shops are not "similarly situated in every material respect" to all other general retailers who are entitled to open shop in commercially zoned areas or federal firearm licensees who are not open for retail sales. Retail gun shops and individuals who purchase and/or acquire firearms are strictly regulated by both state and federal law. (FAC ¶¶ 21, 66.) No other general retailers are subject to these broad restrictions. Plaintiffs have failed to identify specific comparators, and in light of *Iqbal*, their threadbare generalized pleading is insufficient to state a class of one equal protection claim. *Kansas Penn Gaming, LLC*, 656 F.3d at 1219 (citing *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010)); *Vogt,* 2012 WL 1565111 at *3; *Scocca,* 2012 WL 2375203 at *5.

Plaintiffs have also failed to sufficiently plead that Defendants intentionally treated them differently without a rational basis. Gun stores are but one of many types of businesses that require CUPs or are subject to distance restrictions. (Doc. #44-1 at pp. 8-10.) Even if Defendants did treat retail gun shops differently, this difference in treatment is for a rational reason – specifically because all other general retailers do not sell products that are as heavily

Excerpts of Record, page 000046

1 | regulated by the state and federal government. Accordingly, Plaintiffs' equal protection claims

2 | must fail.

3 | **B.    Plaintiffs' Second Amendment Claims Must Fail**

4 | This Court has already ruled that while the Supreme Court in *District of Columbia v.*

5 | *Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) held that

6 | there is an individual right to bear arms for use in self-defense particularly in the home, there is

7 | no case that recognizes a right to sell firearms. (Doc. #37 at 8:15-23.) The *Heller* court stated,

8 | and the *McDonald* court affirmed, that certain regulations are "presumptively lawful" including:

9 | "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S.

10 | at 626-27, n.26; *McDonald*, 130 S. Ct. at 3047. Following *Heller*, this Court ruled that the

11 | Ordinance is presumptively lawful and that there were no allegations that rebutted the

12 | presumption of validity. (Doc. #37 at 6:26-9:13.) This is now the law of the case and need not

13 | be revisited. Although the application of the law of the case doctrine is discretionary, *United*

14 | *States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000), this is precisely the situation in

15 | which it would apply. [1]  *Id.*  Thus, the Ordinance should be considered presumptively lawful and

16 | it should be Plaintiffs' burden to state allegations sufficient to rebut that presumption. The FAC

17 | fails to meet this burden.

18 | 
19 | 1.    Even If The Court Were To Revisit The Analysis, The Ordinance Is
Constitutional Under Any Standard Of Scrutiny

20 | Plaintiffs argue that something akin to a First Amendment analysis should be applied to

21 | claims of Second Amendment infringement, and Defendants do not disagree. *See e.g. United*

25 | *States v. Vongxay*, 594 F.3d 1111, 1117 (9th Cir. 2010) ("The protections of the Second

22 | Amendment are subject to the same sort of reasonable restrictions that have been recognized as

23 | limiting, for instance, the First Amendment"); *Hall v. Garcia*, No. C10-03799, 2011 WL 995933

24 | 

---

26 | [1] "Under the [law of the case doctrine], a court is generally precluded from reconsidering an issue previously
decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d

27 | 443, 452 (9th Cir. 2000). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by
necessary implication in [the] previous disposition.'" *Id.* It is undisputed that this Court has already explicitly ruled

28 | on this issue in the identical case. (Doc. #37.)

Excerpts of Record, page 000047

at *4 (Mar. 17, 2011).  *See also United States v. Marzzarella*, 595 F.Supp.2d 596, 606

(W.D.Pa.2009) (suggesting that a ban on guns with obliterated serial numbers should be judged

under a standard comparable to that "applicable to content-neutral time, place and manner

restrictions," and upholding the ban partly because it leaves "open ample opportunity for law-

abiding citizens to own and possess guns"), *aff'd*, 614 F.3d 85, 95 (3d Cir. 2010).  Several

Circuits, in the wake of *Heller* and *McDonald* have used a two-pronged approach to examine

Second Amendment challenges, analogous to the framework used when addressing First

Amendment rights.  First the Court considers whether the challenged law imposes a substantial

burden on conduct falling within the scope of the Second Amendment's guarantee.  If it does not,

the inquiry is complete.  If the law does impose a burden, the court evaluates the law using a type

of intermediate scrutiny.  See *United States v. Marzzarella,* 614 F.3d 85, 89 (3d Cir. 2010);

*Heller v. District of Columbia*, 670 F.3d 1244, 1251–53 (D.C. Cir. 2011) (hereinafter "*Heller II*

"); *Ezell v. City of Chicago*, 651 F.3d 684, 702–04 (7th Cir. 2011); *United States v. Chester*, 628

F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010);

*see also Scocca*, 2012 WL 2375203 at *6 (holding that although the *Nordyke v. King*, 644 F.3d

776 (9th Cir. 2012) panel decision is no longer binding authority the reasoning of the panel

decision is still persuasive -i.e., that "heightened scrutiny does not apply unless a regulation

substantially burdens the right to keep and to bear arms for self-defense." *Nordyke*, 644 F.3d at

783.)

        a.     The Ordinance Does Not Impose A Substantial Burden On The Core
               Second Amendment Right

The Second Amendment protects "the right to possess a handgun in the home for the

purpose of self-defense." *McDonald*, 130 S. Ct. at 3050 (2010).  *Heller* recognized that "the

right to keep and bear arms, like other Constitutional rights, is limited in scope and subject to

some regulation." *United States v. Chester*, 628 F.3d 673, 676 (4th Cir. 2010).  Neither of the

Seventh Circuit cases that Plaintiffs so heavily rely on alter this analysis.  (Opp. at 8-10, 12-15.)

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) and *Moore v. Madigan*, 702 F.3d 933 (7th

Cir. 2012), unlike the Ordinance, addressed regulations that were complete bans on conduct that

Excerpts of Record, page 000048

directly burdened the core Second Amendment right.  The law in *Ezell* prohibited firing ranges and effectively served as a prohibition on legal gun ownership in Chicago.  While the Seventh Circuit struck down the law as unconstitutional, it nevertheless recognized that Chicago could promulgate "sensible zoning and other appropriately tailored regulations" to address its legitimate concerns regarding firing ranges.  *Ezell*, 651 F.3d at 709.  In *Moore*, the challenged law was a ban on carrying a ready to use weapon outside the home.  702 F.3d at 934.  After holding that the ban was unconstitutional, the *Moore* court recognized that reasonable limits can be placed on that Second Amendment right.  *Id.* at 942 ("we order our mandate stayed for 180 days to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public.").  Reasonable regulation is permissible even in the Second Amendment context.  *See Marzzarella*, 614 F.3d at 89.

Even if the scope of the Second Amendment extended to a right to acquire or sell firearms, which no case has recognized and the County disputes, the Ordinance does not unconstitutionally burden protected conduct.  The Ordinance permits Plaintiffs to open a gun store anywhere that is more than 500 feet from a residentially-zoned district and other sensitive places.  The Ordinance is exactly the type of sensible zoning regulation that puts reasonable geographic limitations on where firearms may be bought or sold.  Because the Ordinance does not impose a substantial burden on the core Second Amendment right, the Court's inquiry should end.

   b. Even If The Ordinance Does Impose A Substantial Burden It Satisfies Constitutional Scrutiny

Much like in the First Amendment context, there is no one-size-fits-all standard of review for Second Amendment challenges.  In *Chester*, the Fourth Circuit reasoned that,

> Gun-control regulations impose varying degrees of burden on Second Amendment rights, and individual assertions of the right will come in many forms. A severe burden on the core Second Amendment right of armed self-defense should require strong justification. But less severe burdens on the right, laws that merely regulate rather than restrict, and laws that do not implicate the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINITFFS' FIRST AMENDED COMPLAINT
Case No. CV12-3288 (WHO)  5

Excerpts of Record, page 000049

> central self-defense concern of the Second Amendment, may be
> more easily justified.

*United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) (citation omitted). Because the Ordinance does not implicate the core self-defense concern of the Second Amendment and merely regulates rather than restricts, at most it should be scrutinized under intermediate scrutiny – i.e. whether there is "reasonable fit" between the challenged regulation and a "substantial" government objective. *Id.*

The County's interest in protecting public safety and preventing harm in populated, well-traveled, and sensitive areas such as residentially-zoned districts is well-established as a substantial government objective. *See e.g., U.S. v. Salerno*, 481 U.S. 739, 745 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *Hall v. Garcia*, No. C 10–03799 RS, 2011 WL 995933 at * 5 (N.D. Cal. Mar. 17, 2011). Further, the County has an interest in protecting against the potential secondary effects of gun stores. Gun stores can be targets of the exact persons that should be excluded from purchasing and possessing weapons; therefore it is reasonable to regulate them such that they are located away from residential areas. *Suter v. City of Lafayette* (1997) 57 Cal. App. 4th 1109, 1132. Finally, there is a substantial interest in preserving the character of residential zones. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 50 (1986) (holding that the preserving the quality of a municipality's neighborhoods and overall quality of urban life is "vital"). Here there is a reasonable fit between prohibiting commercial firearms sales within 500 feet from residentially-zoned areas and protecting public safety, potential secondary effects, and preserving the quality of unincorporated Alameda County's residential neighborhoods.

In addition, the Ordinance does not unnecessarily burden Plaintiffs' Second Amendment rights. This law has no impact on Plaintiffs' rights to possess a handgun at home or on other private property. Plaintiffs do not assert that there is a shortage of places to purchase guns in or near Alameda County; in fact, the Big 5 Sporting Goods, which is 607 feet from Plaintiffs' proposed site, sells both firearms and ammunition, (Doc. #37 at 9:18-22), and there are a total of twenty gun stores in Alameda County. (RJN, Exh I.) Therefore, even if the Court were to apply

Excerpts of Record, page 000050

1   the strictest of scrutiny applicable the law would still be upheld.  In fact, other courts in this

2   district have upheld similar regulations.  *See Hall*, 2011 WL 995933 at *5 (upholding a

3   regulation prohibiting gun possession within 1000 feet of a school under intermediate scrutiny,

4   but noting that the regulation would survive "[u]nder any of the potentially applicable levels of

5   scrutiny" because of the substantial government interest in protective citizens from gun violence

6   in sensitive spaces).  Accordingly, the Court must dismiss Plaintiffs' Second Amendment claims

7   as a matter of law.

8           **C.      Individual Defendants Must Be Dismissed**

9           The claims against Supervisors Chan, Miley, and Carson in their official capacities are

10  duplicative of the claims against the Board.  *Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th

11  Cir. 1986).  Plaintiffs previously had no objection to dismissing these defendants.  (Doc. #22 at

12  ¶45.)  Accordingly, any claims against the individual defendants should be dismissed with

13  prejudice.

14          **D.      Leave To Amend Must Be Denied**

15          Although Courts may grant leave to amend whenever "justice so requires," it is within

16  the Court's discretion to deny leave to amend when an amendment would be futile.  *In re*

17  *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 990 (9th Cir. 2008).

18  When the plaintiff has previously amended the complaint the Court has especially broad

19  discretion.  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).  Plaintiffs have

20  again failed to sufficiently state either an equal protection or Second Amendment claim and any

21  amendment would be futile.  Accordingly, leave to amend should be denied.

25  ///

22  ///

23  ///

24  ///

26  ///

27  ///

28

1

## IV. **CONCLUSION**

2    For all the foregoing reasons, Defendants respectfully request that the Court dismiss

3  Plaintiffs' First Amended Complaint without leave to amend.

4

5  Dated:  August 2, 2013                DONNA R. ZIEGLER
                                          County Counsel, in and for the
6                                         County of Alameda, State of California

7

8

9                          By   /s/   *Mary Ellyn Gormley*

10                              MARY ELLYN GORMLEY
                                Assistant County Counsel
11
                                Attorneys for County of Alameda, Alameda
12                              Board of Supervisors, Wilma Chan, Nate
                                Miley, and Keith Carson

13

14

15

16

17

18

19

20

21

25

22

23

24

26

27

28

Donald E.J. Kilmer, Jr., (CA State Bar No. 179986)
Law Offices of Donald Kilmer
A Professional Corporation
1645 Willow Street, Suite 150
San Jose, California 95125
Telephone: (408) 264-8489
Facsimile: (408) 264-8487
EMail: Don@DKLawOffice.com

Jason A. Davis (CA State Bar No. 224250)
Davis & Associates
27201 Puerta Real, Suite 300
Mission Viejo, California 92691
Telephone: (949) 310-0817
Facsimile: (949) 288-6894
EMail: Jason@CalGunLawyers.com

Charles W. Hokanson (CA State Bar No. 163662)
4401 Atlantic Ave, Suite 200
Long Beach, California 90807
Telephone: (562) 316-1476
Facsimile: (562) 316-1477
Email: CWHokanson@TowerLawCenter.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TEIXEIRA, STEVE NOBRIGA, GARY GAMAZA, CALGUNS FOUNDATION (CGF), INC., SECOND AMENDMENT FOUNDATION (SAF), INC., and CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES (Cal-FFL), | Case No. 3:12-CV-03288 -WHO **Opposition to Motion to Dismiss** |
| Plaintiffs, | |
| vs. | Date: September 4, 2013 |
| COUNTY OF ALAMEDA, ALAMEDA BOARD OF SUPERVISORS (as a policy making body), WILMA CHAN in her official capacity, NATE MILEY in his official capacity, and KEITH CARSON in his official capacity, | Time: 2:00 p.m. Place: Courtroom 2 (17th Floor) |
| Defendants. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   DEFENDANTS INAPPROPRIATELY ASK THE COURT TO ACCEPT THEIR
      VERSION OF THE "TRUE FACTS"..........................................................................2

III.  DEFENDANTS' ARGUMENTS ASSERTING THAT PLAINTIFF CANNOT SHOW A
      SECOND AMENDMENT VIOLATION ARE MISPLACED ENTIRELY .............................5

      A.   The "law of the case" doctrine has no application here....................................5

      B.   The Second Amendment protects much more than the right to defend ones' self in
           the home...........................................................................................6

           1.   *McDonald v. Chicago* held that the right to bear arms is a fundamental
                right protected by the Second Amendment..............................................7

           2.   The Seventh Circuit has held squarely that Second Amendment rights do
                not begin and end at one's front door ....................................................8

           3.   The Seventh Circuit also has ruled that Second Amendment protects
                against infringement of ancillary conduct that is necessary to exercise one's
                core right to self-defense...................................................................9

      C.   There is no "presumption of lawfulness" to be applied here ...........................10

      D.   Employing A Proper Analytical Framework To Plaintiffs' Claims Must Result In
           Denial Of Defendants' Motion Because They Bear The Burden Of Justifying The
           County's Laws And Have Not Even Tried To Do So ....................................12

IV.   DEFENDANTS' OWN EVIDENCE BELIES THEIR ARGUMENTS AND SHOWS
      PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE VALID ...............................15

V.    CONCLUSION............................................................................................1818

Excerpts of Record, page 000054

# TABLE OF AUTHORITIES

**Cases**

*Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219 (7th Cir. 1995) .............................5

*Balistreri v. Pacifica Police Dept.* 901 F.2d 696 (9th Cir. 1990). ...........................................3

*Barker v. Riverside County Office of Ed.* 584 F.3d 821 (9th Cir. 2009)...................................3

*Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007). ..........................................3

*Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585 (8th Cir. 2009) ...............................................3

*City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882 (9th Cir. 2001). ...............1, 6

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957) ................................................................3

*De La Cruz v. Tormey,* 582 F.2d 45 (9th Cir. 1948)................................................................3

*District of Columbia v. Heller,* 554 U.S. 570 (2008)......................................................Passim

*Eatwell v. Beck*, 41 Cal. 2d 128, 257 P.2d 643 (1953) .........................................................10

*Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011) ..............................................Passim

*Jackson v. State of Alabama State Tenure Com'n,* 405 F.3d 1276 (11th Cir. 2005) ..............11

*L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419 (2nd Cir. 2011).........................................3

*McDonald v. City of Chicago,* 561 U.S. __, 130 S.Ct. 3020 (2010).................................Passim

*Moore v. Madigan,* 702 F. 3d 933 (2102)..........................................................................8, 9

*People v. Banks*, 53 Cal. 2d 370, 1 Cal. Rptr. 669, 348 P.2d 102 (1955)............................10

*Pickett v. Prince*, 207 F.3d 402 (7th Cir. 2000).....................................................................5

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2nd Cir. 2009)..............................................3

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988)....................................................5

*Thomas v. Bible,* 983 F. 2d 152 (1993).................................................................................11

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986) ..........................................................5

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000).................................1, 5

*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) ....................................................1, 5, 6

**Other Authorities**

Moore's Federal Practice § 134.21[1] (3d ed. 2003).................................................................5

R. Pergament, *TruTV Crime Library, The Menendez Brothers (*available at
http://www.trutv.com/library/crime/notorious_murders/famous/menendez/trial_16.htm
l ...............................................................................................................................4

**Rules**

Federal Rule of Civil Procedure 8 ............................................................................................2

Excerpts of Record, page 000056

## I. Introduction

Defendants' motion to dismiss attempts to turn this case on its head. While, certainly, there are basic notice pleading standards that must be met when statutes are claimed to be unconstitutional, the actual burden here is on the government to justify its implementation of the challenged law. But Defendants make no attempt to do so. Indeed, that very failing is at the core of this action. Simply put, Plaintiffs allege that the County of Alameda has instituted zoning rules that adversely affect core constitutional rights without a proper basis for doing so. It is up to Defendants to prove that their actions survive the heightened scrutiny required in such situations. They fail to do so.

Instead, Defendants argue that this court must rule in their favor, under the doctrine of "law of the case," because they claim it is bound by the decision on a prior motion to dismiss the original complaint. But the doctrine of law of the case does not apply here. Interlocutory rulings by a trial court do not amount to "law of the case." *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 888 (9th Cir. 2001). Rather, the doctrine applies when an appellate court has finally ruled on an issue, then remanded the case to the trial court for further proceedings. In that situation, the trial court is "bound"[1] to follow the higher court's decision. But the doctrine is "wholly inapposite" to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction by an intervening appeal. *United States v. Smith,* 389 F.3d 944, 949 (9th Cir. 2004); *see also Santa Monica Baykeeper,* 254 F.3d at 888.

Furthermore, the ruling on the prior motion to dismiss was clearly erroneous. The decision reasoned that that the challenged regulations were entitled to a "presumption" of validity and that no precedent existed suggesting that there was any Second Amendment right outside of one's home. Neither of these propositions is correct. The Supreme Court dictum in *District of Columbia v. Heller,* 554 U.S. 570 (2008), that the prior decision relied upon to find the asserted "presumption" is not the law; such blanket presumption of constitutionality was actually rejected by that Court. *See Ezell v. City of*

[1] As will be discussed later in this opposition, saying that any court is bound by the doctrine of "law of the case" is incorrect. The doctrine is discretionary even when it applies. *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

*Chicago,* 651 F.3d 684, 706 (7th Cir. 2011). And, subsequent decisions have clearly ruled that core Second Amendment rights include much more than the right to keep a handgun in one's home. The personal Second Amendment rights announced in *Heller,* and *McDonald v. City of Chicago,* 561 U.S. __, 130 S.Ct. 3020 (2010), include the right to self defense outside of one's home and also include ancillary matters that enable a person to exercise that right. *Heller*, 554 U.S. at 599; *McDonald*, 130 S.Ct. at 3048. For example, one court found that a law prohibiting firing ranges within a city's limits was unconstitutional as it impermissibly burdened a citizen's Second Amendment rights. *Ezell v.City of Chicago,* 651 F.3d 684, 706 (7th Cir. 2011). That court stated: "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id*. at 704.

Finally, the court's prior ruling is perhaps understandable given that Second Amendment litigation defining the scope of the rights protected is evolving. However, since the filing of the initial motion to dismiss in this matter, precedent has developed which sets out the proper method for analyzing claims that government regulations impinged those rights. Uniformly, the cases confirm that the proper framework is that set out in the cases dealing with alleged restrictions on First Amendment rights. *See e.g.,* Ezell, 651 F.3d at 706-07 (Seventh "and other circuits have already begun to adapt First Amendment doctrine to the Second Amendment context"). Following that framework, the gun store and training facility at issue here is as vital to the exercise of Second Amendment rights as is a bookstore to the exercise of First Amendment rights. And, the county's restrictions on the opening of the gun store here cannot satisfy the heightened level of scrutiny that is applied to restrictions on bookstores – nor has the County even tried to argue that they can. As such, the instant motion should be denied.

## II.    Defendants Inappropriately Ask the Court to Accept Their Version of the "True Facts"

Federal Rule of Civil Procedure 8 sets out the rules for a properly pleaded complaint. It requires that the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." It also mandates that the pleading to be "simple, concise and direct. No technical form is required." And, in the end, the rule directs that "Pleadings must be construed so as to do justice."

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

Excerpts of Record, page 000058

allegations." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). It must

simply set forth "the 'grounds' of his 'entitle[ment] to relief'" in more than conclusions and labels. *Id.*

Thus, when faced with a Rule 12(b)(6) motion, the court simply must decide whether the facts alleged, if

true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the

motion must be denied. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); *De La Cruz v.*

*Tormey,* 582 F.2d 45, 48 (9th Cir. 1948). Indeed, the court must "accept as true all of the factual

allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most

favorable to plaintiff, and construe the complaint liberally.' *Rescuecom Corp. v. Google Inc.*, 562 F.3d

123, 127 (2nd Cir. 2009); *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 429 (2nd Cir. 2011). ***All***

reasonable inferences from the facts alleged are to be drawn in plaintiff's favor in determining whether

the complaint states a valid claim. *Braden v. Wal-Mart Stores, Inc.* 588 F.3d 585, 595 (8th Cir. 2009); *see*

*also Barker v. Riverside County Office of Ed.* 584 F.3d 821, 824 (9th Cir. 2009). Dismissal is only

appropriate where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.* 901 F.2d 696, 699 (9th Cir.

1990). Certainly, the court's job on a motion to dismiss is not to weigh evidence or to decide the merits

of the case based upon a defendant's view of the "true" facts.

Unfortunately, Defendants offer their own set of alleged "facts" to support their arguments, which

they claim prove that Plaintiff's allegations are untrue, but which really only show that material facts are

in dispute. For example, Defendants ask the court to take judicial notice of the fact that a Big 5 sporting

goods store, which sells firearms, is only 607 yards from Plaintiff's proposed store site (apparently to

counter Plaintiff's allegations that the County's zoning regulations severely impact citizens' second

amendment rights). While Defendants suggest that Big 5 is a suitable substitute for Plaintiff's store, they

are actually, but subtly, misleading the court. It is common knowledge that Big 5 does not sell handguns

(or offer training an gunsmithing). Indeed, anyone who followed the sensational Menendez brothers

murder trial in the 1990's remembers the devastating cross examination of Eric Menendez when he was

confronted with the fact that Big 5 had not sold handguns since 1986 after testifying in detail that he went

to a Big 5 store in 1989 to buy a handgun. *See* R. Pergament, *TruTV Crime Library, The Menendez*

*Brothers (*available at

Excerpts of Record, page 000059

http://www.trutv.com/library/crime/notorious_murders/famous/menendez/trial_16.html; last visited on February 17, 2013). In any event, the disparate evidentiary facts presented by both sides in this matter simply show that there is a dispute here. But the court cannot resolve such dispute or weigh the evidence to reach a decision on this motion; it is required to accept as true the allegations of fact contained in the complaint.

The same is true of the supposed evidence that Defendants suggests proves that Plaintiff cannot establish its equal protection claim, in part, because all of the firearms dealers it alleges operate throughout Alameda County proves there is no intentional discrimination against firearms stores.[2] Certainly, Defendants are entitled to argue as much at trial. However, on this motion, those arguments cannot supplant Plaintiff's clear allegation that Defendants have violated equal protection mandates by "redlining" or using zoning regulations as a façade to prohibit businesses that are undesired. Specifically, the first amended complaint alleges at paragraph 61 that "[s]ubsequent to filing this law suit, plaintiffs commissioned a study to determine if any prospective gun store could satisfy the CUP based solely on having to comply with the '500 Foot Rule,' [which concluded] that it is virtually impossible to open a gun store in unincorporated Alameda County while complying with this rule due to the density of disqualifying properties. … the study indicate[d] that there is only one parcel in the entire unincorporated county that is greater than 500 feet from a residentially zoned property, and that parcel is also unavailable as it lies within 500 feet of an establishment that sells alcohol." The court is required to accept Plaintiff's allegations as true, even if it believes that weight of the evidence favors Defendants.

In sum, there are obviously disputed facts and inferences here. But there is nothing about this case that gives rise to any "special" pleading requirements outside of Rule 8. Nor have the Defendants' provided notice that this is a motion for summary judgment. As such, the court is required to accept all properly pleaded facts in the first amended complaint as true and cannot dismiss this action based upon Defendants' allegation of disputed facts.

_____

[2] In making this argument, Defendants again are subtly peddling an improper argument. Most of the alleged firearms dealers identified by them them are in other jurisdictions, not unincorporated Alameda County. As will be discussed in more detail below, it is inappropriate and "profoundly mistaken" to "assume that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction." *Ezell v. City of Chicago,* 651 F.3d at 697.

Excerpts of Record, page 000060

III.  **Defendants' Arguments Asserting That Plaintiff Cannot Show a Second Amendment Violation Are Misplaced Entirely**

Defendants' primary argument in support of their motion to dismiss Plaintiff's Second Amendment claim is that the court is bound by the conclusions reached in a decision on a prior motion to dismiss under the doctrine of "law of the case." That is, Defendants contend that the court's prior order finally establishes that the Second Amendment only protects "the ability to protect 'hearth and home'" and that the challenged ordinances are "presumptively lawful." Defendants argue that the court cannot revisit the issues now. Defendants are wrong.

A.  **The "law of the case" doctrine has no application here**

The "law of the case" doctrine is nothing more than a "judicial invention designed to aid in the efficient operation of court affairs." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). It is intended to "maintain consistency during the course of a single lawsuit [by suggesting that] reconsideration of legal questions previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (citation omitted). Thus, the doctrine holds that "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted).

However, "[t]he law of the case doctrine is 'not an inexorable command' (citation omitted) nor is it 'a limit to [a court's] power.'" *United States v. Smith*, 389 F. 3d 944, 949 (9th Cir. 2004 ). Rather, "[a]pplication of the doctrine is discretionary." *Lummi Indian Tribe*, 235 F.3d at 452; *see also Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (stating that the "doctrine is highly flexible"); *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir. 1995) ("A judge may reexamine his earlier ruling"); Moore's Federal Practice § 134.21[1] (3d ed. 2003) ("When a court applies the law of the case doctrine to its own prior decisions ... the traditional formulations of the doctrine must be conceived as rules of thumb and not as straightjackets on the informed discretion and sound practical judgment of the judge").

Excerpts of Record, page 000061

Indeed, it has been said that the "law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction" through an intervening appeal. *Smith,* 389 F.3d at 949 (*quoting Santa Monica Baykeeper*, 254 F.3d at 888). In both *Smith* and *Santa Monica Baykeeper*, the court of appeals was faced with a situation where district court reconsidered and changed one of its own interlocutory orders. In both cases, the Ninth Circuit was "asked to assess whether the [district] court's reconsideration of its order violated the law of the case doctrine" and in each case the appellate court's "analysis emphasized the importance in law of the case doctrine jurisprudence of distinguishing between a district court's consideration of its own prior decision and the directive of a higher court." *Smith,* 389 F.3d at 949. That is, the Ninth Circuit held: "[t]he legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court. ***All rulings of a trial court are subject to revision at any time before the entry of judgment***. A trial court may not, however, reconsider a question decided by an appellate court. *Id.* (*quoting Santa Monica Baykeeper,* 254 F. 3d at 888-89, *emphasis added*).

As such, the doctrine of law of the case does not preordain the result here. It does not even apply in this case. The court is absolutely free to, and should, makes its own determinations based upon the state of the law and the pleadings as currently existing.[3]

### B.     The Second Amendment protects much more than the right to defend ones' self in the home

Defendants' next argument, which was accepted in the ruling on the prior motion to dismiss, is that Plaintiffs cannot establish a Second Amendment violation because "[t]he Second Amendment, as construed in *District of Columbia v. Heller,* 554 U.S. 570 (2008), protects 'the right to possess a handgun in the home for purposes of self-defense'… [it] established no more than [that]." *Mot to Dismiss, p. 12. ,*

---

[3] In point of fact, this motion does not involve a "reconsideration" at all. It is a new attack upon a superseding pleading. For this reason also, the law of the case doctrine is inapplicable.

Excerpts of Record, page 000062

*ll 8-13.* But their position is simply not correct. *Heller* established much more than that.[4] And, subsequent cases have found that (contrary to Defendants' claim) the Second Amendment protects not only the right to possess firearms outside of the home for self defense, but also the right to access all things necessary to exercise the core right of self-defense.

Plaintiffs believe, and have alleged, that some of the things necessary to proper exercise of core second amendments rights are the ability to purchase appropriate firearms, to obtain training and guidance in the use of the firearm, gunsmithing services and to maintain proficiency in firearms use and that the County's zoning ordinances impinge upon those rights. Emerging case law supports these allegations.

### 1. *McDonald v. Chicago* held that the right to bear arms is a fundamental right protected by the Second Amendment

The first case post-*Heller* to confirm that the Supreme Court viewed the rights protected by the Second Amendment to exist beyond defending oneself in the home was *McDonald v. Chicago,* 561 U.S. __, 130 S. Ct. 3020, 3049-50 (2010). There the Supreme Court expanded on its reasoning in *Heller* and held that the Second Amendment right to keep and to bear arms is fundamental, not merely that some subset of that right is fundamental. It found that there was no basis to subdivide the right "to keep" arms

---

[4] Defendants insist on this overly narrow reading of *Heller,* which recognizes only the result and ignores the reasoning of the case, despite the Court's clear guidance in the decision. The Court's ultimate ruling focused the right to keep arms in the home because the ordinances at issue there, and the specific question that the Supreme Court was answering, concerned restrictions on firearms in the home. The opinion expressly acknowledged that it did not address every aspect of the Second Amendment's protections outside the home because it was not called upon to do so in that case. However, the reasoning throughout the opinion reveals that the rights announced do not – indeed cannot -- end at one's doorstep. Among other things, the Court repeatedly referenced to the right to bear arms outside the home. *See Heller*, 128 S. Ct. at 2801 ("Americans valued the ancient right [to keep and bear arms] ... for self-defense and hunting") ; 128 S. Ct. at 2812 (" 'No doubt, a citizen who keeps a gun or pistol under judicious precautions, practices in safe places the use of it, and in due time teaches his sons to do the same, exercises his individual right.' "). Even *Heller's* dissenters acknowledged the decision protected carrying of arms for self defense outside of the home: "[g]iven the presumption that most citizens are law abiding, and the reality that the need to defend oneself may suddenly arise in a host of locations outside the home, I fear that the District's policy choice may well be just the first of an unknown number of dominoes to be knocked off the table. *Id.* at 2846 (Stevens, J., dissenting). In light of all that, the *Heller* Court described the right to arms as "most acute" when defending hearth and home. *Id.* at 2817. It certainly did not rule that the right only existed in one's home.

---

Excerpts of Record, page 000063

from the right "to bear" arms, nor to designate bearing arms as a "non-core" part of the Second Amendment right having a second-class status.  In short, *McDonald* expressly and emphatically rejected the notion that the Second Amendment right, or any part of it, is somehow second-class. *Id.* at 3044. *McDonald* categorically rejected the proposition that bearing arms outside the home is any less fundamental than keeping arms in the home.

### 2. The Seventh Circuit has held squarely that Second Amendment rights do not begin and end at one's front door

Following *Heller* and *McDonald,* the Seventh Circuit directly faced the question of "whether the Second Amendment creates a right of self-defense outside the home" in the case of *Moore v. Madigan*, 702 F. 3d 933, 935 (2102).  That decision involved two consolidated cases where the district courts had ruled that there was no Second Amendment right to carry a firearm in public for self-defense.   The Seventh Circuit, in a decision authored by Judge Posner, reversed and invalidated the Illinois statutes that barred carrying of firearms in public after finding that they impermissibly burdened Second Amendment rights without justification.

In reaching its decision, the Seventh Circuit noted that although both "*Heller* and *McDonald* do say that 'the need for defense of self, family, and property is most acute' in the home [citation omitted]… that doesn't mean it is not acute outside the home."  *Id.* at 936.  And, it also noted that "*Heller* repeatedly invokes a broader Second Amendment right than the right to have a gun in one's home, as when it says that the amendment 'guarantee[s] the individual right to possess and carry weapons in case of confrontation.' [citation omitted]  Confrontations are not limited to the home."  *Id.*

Going further, the *Moore* court acknowledged that it could not "ignore the implication of the analysis [in *Heller* and *McDonald*] that the constitutional right of armed self-defense is broader than the right to have a gun in one's home." *Id.*  at 935.  After all, it stated, "[t]he first sentence of the *McDonald* opinion states that 'two years ago, in *District of Columbia v. Heller,* we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense' [citation omitted]  and later in the opinion we read that '*Heller* explored the right's origins, noting that the 1689 English Bill of Rights explicitly protected a right to keep arms for self-defense [citation omitted]  and that by 1765, Blackstone was able to assert that the right to keep and bear arms was `one of the fundamental rights of Englishmen,'

Excerpts of Record, page 000064

[citation omitted] And immediately the Court adds that 'Blackstone's assessment was shared by the American colonists.'" *Id.* To the Seventh Circuit, such language clearly pointed to broad rights to have a firearm available for self-defense outside the home, which were clearly protected by the Second Amendment.

Finally, the *Moore* court reasoned that the language of the Second Amendment supported its ruling that the Second Amendment protected a right to carry firearms in public for self defense. It wrote that the Amendment's enumeration of "[t]he right to 'bear' as distinct from the right to 'keep' arms is unlikely to refer to the home. To speak of 'bearing' arms within one's home would at all times have been an awkward usage." *Id* at 936. It therefore concluded that a "right to bear arms thus implies a right to carry a loaded gun outside the home." *Id.*

The decision in *Moore* is an outright rejection of the extremely narrow reading of *Heller* that Defendants urge here. Following that court's reasoning, there really should be no doubt that the Second Amendment reaches far more than self-defense in the home.

### 3. The Seventh Circuit also has ruled that Second Amendment protects against infringement of ancillary conduct that is necessary to exercise one's core right to self-defense

Another case out of the Seventh Circuit expands on the prior cases to find that the Second Amendment protects not only the right to carry a firearm for self defense but also protects ancillary matters and access to all things necessary for the proper exercise of that core right. In *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011), the court comprehensively analyzed the Second Amendment rights enumerated in *Heller* and *McDonald* in connection with a challenge to the statutory scheme that the City of Chicago enacted (entitled the "Responsible Gun Owners Ordinance") when its total ban on handgun possession was invalidated in *McDonald. Id.* at 689. The new ordinance mandated one hour of training at a firing range "as a prerequisite to lawful gun ownership [citation omitted] yet at the same time prohibit[ed] all firing ranges in the city." *Id.* The Plaintiffs contended that "the Second Amendment protects the right to maintain proficiency in firearm use — including the right to practice marksmanship at a range — and the City's total ban on firing ranges is unconstitutional." *Id. at* 690. But the trial court denied their motion for a preliminary injunction.

Excerpts of Record, page 000065

The Seventh Circuit reversed, but it also noted that "[t]o be fair [to the trial court], the standards for evaluating Second Amendment claims are just emerging, and this type of litigation is quite new." *Id.* at 690. It then proceeded to analyze the plaintiffs' claims in perhaps the most instructive opinion yet regarding Second Amendment claims (and which will discussed in much more detail below).

In the end, after setting out the appropriate framework for analysis of claims that governmental action improperly burdens rights protected by the Second Amendment, the *Ezell* court found that the City had not met its burden of justifying range ban law under the level of heightened scrutiny that it found to apply. In so doing, the *Ezell* court held that the Second Amendment applied to protect all things necessary for an individual to exercise his or her right to self defense and to possess a firearm for that purpose and that the challenged law impermissibly impinged on that right. It therefore remanded to the trial court with instructions to enter a preliminary injunction barring the enforcement of the City's firing range ban.

Accordingly, there is no merit to Defendants restrictive view of the holding in *Heller.* The case stands for much more than individuals' rights to protect themselves in their homes. It establishes a core right, protected by the Second Amendment, for an individual to keep and bear firearms for self-defense purposes. And, Heller's progeny make clear that this right is not limited to the home and also extends to all things necessary for the proper exercise of the right. Defendants cannot prevail here by arguing to the contrary -- there is no support for such an argument.

## C.    There is no "presumption of lawfulness" to be applied here

Defendants' last argument attempts keep the court from reaching the merits in this action by asserting that dicta in *Heller* amounts to some sort of binding precedent that all laws throughout the country existing as of the time of that decision are entitled to an evidentiary "presumption" of validity that Plaintiffs must "rebut" in order to state a claim for infringement of Second Amendment rights. The argument is ironic given Defendants insistence on narrowly reading the issue that the Court actually did decide. Regardless, the argument is plainly wrong.

Cases are not precedent for issues that they do not decide. *People v. Banks*, 53 Cal. 2d 370, 389, 1 Cal. Rptr. 669, 348 P.2d 102 (1955); *Eatwell v. Beck*, 41 Cal. 2d 128, 136, 257 P.2d 643 (1953) ("It is

Excerpts of Record, page 000066

elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court); *Cf. Thomas v. Bible,* 983 F. 2d 152 (1993) ("the issue in question must have been 'decided either expressly or by necessary implication in [the] previous disposition.'"); *Jackson v. State of Alabama State Tenure Com'n,* 405 F.3d 1276, 1283 (11th Cir. 2005) ("only those legal issues that were actually, or by necessary implication, decided in the former proceeding" are binding).

In *Heller,* the issue before the court was whether certain Washington D.C. statutes impinged upon individuals' Second Amendment rights. That was the issue that the Court decided. It was not faced with, and did not rule upon, all laws from every jurisdiction that might affect Second Amendment rights. Its statement that many longstanding laws were "presumptively" valid is dicta, not precedent. There is no indication that the Court had local zoning ordinances in mind when it rendered its decision; if it had, the Court would have no doubt discussed the specifics of such laws as well as the legal requirements related to evidentiary presumptions and presumed facts in detail. But it did not. The dicta that Defendants' rely upon is thus best seen as an offhand prediction that long standing laws related to certain aspects of firearms would survive heightened scrutiny if and when the validity of those laws was challenged (and perhaps an assurance to some that the sky was not falling). Nothing more.

More fundamentally, a "presumption of validity" of the kind that Defendants argue for would be completely inconsistent with the tenets of the *Heller* and *McDonald* decisions. As the Seventh Circuit stated in *Ezell* when deciding on an appropriate level of review for the statutes at issue there: "Although the Supreme Court did not [specify the required level of scrutiny] in either *Heller* or *McDonald*, the Court did make it clear that the deferential rational-basis standard is out, ***and with it the presumption of constitutionality***. [citation omitted] This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review." 651 F.3d at 706 (*emphasis added*). Furthermore, *McDonald* specifically rejected allowing "state and local governments to enact any gun control law that they deem to be reasonable ", which would be permissible if the presumption that Defendants suggest actually existed. 130 S.Ct. at 3046.

Simply put, the dicta in *Heller* that Defendants rely upon to suggest there is some presumption of validity of their zoning ordinances cannot support the weight they place upon it. The *Heller* Court did issue some blanket "amnesty" ruling that approved of all existing laws that might be alleged to infringe

Excerpts of Record, page 000067

upon Second Amendment rights. It could not do so. Such issues were not before the Court. Accordingly, Defendants' argument regarding this supposed presumption provides no basis to grant their motion and dismiss this case.

### D. Employing A Proper Analytical Framework To Plaintiffs' Claims Must Result In Denial Of Defendants' Motion Because They Bear The Burden Of Justifying The County's Laws And Have Not Even Tried To Do So

As noted above, the most comprehensive and instructive post-*Heller* case regarding the analytical framework to be applied to assertions that government conduct impermissibly infringes upon rights protected by the Second Amendment is *Ezell v. City of Chicago*. Its discussion shows that Defendant's motion must be dismissed as to Plaintiffs' Second Amendment claims because a plaintiff meets its pleading burden on a facial challenge simply by meeting a standing requirement and setting out the statute which is alleged to be unconstitutional. Then, Defendants have the burden of showing that Plaintiffs' claimed rights are not protected by the Second Amendment or that "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights" satisfies a heightened level of scrutiny. They have not even tried to do so.

The *Ezell* court began its analysis by observing that the "district court on the wrong foot [in ruling on plaintiff's motion for limit injunction] by accepting the City's argument that its ban on firing ranges cause[d] only minimum harm to the plaintiffs... and that this harm [could] be adequately compensated by money damages." 651 F.3d at 694. It further noted that this "confused approach" caused several legal errors concerning "(1) the organizational plaintiffs' standing; (2) the nature of the plaintiffs' harm; (3) the scope of the Second Amendment right as recognized in *Heller* and applied to the States in *McDonald*; and (4) the structure and standards for judicial review of laws alleged to infringe Second Amendment rights." *Id.* The court then reviewed each of those errors.

It began by finding that each of the individual and organizational defendants had the requisite standing to challenge the firing range ban. Then, it went on to discuss the requirements of irreparable harm and inadequacy of any legal remedy that are prerequisites of an injunction. It found that the "City's misplaced focus on the availability of firing ranges outside the city also infected the district court's evaluation of irreparable harm" in that it "framed the relevant harm as strictly limited to incidental travel

Excerpts of Record, page 000068

burdens" associated with going to those out-of –city ranges.  *Id.* at 697.

The *Ezell* court went on to explain that it was inappropriate and "profoundly mistaken" to "assume that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction." *Id.*  It reasoned that "the Second Amendment, [like the First Amendment] protects similarly intangible and unquantifiable interests" and the clear rule in the First Amendment context that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place" applied with equal force in the context of the Second Amendment. *Id.*  The court colorfully stated that it would be "hard to imagine anyone suggesting that Chicago may prohibit the exercise of a freespeech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs" and also that such an "arguments should be no less unimaginable in the Second Amendment context." *Id.*  This portion of the court's opinion effectively disposes of Defendants' argument here that the existence of other gun stores in other parts are the County means, in and of itself, there is no substantial impingement of rights protected by the Second Amendment.

From there, the court went on to discuss the plaintiff's likelihood of success on the merits. In so doing, it set up a framework to be followed in analyzing Second Amendment litigation. It observed that "*Heller* focused almost exclusively on the original public meaning of the Second Amendment, consulting the text and relevant historical materials to determine how the Amendment was understood at the time of ratification. This inquiry led the Court to conclude that the Second Amendment secures a pre-existing natural right to keep and bear arms; that the right is personal and not limited to militia service; and that the "central component of the right" is the right of armed self-defense, most notably in the home. *Id.* at 701 (*citing Heller,* 554 U.S. at 595, 599-600, 128 S.Ct. 2783 and *McDonald,* 130 S.Ct. at 3036-37, 3044).

However, *Ezell* court also noted that *Heller* did not specify a standard of scrutiny to be applied to claims of Second Amendment infringement. Rather, the "Court said [that the laws attacked in *Heller*] were unconstitutional '[u]nder any … standard[] of scrutiny.'' *Id.*  *Ezell* went on to state that "[f]or our purposes, however, we know that *Heller's* reference to 'any standard of scrutiny' means any *heightened* standard of scrutiny [because] the Court specifically excluded rational-basis review." *Id.*

In light of its review, it found that the relevant "passages from *Heller* holds several key insights about judicial review of laws alleged to infringe Second Amendment rights" and set out a two-step framework for inquiry and analysis. *Id.* at 702. "First, the threshold inquiry in some Second Amendment cases will be a 'scope' question: is the restricted activity protected by the Second Amendment right in the first place?" *Id.* Answering this first question where a local government regulation is challenged requires analysis of how Second Amendment rights were understood at the time the Fourteenth Amendment was ratified. And, the *Ezell* court noted that the "Supreme Court's free-speech jurisprudence contains a parallel for this kind of threshold 'scope' inquiry" where "some categories of speech are [held to be] unprotected as a matter of history and legal tradition." *Id.* Following that kind of analysis, "***if the government can establish*** that a challenged firearms law regulates activities falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment ... then the analysis can stop there; the regulated activity is categorically unprotected and the law is not subject to further Second Amendment review." *Id.* at 702-03 (*emphasis added*). However, "[i]f the government cannot establish this-if the historical evidence is inconclusive or suggest that the regulated activity is not categorically unprotected-then there must be a Second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at 703.

Turning to application of its announced framework to the challenged firing range ban, the *Ezell* court found that historical sources suggested that target practice to be proficient in the use of a firearm was with the scope of the Second Amendment when it was ratified. It then proceeded "to the second inquiry, which asks whether the City's restriction on range training survives Second Amendment scrutiny … [and] this requires [the reviewing court] to select an appropriate standard of review. Although the Supreme Court did not do so in either Heller or McDonald, the Court did make it clear that the deferential rational-basis standard is out, and with it the presumption of constitutionality. … **This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review.**" *Id.* at 706 (*emphasis added*).

To select an appropriate standard of review, the court turned to "First Amendment analogues" which it found to be suggested by both *Heller* and *McDonald*. Indeed, the court stated that because of the suggestions in those cases, the Seventh "and other circuits ha[d] already begun to adapt First

Excerpts of Record, page 000070

Amendment Doctrine to the Second Amendment context." *Id.* at 706-07. It next reasoned that in "free-speech cases, the applicable standard of judicial review depends on the nature and degree of the governmental burden on the First Amendment right and sometimes also on the specific iteration of the right" and gave examples of various regulations and the standard under which they were to be reviewed. *Id.* at 707-08.

Applying the two step analytical framework set out in *Ezell* in this case mandates denial of Defendants' motion. The decision makes clear that when a facial challenge is involved, a plaintiff only need allege his standing to challenge the law and the enactment of the law itself. *Id.* at 697 ("[i]t is enough that '[we] have only the[statute] itself' and the "statement of basis or purpose that accompanied its promulgation'"). From there, the burden shifts to the government. To prevail, it can show through historical evidence that the rights allegedly impinged upon are outside of the scope of the Second Amendment or it can justify the infringement under heightened scrutiny. In this case, Defendants have done neither. They offer no historical evidence and their only argument that the rights alleged to be infringed upon here are outside of the scope of the Second Amendment is the indefensible position that the Second Amendment only protects a right to self defense in one's home. Similarly, Defendants make no *bona fide* effort to show that the burdens the challenged laws place upon protected rights. Instead, they argue that there is a presumption of validity, which argument is not only indefensible, it was expressly rejected in *Heller* and *McDonald*. Accordingly, Defendants have not met *their* burdens and their motion to dismiss Plaintiffs' Second Amendment claims must be denied.

## IV. Defendants' Own Evidence Belies Their Arguments And Shows Plaintiffs' Equal Protection Claims Are Valid

Defendants' arguments with regard to Plaintiffs' equal protection claim suggest that they either do not understand the factual allegations or are being obtuse. Plaintiff's allegations are simply that they are being treated differently than other retailers because they are a gun shop and that there is no justification for such disparate treatment. They further allege that the very requirement that they obtain a conditional use permit to operate their business when other retailers are not required to do so violates their right to equal protection. And, they allege that Defendants have no evidence or proper basis to

Excerpts of Record, page 000071

suggest that operation of a gun shop will have any deleterious effects on the surrounding community that would justify restrictions upon them. Finally, Plaintiffs allege that Defendants are using zoning laws to redline or ban retail gun stores from Unincorporated Alameda County. All of that amounts to adequate pleaded equal protection claims.

Nonetheless, Defendants argue (in several different ways) that "Plaintiff fails to identify any similarly situated business" and that this is fatal to the equal protection claims in the first amended complaint. They are wrong. Plaintiffs' position is that they are similarly situated with all other general retailers who are entitled to open shop in commercially zoned areas in unincorporated Alameda County without having to apply for and obtain an additional conditional use permit, with its many additional restrictions. Defendants' motion scoffs at that comparison, arguing such "comparators are so patently dissimilar to Plaintiffs, who seek to open a retail gun store offering training, gunsmithing, sales of new and used firearms and ammunition … that Plaintiffs do not come close to meeting their burden of showing that they are "prima facie identical" or "arguably indistinguishable" from Plaintiffs.." They even state that "[n]o rational person could regard Plaintiffs' circumstances to be similar to those of their alleged comparator."

However, the County's own conduct and evidence belies the stridency of Defendants' motion. Exhibit H to Defendants' request for judicial notice contains a December 22, 1997 memorandum from the Alameda County Community Development Agency to the County Board of Supervisors that states:

**Presently, a store that sells firearms is not distinguished from other retail stores and this is use is simply permitted in the basic retail zoning district.**

**[RJN, ex H, page 5.]**

Defendants should hardly be heard now to claim that gun stores are patently dissimilar to other retailers when until relatively recently, the County itself made no distinction between stores that sell firearms and other retailers.

Excerpts of Record, page 000072

And, the same exhibit shows that the County intentionally sought to treat business that sell firearms differently for the stated purposed of furthering a "policy for regulation of firearm sales" without any factual basis for distinguishing between firearm and other retailers. The County even wanted to make sure that its new law "require[d] the [CUP] process to consider factors beyond the usual findings for a Conditional Use Permit, [such as a] 500 foot minimum spacing from a firearms store to other sensitive land uses." (*Id*.) But there are no facts or detailed legislative findings that support singling out gun stores. The closest thing to that is a conclusory statement from the County Planning Commission that "stores that sell firearms require a greater degree of scrutiny than possible when they are regulated as a used that is simply permitted by the Zoning Ordinance and this is better regulated when a Conditional Use Permit is required." Of course, that merely begs the question and doesn't set forth any facts justifying the alleged need for greater scrutiny.

In sum, then, Defendants own evidence shows that gun stores, like the one that Plaintiffs wish to open, have historically been treated no differently than other retailers. But, fairly recently, the County decided it wanted to "regulate firearms sales" by imposing additional regulatory burdens in the path of opening and operating a gun store. The County's own documents show that it did so intentionally and without any facts to justify the new distinction it wanted to impose. All that, in and of itself, manifestly states a viable claim for violation of equal protection. More to the point, Defendants' only argument to dismiss the equal protection claims here is that Plaintiffs failed to indentify a sufficiently similar "comparator." But even if that were true, Defendants have supplied the missing information by admitting that it historically treated gun stores no differently that other retailers. As such, the motion with respect to Plaintiffs' equal protection claim must be denied.

//

//

//

## V.    Conclusion

All of the arguments that that Defendants offer in support of their motion to dismiss are unavailing. The "law of the case" doctrine does not apply here to mandate that its new motion be granted just because its past one was granted. And, more fundamentally, the prior decision granting Defendant's motion to dismiss Plaintiffs' Second Amendment claims was based upon clearly erroneous reasoning that the Amendment only protects the right to keep a firearm in one's home for self defense and that *Heller* dicta established some sort of evidentiary presumption that all laws then existing were to be deemed valid. Neither of those propositions is true. Subsequent courts applying *Heller* and *McDonald* hold that Second Amendment rights exist outside the home and further that the Amendment protects ancillary matters that are necessary for the exercise of the core right of self defense.

These same cases make clear that under a proper analytical framework, it is the government that bears the burdens of establishing the appropriateness of its conduct that might impinge upon Second Amendments rights. It can do so by historical evidence that the regulated activity did not come within the scope of the Second Amendment at the time of the ratification of the Fourteenth Amendment. Or, it can do so by showing that its regulation meets a heightened standard of scrutiny. In this case, Defendants have done neither. Their motion to dismiss Plaintiffs' Second Amendment claims should therefore be denied.

Similarly, Defendant's motion to dismiss Plaintiffs' equal protection claims must be denied. The only challenge made to those claims is that Plaintiffs cannot show they are similarly situated to other retailers, but have been inappropriately treated differently. However, the evidence that Defendants themselves submit with their motion establishes that the County itself treated gun stores, like the one that Plaintiffs want to open, exactly the same as other retailers until very recently. And, then it decided (without any properly articulated basis for doing so) that it wanted to intensify its regulation of firearms sales so it decided to treat gun stores differently than other retailers by taking away their right to open a

Excerpts of Record, page 000074

store in any properly zoned area and making them apply for a conditional use permit, which could be withheld at the whim of the government. That is the essence of a properly pleaded claim of an equal protection violation. Defendants' motion must be denied in its entirety.

Respectfully Submitted

July 19, 2013

_Charles W Hokanson_
_____
Charles W. Hokanson
Attorney for Plaintiffs

Excerpts of Record, page 000075

1   DONNA R, ZIEGLER [142415]
    County Counsel
2   By: MARY ELLYN GORMLEY [154327]
    Assistant County Counsel
3   OFFICE OF COUNTY COUNSEL
    COUNTY OF ALAMEDA
4   1221 Oak Street, Suite 450
    Oakland, California 94612
5   Telephone:    (510) 272-6700

6   Attorney for Defendants County of Alameda
    Alameda Board of Supervisors, Wilma Chan,
7   Nate Miley and Keith Carson

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF ALAMEDA, NORTHERN DIVISION

10  JOHN TEIXEIRA, STEVE NOBRIGA, GARY          Case No.: 3:12-CV-03288 SI
    GAMAZA, CALGUNS FOUNDATION
11  (CGF), INC., SECOND AMENDMENT               DEFENDANT COUNTY OF
    FOUNDATION (SAF), INC., and                 ALAMEDA'S MEMORANDUM OF
12  CALIFORNIA ASSOCIATION OF FEDERAL           POINTS AND AUTHORITIES IN
    FIREARMS LICENSEES (Cal-FFL),               SUPPORT OF DEFENDANTS'
13                                              MOTION TO DISMISS
                                                PLAINTIFFS' FIRST AMENDED
14              Plaintiffs,                     COMPLAINT

15      v.                                      Date:      August 8, 2013
                                                Time:      9:00 a.m.
16  COUNTY OF ALAMEDA, ALAMEDA                  Location:  Ctrm 10,19th  Floor
    BOARD OF SUPERVISORS (as a policy                      450 Golden Gate Ave
17  making body), WILMA CHAN in her official               San Francisco, CA
    capacity, NATE MILEY in his official
18  capacity, and KEITH CARSON in his official
    capacity,
19
20              Defendants..

21

22

23

24

25

26

27

28  MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO
    DISMISS FIRST AMENDED COMPLAINT; Case No. 3:12-CV-03288

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

I.    FACTUAL AND PROCEDURAL BACKGROUND ...............................................1

    A.    Allegations In The Amended Complaint............................................1

    B.    Procedural Background ........................................................................3

II.    MOTION TO DISMISS LEGAL STANDARD ....................................................5

III.    PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A "CLASS OF ONE" EQUAL PROTECTION CLAIM ...............................................................................5

    A.    Plaintiffs Fail To Identify Any Similarly-Situated Business ................6

    B.    Even If Other Retail Stores Or Federal Firearm Licensees Were Similarly Situated, Plaintiffs Have Not Shown That Defendants Intentionally Treated Them Differently .............................................7

IV.    SECOND AMENDMENT CLAIMS (FACIAL AND AS-APPLIED CHALLENGES)..........................10

V.    DEFENDANTS CHAN, MILEY AND CARSON SHOULD BE DISMISSED .........................12

VI.    LEAVE TO AMEND MUST BE DENIED ........................................................13

    A.    Amendment Would Be Futile For The Equal Protection Claim .............13

    B.    Amendment Would Be Futile For Second Amendment Claims .............13

CONCLUSION ...........................................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Allen v. City of Beverly Hills*,

911 F.2d 367 (9th Cir. 1990). ...........................................................................13

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ..........................................................................................5

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) ...........................................................................................5

*Distr. of Columbia v. Heller*,

554 U.S. 570 (2008) ............................................................................1, 10, 11

*Engquist v. Oregon Dept. of Agr.*,

553 U.S. 591 (2008) ...........................................................................................6

*Felts v. City of Dodge City, Kan*

499 Fed. Appx. 750 (10th Cir. 2012)..................................................................7

*Gerhart v. Lake County, Mont.*,

637 F.3d 1013 (9th Cir. 2011) ...................................................................5, 6, 7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,

546 F.3d 981 (9th Cir. 2008) ...........................................................................13

*Kansas Penn Gaming, LLC v. Collins*,

656 F.3d 1210 (10th Cir. 2011) .........................................................................7

*Lopez v. Smith*,

203 F.3d 1122, 1130 (9th Cir. 2000) ..................................................................5

*Moss v. U.S. Secret Serv.*,

572 F.3d 962 (9th Cir. 2009) ...........................................................................13

*Neilson v. D'Angelis*,

409 F.3d 100 (2d Cir.2005) ...............................................................................6

*North Pacifica LLC v. City of Pacifica,*

526 F.3d 478 (9th Cir. 2008) ................................................................................................5

*Ruston v. Town Bd. For Town of Skaneateles,*

610 F.3d. 55 (2d Cir. 2010) ..............................................................................................6, 7

*San Antonio Independent School Dist. v. Rodriguez,*

411 U.S. 1 (1973) .................................................................................................................6

*St. Clare v. Gilead Scis., Inc.*

536 F.3d 1049 (9th Cir. 2008) ............................................................................................5

*Thomas v. Bible,*

983 F.2d 152 (9th Cir. 1993) ............................................................................................11

*Usher v. City of Los Angeles,*

828 F.2d 556 (9th Cir. 1987) ..............................................................................................5

*Village of Willowbrook v. Olech,*

528 U.S. 562 (2000) .............................................................................................................5

## Rules

Federal Rules of Civil Procedure 15(a)(2) .........................................................................13

Federal Rules of Civil Procedure 12(b)(6) ...........................................................................4

## Ordinance

Alameda County Land Use Ordinance 17.54.131 ...........................................................1, 3, 7

Defendants County of Alameda, Alameda Board of Supervisors, Wilma Chan, Nate Miley and Keith Carson ("Defendants" or "County") respectfully submit their motion to dismiss Plaintiffs' amended Complaint for Damages, Injunctive Relief and/or Declaratory Judgment ("FAC").

## INTRODUCTION

In granting Defendants' motion to dismiss with leave to amend, this Court expressed doubt that Plaintiffs could amend their complaint to allege that the challenged zoning ordinance is invalid, either facially or as applied, in light of the U.S. Supreme Court's ruling in *Distr. of Columbia v. Heller*, 554 U.S. 570 (2008). The Court's skepticism has proven well-founded. Plaintiffs' First Amended Complaint repeats the same conclusory allegations, unwarranted deductions of fact and formulaic recitations that doomed their original Complaint. Those few new allegations in the First Amended Complaint serve only to strengthen Defendants' arguments that Plaintiffs' class-of-one equal protection and Second Amendment claims cannot be sustained.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Allegations In The Amended Complaint

The Amended Complaint ("FAC") alleges that in the fall of 2010, plaintiffs John Teixiera, Steve Nobriga, and Gary Gamaza ("Individual Plaintiffs") formed a business partnership ( Valley Guns and Ammo or "VGA") for the purpose of opening a gun store in Alameda County. (FAC ¶ 26.) Individual Plaintiffs contacted the Alameda County Planning Department for advice on obtaining the appropriate permits. (FAC at ¶ 31.) In November 2010, Individual Plaintiffs were informed that they would have to comply with Alameda County Land Use Ordinance 17.54.131 (the "Ordinance"), which requires that gun stores not be located within 500 feet of any school, liquor store or residentially-zoned district, and that applicants obtain a Conditional Use Permit ("CUP"). (FAC ¶¶32, 33). Plaintiffs allege that The Planning Department

informed them that the 500-foot measurement should be taken from the closest door in the subject property to the front door of any disqualifying property.[1] (FAC ¶38).

Plaintiffs allege that the Ordinance was only recently-enacted, and is not a long-standing rule or regulation with respect to retail firearm sales. (FAC ¶34). Plaintiffs further allege that the County requires CUPs only for firearm sales and "Superstores." (FAC ¶35). Plaintiffs allege, on information and belief, that as of February 2013 there were 29 Federal Firearm Licensees (FFLs) in Alameda County, many of which are not located in commercial buildings open for retail firearm sales. (FAC ¶36). Plaintiffs allege, again on information and belief, that not all FFLs has been required to comply with the provisions of the Ordinance. (FAC ¶37).

In April 2011, plaintiffs Texiera, Nobriga, and Gamaza believed they had located a suitable property at 488 Lewelling Boulevard, San Leandro, California and applied for a conditional use permit and variance. (FAC ¶ 39). Individual plaintiffs obtained a survey measuring the distance between the front door of their proposed gun shop site and the front door of the nearest residential properties, and found the distances to be 534, 532 and 560 feet, respectively. (FAC ¶41). The West County Board of Zoning Adjustment ("WBZA") held a hearing on December 14, 2011 to consider a Conditional Use Permit and a Variance on the subject property. Plaintiffs allege that a Variance was unnecessary because their proposed site was more than 500 feet from any residentially-zoned district.

WBZA staff recommended that the variance be denied, claiming that the distance was actually 446 feet. (FAC ¶¶44, 46.b.). Plaintiffs allege that Defendants and other unnamed persons conspired to defeat the variance by causing this measurement to be taken erroneously, with the goal of defeating Plaintiffs' gun shop project and burdening their and their customers' Second Amendment rights. (FAC ¶45). On November 16, 2011 the Alameda County Planning Department issued a Staff Report finding that the distance between the proposed gun shop

---

[1] This Court has already ruled that Plaintiffs are precluded from arguing that their proposed location complies with the distance requirements of the Ordinance. (Doc. 37 at 4:12-16.)

location and the nearest residential district was 446 feet, and recommending a denial of the variance. (FAC ¶ 46)  Despite the Planning Department negative recommendation, the WBZA granted both the CUP and the variance at its December 14, 2012 meeting. (FAC ¶ 48).  The San Leandro Village Homes Association ("SLVHA") appealed the WBZA's decision.  (FAC ¶ 51).  Individual plaintiffs allege that this appeal was untimely (FAC ¶ 52, 53).[2]  On February 28, 2012, the Alameda County Board of Supervisors sustained the SLVHA appeal, overturning the WBZA's grant of a conditional use permit and variance. (FAC ¶ 54).

Plaintiffs allege the Ordinance's requirement that a gun shop be located at least 500 feet away from a sensitive area is wholly arbitrary, and amounts to redlining of retail firearms dealers. (FAC ¶ 55-59, 64).  Plaintiffs researched three additional potential gunshop sites in Alameda County and found that each one of them ran afoul of the Ordinance.  (FAC ¶ 60).  Plaintiffs allege that there is only one site in the unincorporated area of Alameda County that currently complies with the requirements of the Ordinance. (FAC ¶ 61).

Plaintiffs allege that the Ordinance's 500-foot rule is not reasonably related to any public safety concerns, and it is not narrowly tailored to achieve any legitimate government interest. (FAC ¶ 63).

### B.  Procedural Background

On June 25, 2012, John Teixeira, Steve Nobriga and Gary Gamaza (the "Individual Plaintiffs") along with Calguns Foundation, Inc. (CGF), Second Amendment Foundation, Inc. (SAF), and California Association of Federal Firearms Licensees (Cal-FFL) (the "Organizational Plaintiffs") filed their Complaint for Damages, Injunctive Relief, and/or Declaratory Judgment (the "Complaint").  The Complaint challenged Alameda County Land Use Ordinance §17.54.131 (the "Ordinance") which, among other things, restricts the location of gun stores within 500 feet of a residentially zoned district in the unincorporated area of the County.  (Complaint ¶21).

---

[2] This Court has already ruled that Plaintiffs are precluded from asserting that the appeal was untimely.

The Complaint alleged four Claims for Relief: (1) denial of due process based on an enforceable right to a conditional use permit and variance, and the Alameda County Board of Supervisors' consideration of an allegedly untimely appeal (Complaint at ¶ 48); (2) denial of equal protection based on Defendants' allegedly having applied different measurement criteria for similarly-situated businesses and/or having granted conditional use permits and variances to similarly-situated businesses (Complaint at ¶ 50); (3) violation of Plaintiffs' Second Amendment rights (facial challenge) (Complaint at ¶ 52); and (4) violation of Plaintiffs' Second Amendment rights (as applied). (Complaint at ¶ 54.)

On September 27, 2012, Defendants brought a Motion to Dismiss. (Doc. #13.) On November 5, 2012, Plaintiffs filed a Motion for Preliminary Injunction. (Doc. #21.) On December 18, 2012, the Court ordered supplemental briefing on the preclusive effect, if any, of Plaintiffs' failure to seek review of the zoning board's and Board of Supervisors' decisions. (Doc. #30.)

On February 26, 2013, the Court dismissed Plaintiffs' due process claim pursuant to Plaintiffs' stipulation and granted Defendants' motion to dismiss Plaintiffs' equal protection and Second Amendment claims with leave to amend. (Doc. #37.). Specifically, the Court held:

- Plaintiffs were precluded from arguing that their proposed gun shop was more than 500 feet from the nearest residentially zoned district;

- Plaintiffs were not collaterally estopped to bring their 14th Amendment due process claim;

- Plaintiffs had not alleged sufficient facts indicating that Defendants intentionally treated them differently from other similarly-situated businesses without a rational basis; and

- Plaintiffs' facial and as-applied challenges failed because there were no factual allegations in the complaint that the presumptively lawful Ordinance burdens, even slightly, Plaintiffs' Second Amendment rights.

## II.  MOTION TO DISMISS LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* At 555.  The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* 536 F.3d 1049, 1055 (9th Cir. 2008).  Moreover, "the tenet that a district court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend.  A Court may deny leave to amend if it determines that the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III.  PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A "CLASS OF ONE" EQUAL PROTECTION CLAIM

To adequately plead a "class of one" equal protection claim, Individual Plaintiffs must state facts sufficient to establish that the County: "(1) intentionally (2) treated them differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiffs must show an extremely high level of similarity between themselves and persons to whom they compare themselves. "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. For Town of Skaneateles,* 610 F.3d. 55, 59-60 (2d Cir. 2010).

### A. Plaintiffs Fail To Identify Any Similarly-Situated Business

"Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). Showing someone to be "similarly situated" is no easy task: the Second Circuit has held that "the standard for determining whether another person's circumstances are similar to the plaintiff's must be ... whether they are '*prima facie* identical.'" *Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005). The Supreme Court has explained that "'Equal Protection' . . .emphasizes disparity in treatment by a State between classes of individuals whose situations are *arguably indistinguishable*." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008) , quoting *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) [ellipsis in original; emphasis added]. Plaintiffs have not met this weighty burden.

The Ninth Circuit has found a sufficient degree of similarity where a homeowner challenging the denial of his application to construct an access road along his lakeside property identified at least ten other specific property owners on his block who built similar access roads and were not required to obtain a permit. *Gerhart v. Lake County, Mont*., 637 F.3d 1013, 1022 (9th Cir. 2011). By contrast, in *Ruston*, *supra*, the Second Circuit held that a house, a country club, a luxury spa and a large commercial building, all connected to a municipal sewer system, were not similarly situated to a proposed 14-home development seeking to connect to that same system. 610 F.3d at 60. The Tenth Circuit has held that an unlicensed solo contractor is not similarly situated to

unlicensed individual employees of large contractors, and that unidentified parcels of land alleged to be in violation of unspecified environmental laws and regulations were not similarly situated to plaintiff's parcel containing six structures in various stages of deterioration, the remains of a concrete house foundation, solid debris and waste, including tires, barrels, appliances, concrete and other items. *Felts v. City of Dodge City, Kan* 499 Fed. Appx. 750, 752-53 (10th Cir. 2012); *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1213, 1220 (10th Cir. 2011).

Here, Individual Plaintiffs seek to compare themselves to both (1) retail stores *not* selling firearms; and (2) federal firearm licensees *not* located in a commercial building open for retail firearm sales. (FAC ¶¶35-37). These comparators are so patently dissimilar to Plaintiffs, who seek to open a retail gun store offering training, gunsmithing, sales of new and used firearms and ammunition (FAC ¶26), that Plaintiffs do not come close to meeting their burden of showing that they are "*prima facie* identical" or "arguably indistinguishable" from Plaintiffs. Indeed, Plaintiffs themselves allege that they are different from all other retail establishments, as evidenced by the many state and federal laws that regulate retail firearm sales. (FAC ¶¶17, 19-25). No rational person could regard Plaintiffs' circumstances to be similar to those of their alleged comparator. As such, they fail the first prong of the *Ruston* test.

The only appropriate comparator for these Plaintiffs would be another retail gun shop permitted to operate less than 500 feet from a residentially-zoned district after the passage of the Ordinance in 1998. This is precisely the degree of similarity recognized by the Ninth Circuit in *Gerhart*. Since Plaintiffs have not identified such a business, their class of one equal protection claim must fail.

### B. Even If Other Retail Stores Or Federal Firearm Licensees Were Similarly Situated, Plaintiffs Have Not Shown That Defendants Intentionally Treated Them Differently

Even if the Court were to consider Plaintiffs to be similarly situated to retail stores not selling firearms or FFLs not located in a commercial building and offering firearms for sale, Plaintiffs *still* have not alleged facts sufficient to establish that the County intentionally treated them

differently without a rational basis. Plaintiffs base their equal protection claim on the County's purported "singling out the plaintiffs [sic] business as one that is subject to requirements, including the necessity of a Conditional Use Permit and the particulars of obtaining such a permit, but not requiring the same of similar [sic] situated parties". (FAC ¶69). Plaintiffs further allege that the County "only requires Conditional Use Permits (CUP) for Firearm Sales and 'Superstores.'" (FAC ¶35). Public records of which the Court may take judicial notice, however, demonstrate these allegations to be demonstrably false. The County requires conditional use permits for a wide variety of businesses and ventures, including but not limited to:

- Sanitary landfills
- Flight strips
- Cemeteries
- Composting facilities
- Farm laborer housing
- Outdoor recreation facilities
- Animal hospitals or kennels
- Public or private hunting clubs
- Packing houses
- Hog ranches
- Radio and television transmission facilities
- Public utility buildings
- Administrative offices
- Privately owned wind-electric generators
- Remote testing facilities
- Wineries and olive oil mills
- Community facilities
- Community clubhouses
- Parking lots
- Plant nurseries or greenhouses

- Medical or residential care facilities

- Hospitals

- Mobile home parks

- Boarding houses

- Fraternity or sorority houses

- Alcohol outlets

- Bank or lending institutions

- Barber shops and beauty parlors

- Bed and breakfast facilities

- Blue print/copying facilities

- Churches

- Dental laboratories

- Events centers

- Hotels and  motels

- Indoor recreation facilities

- Libraries

- Medical clinics

- Pharmacies

- Repair shops

- Restaurants

- Retail stores

- Service stations

- Tailors

- Taverns

- Theaters

- Boarding stables and riding academies

- Adult entertainment activities

- Drive-in theaters and drive-in businesses

- Boat and recreational vehicle storage yards
- Automotive parts and supplies
- Massage parlors
- Recycling centers
- Tattoo studios
- Beauty schools and business school
- LPG storage facilities
- Concrete or asphalt batching plants
- Salvage yards
- Abattoirs or stockyards
- Housemovers storage yards
- Airports
- Crematories

Request for Judicial Notice (RJN) Exhibit E.

 To the extent Plaintiffs claim that other businesses are not subject to distance restrictions such as the 500-foot restriction in the Ordinance, Plaintiffs are similarly wrong. RJN, Exhibit F. And should Plaintiffs again seek to base their equal protection claim on the manner in which the County measured the relevant distances,[3] Alameda County Ordinances establish the very measurement methodology utilized by the County in other zoning situations. RJN, Exhibit G.

 Because Plaintiffs cannot establish that the County intentionally treated them differently than other similarly situated property owners without a rational basis, their equal protection claim should be dismissed.

## IV. SECOND AMENDMENT CLAIMS (FACIAL AND AS-APPLIED CHALLENGES)

 In ruling on Defendants' motion to dismiss Plaintiff's original complaint, this Court analyzed whether the Ordinance placed a substantial burden on the core protection of the Second

---

[3] This Court has already ruled that Plaintiffs are precluded from making this argument. February 26, 2013 Order (Doc. # 37) at 4:12-16.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO
DISMISS FIRST AMENDED COMPLAINT; Case No. 3:12-CV-03288   10

Excerpts of Record, page 000089

Amendment -- the ability to defend "hearth and home" -- sufficient to overcome the *Heller* presumption of validity. The Court specifically found:

> The Ordinance is precisely the kind of presumptively valid restriction envisioned by *Heller* – it is a restriction on gun sales and purchases in or near sensitive places. The Ordinance is not a total ban on gun sales or purchases in Alameda County and therefore does not implicate the core right to possess a gun in the home for self-defense articulated in *Heller*. Moreover, there are no factual allegations in the complaint that this presumptively lawful Ordinance burdens, even slightly, plaintiffs' right to sell or purchase guns in Alameda County – a right which the U.S. Supreme Court has yet to recognize. At most, there are mere conclusory allegations that this particular gun store is "essential to defendants' ability to exercise their Second Amendment rights and that it is "essential to [defendants] assisting their patrons and customers in exercising their Second Amendment rights."

(Doc. #37 at 6:26-9:13).

This Court's ruling is now the law of the case, and the Court need not and should not revisit it. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). The Ordinance is presumptively lawful, and Plaintiff's conclusory allegations regarding the essential role of their proposed gun shop in assisting their patrons in exercising their Second Amendment rights are insufficient to overcome that presumption.

The only new allegations in the FAC are also merely conclusory, and in some cases completely implausible, and do not establish that the Ordinance places any burden at all on core Second Amendment rights. In an apparent attempt to distinguish *Heller*, Plaintiffs allege, without supporting facts, that the "500 foot zoning rule is a recent land use regulation." (FAC ¶34). Plaintiffs do not allege when the Ordinance was enacted, but the Court can take judicial notice of the fact that it was enacted in 1998. RJN, Exhibit H. Thus, under *Heller*, the Ordinance is presumptively valid, and Plaintiffs must rebut that presumption by alleging facts sufficient to demonstrate that their core Second Amendment rights are substantially burdened by the 500-foot limitation.

Plaintiffs attempt to meet their burden by alleging that their and their customers' Second Amendment rights are burdened by a "restriction on convenient access to a neighborhood gun store and the corollary burden of having to travel to other, more remote locations to exercise

their rights to acquire firearms and ammunition . . ." (FAC ¶45). Yet as the Court observed in its Order, evidence placed in the record by Plaintiffs themselves establish that there are ten other gun stores in Alameda County, including one only 607 feet from Plaintiffs' proposed site. (Doc. #37 at 9:18-22).

In fact, there are twenty gun stores in Alameda County, including four in the unincorporated area governed by the Ordinance. RJN, Exhibit I. Six gun shops are located between 5 and 8 miles from Plaintiffs' proposed site, and entail between a 9- and 13-minute drive: Big 5 Sporting Goods is located only 607 feet from Plaintiffs' proposed site. Nobriga Decl., Ex. O, Docket No. 20-15 at 5, 6. Best Net Sales DBA Elite Armory is a 5.0-mile, 9-minute drive distant; Bullseye Castro Valley Gun Shop is a 5.1-mile, 10-minute drive from the proposed site; Security Six is located 5.8 miles and an 11-minute drive away; Jim Martin Sales is 6.8 miles and 12 minutes distant; Professional Policy Supply is 7.9 miles and a 13-minute drive distant; and Chabot Gun Club is located 10.6 miles and a 20-minute drive from the proposed site. RJN, Exhibit J. These distances cannot be said to impose a substantial burden on the purchase of firearms.

Moreover, data maintained by the California Department of Justice establish that the Ordinance has had no negative impact on the sale of firearms in Alameda County. For example, from 2007 to 2012, sales of handguns and long guns increased statewide from just under 400,000 a year to just over 800,000 a year, roughly doubling in number. RJN, Exhibit K. During that same period of time, sales of handguns and long guns in Alameda County increased from 7,473 in 2007 to 14,422 in 2012, mirroring almost precisely the statewide trend. RJN, Exhibit L

At best, the Ordinance may have a *de minimus* effect on the core Second Amendment right to possess a gun in the home for self-defense. As such, it passes Constitutional muster. Plaintiffs' as-applied and facial challenges should therefore be dismissed.

## V. DEFENDANTS CHAN, MILEY AND CARSON SHOULD BE DISMISSED

In their motion to dismiss Plaintiffs' complaint, Defendants argued that individual defendants Supervisors Chan, Miley and Carson should be dismissed. See, Doc. #13 at 19:5-18.

In granting the motion to dismiss, the Court did not specifically rule on dismissal of the individual defendants. Defendants therefore raise again the argument that dismissal is appropriate as to these individuals, and incorporate herein their argument on this point.

## VI. LEAVE TO AMEND MUST BE DENIED

Courts may grant leave to amend whenever "justice so requires," (Fed.R.Civ.P. 15(a)(2)) and requests for leave should be liberally granted. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). However, it is within the Court's discretion to deny leave to amend when an amendment would be futile. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 990 (9th Cir. 2008). The Court's discretion is "particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Plaintiffs have failed, yet again, to sufficiently state an equal protection or second amendment claim. It is clear from Plaintiffs' second attempt at pleading these claims that any further amendment would be futile.

### A. Amendment Would Be Futile For The Equal Protection Claim

Plaintiffs cannot allege that defendants intentionally granted CUPs or variances to other similarly situated businesses or that Defendants intentionally measured the distance to buildings of similarly situated businesses differently, because those facts simply to do not exist. Facts of which the Court may take judicial notice conclusively establish the opposite. Accordingly, leave to amend the equal protection claim should be denied.

### B. Amendment Would Be Futile For Second Amendment Claims

Because Plaintiffs have alleged no facts in their FAC to overcome the presumptive validity of the Ordinance, and facts of which the Court may take judicial notice conclusively establish that there has been no restriction on core Second Amendment rights in Alameda County as a result of the Ordinance, leave to amend the Second Amendment claims should be denied.

///

///

**CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court dismiss

Plaintiffs' First Amended Complaint without leave to amend.

Dated:  May 28, 2013

DONNA R. ZIEGLER
County Counsel, in and for the
County of Alameda, State of California

*/s/ Mary Ellyn Gormley*

By:_____
MARY ELLYN GORMLEY
Assistant County Counsel
Attorneys for Defendants

1  Donald E.J. Kilmer, Jr., (SBN: 179986)
   Law Offices of Donald Kilmer
2  A Professional Corporation
   1645 Willow Street, Suite 150
3  San Jose, California 95125
   Voice:        (408) 264-8489
4  Facsimile:    (408) 264-8487
   EMail:        Don@DKLawOffice.com
5
   Jason A. Davis (SBN: 224250)
6  Davis & Associates
   27201 Puerta Real, Suite 300
7  Mission Viejo, California 92691
   Voice:        (949) 310-0817
8  Facsimile:    (949) 288-6894
   EMail:        Jason@CalGunLawyers.com
9
   Charles W. Hokanson (SBN: 163662)
10 4401 Atlantic Ave, Suite 200
   Long Beach, California 90807
11 Voice: (562) 316-1476
   Facsimile: (562) 316-1477
12 Email: CWHokanson@TowerLawCenter.com

13 Attorneys for Plaintiffs

14
                  UNITED STATES DISTRICT COURT
15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16
   JOHN TEIXEIRA, STEVE            CASE NO.: 3:12-CV-03288 - SI
17 NOBRIGA, GARY GAMAZA,
   CALGUNS FOUNDATION (CGF),       COMPLAINT FOR DAMAGES,
18 INC., SECOND AMENDMENT          INJUNCTIVE RELIEF and/or
   FOUNDATION (SAF), INC., and     DECLARATORY JUDGMENT
19 CALIFORNIA ASSOCIATION OF
   FEDERAL FIREARMS LICENSEES      28 USC §§ 2201, 2202
20 (Cal-FFL),
              Plaintiffs,          42 USC §§ 1983, 1988
21
                                   SECOND AMENDMENT AND FOURTEENTH
22      vs.                        AMENDMENT

23                                 JURY TRIAL DEMANDED
   COUNTY OF ALAMEDA, ALAMEDA      (For Damages Only)
24 BOARD OF SUPERVISORS (as a
   policy making body), WILMA CHAN
25 in her official capacity, NATE MILEY
   in his official capacity, and KEITH
26 CARSON in his official capacity,

27
              Defendants.
28

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**INTRODUCTION**

This suit seeks damages and injunctive relief (and/or declaratory relief) to

compensate plaintiffs for damages and force the defendants to refrain from policies,

practices and customs that are hostile to the United States Constitution. In spite of

recent Supreme Court precedent, the County of Alameda remains among a handful

of jurisdictions in the nation that refuses to treat the rights protected by the Second

and Fourteenth Amendments with the constitutional dignity required by law.

**PARTIES**

1.    Plaintiff JOHN TEIXEIRA is an individual who is a citizen of the United

States and a resident of Alameda County.

2.    Plaintiff STEVE NOBRIGA is an individual who is a citizen of the United

States and a resident of San Joaquin County.

3.    Plaintiff GARY GAMAZA is an individual who is a citizen of the United

States and a resident of Alameda County.

4.    Plaintiff THE CALGUNS FOUNDATION, INC., (CGF) is a non-profit

organization incorporated under the laws of California with its principal

place of business in San Carlos, California. The purposes of CGF include

supporting the California firearms community by promoting education for all

stakeholders about California and federal firearms laws, rights and

privileges, and defending and protecting the civil rights of California gun

owners. As part of CGF's mission to educate the public – and gun-owners in

particular – about developments in California's firearm laws, CGF maintains

a website at http://calgunsfoundation.org and contributes content to various

print and online media. On their website CGF informs its members and the

public at large about pending civil and criminal cases, relating to

developments in federal and California gun law. The website hosts forums

and publishes notices that document the concerns that California gun owners

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000095

threats to their Second Amendment rights.  CGF expends financial and other resources in both litigation and non-litigation projects to protect the interests of their patrons, members and the public-at-large.  CGF brings this action on behalf of itself and its supporters, who possess all the indicia of membership.

5.    Plaintiff SECOND AMENDMENT FOUNDATION, INC., (SAF) is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washtington.  SAF has over 650,000 members and supporters nationwide, including California.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately owned and possess firearms, and the consequences of gun control.  SAF expends financial and other resources in both litigation and non-litigation projects to protect the Second Amendment rights its members and the public-at-large.  SAF brings this action on behalf of itself and its members.

6.    Plaintiff CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, INC., (Cal-FFL) is a non-profit industry association of, by, and for firearms manufacturers, dealers, collectors, training professionals, shooting ranges, and others, advancing the interests of its members and the general public through strategic litigation, legislative efforts, and education.  Cal-FFL expends financial and other resources in both litigation and non-litigation projects to protect the interests of their members and the public-at-large. Cal-FFL brings this action on behalf of itself and its members.

7.    Defendant COUNTY OF ALAMEDA is a state actor located in the State of California.  Defendant COUNTY OF ALAMEDA is responsible for setting policies and procedures relating to land use regulations within the County of Alameda – including but not limited to promulgating and interpreting land use regulations and granting conditional use permits and variances to those regulations.  Alameda County has an established pattern and practice of

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*          Page 3 of 26          First Amended Complaint

Excerpts of Record, page 000096

1     hostility to persons, businesses and organization that seek to advance,

2     expand and enforce the fundamental, individual "right to keep and bear

3     arms" and has historically and aggressively sought to enact local legislation

4     inimical to that right.

5 8.     The ALAMEDA BOARD OF SUPERVISORS is a government body that sets

6     land use policies in the County of Alameda through their power of legislative

7     rule making, oversight of administrative agencies and the power to review

8     appeals of land use decisions by subordinate administrative agencies.

9 9.     Supervisor WILMA CHAN was a member of the ALAMEDA BOARD OF

10     SUPERVISORS when they took actions that deprived the plaintiffs of

11     constitutionally protected rights. She is sued in her official capacity.

12 10.     Supervisor NATE MILEY was a member of the ALAMEDA BOARD OF

13     SUPERVISORS when they took actions that deprived the plaintiffs of

14     constitutionally protected rights. He is sued in his official capacity.

15 11.     Supervisor KEITH CARSON was a member of the ALAMEDA BOARD OF

16     SUPERVISORS when they took actions that deprived the plaintiffs of

17     constitutionally protected rights. He is sued in his official capacity.

18 12.     The names of any possible co-actors in the scheme to deprive plaintiffs of

19     their constitutional rights are unknown at this time. Plaintiffs reserve the

20     right to amend this complaint to add defendants if/when their identities are

21     discovered.

22

23              **JURISDICTION AND VENUE**

24 13.     This action arises under the United States Constitution, this Court also has

25     jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1983 and 1988.

26 14.     As the Plaintiffs are seeking declaratory relief, this Court has jurisdiction

27     over this action pursuant to 28 U.S.C. §§ 2201 and 2202.

28 15.     Venue for this action is properly in this District pursuant to 28 U.S.C. § 1391.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000097

16. All conditions precedent, including exhaustion of administrative remedies where required, have been performed, have occurred, are futile or unnecessary where the government infringes on a fundamental right.

## FACTS

### *Facts Common to All Licensed Retail Gun Stores*

17. Businesses offering gun smithing services and retail firearm sales are strictly licensed and regulated by state and federal law. Thus all employees working at a gun store, and all clients/customers are required to be law-abiding citizens who must pass a criminal background check to be employed at or make a purchase from a licensed gun store.

18. The mere presence of firearms, albeit privately owned rather than as business inventory, in a residential district is beyond the control of local governments under California's preemption doctrine (Government Code § 53071) and statutory law. See: *Doe v. City and County of San Francisco*, 136 Cal. App. 3d 509 and *Fiscal v. City and County of San Francisco*, 158 Cal. App. 4th 895. In other words, there is nothing in federal or state law that prohibits a law abiding gun owner, who might be a collector or shooting enthusiast, from owning and keeping scores of firearms and ammunition at his residence. Therefore local governments like the County of Alameda cannot prevent a law-abiding gun owner from collecting and storing an unlimited number of firearms (and/or ammunition) in his home. Therefore, a residence, and by extension, a residentially zoned district, cannot be a designated as a sensitive place with respect to the mere presence of firearms. See also: *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. ___, 130 S.Ct. 3020 (2010).

19. The transportation of firearms is particularly and strictly regulated by state law. For any person not licensed to carry concealed firearms, all firearms

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000098

1 | must be transported unloaded and handguns must be transported in a locked

2 | container. See CA Penal Code § 25300 *et seq.*

3 | 20. Furthermore, properly transported firearms may even be transported

4 | through the thousand foot radius of a presumptively sensitive Gun-Free

5 | School Zone. CA Penal Code § 626.9.

6 | 21. The State of California strictly regulates who may purchase/acquire firearms.

7 | Some form of mandatory training is a required showing before a licensed

8 | firearm dealer and transfer a firearm. For example:

9 | a. Fish and Game Code section 3050 and the California Code of

10 | Regulations, Title 14, section 710, provide that no hunting license shall

11 | be issued unless the applicant presents:

12 | i. evidence that he or she has held a hunting license issued by this

13 | state in a prior year; or

14 | ii. evidence that he or she holds a current hunting license issued by

15 | another state or province; or

16 | iii. a certificate of completion of a course in hunter safety, principles

17 | of conservation, and sportsmanship, as provided in this article,

18 | with a hunter safety instruction validation stamp affixed

19 | thereto; or

20 | iv. a certificate of successful completion of a hunter safety course in

21 | another state or province; or

22 | v. evidence of completion of a course in hunter safety, principles of

23 | conservation, and sportsmanship, which the commission may, by

24 | regulation, require.

25 | b. Effective January 1, 2003, any person who wishes to receive a handgun

26 | through a sale or transfer must have a valid Handgun Safety

27 | Certificate (HSC) or a qualifying exemption. Any person who wishes to

28 | obtain an HSC must pass a written test that includes, but is not

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1     limited to, laws applicable to carrying and handling firearms,

2     particularly handguns; responsibilities of ownership of firearms,

3     particularly handguns; the law related to the private sale/transfer of

4     firearms; the law as it relates to the permissible use of lethal force;

5     safe firearm storage; and issues & prevention strategies associated

6     with bringing firearms into the home. (CA Penal Code § 26800 *et seq.*)

7     A DOJ Certified Instructor may charge each HSC applicant a fee of up

8     to $25 to cover the costs of providing the test and issuing the

9     certificate. (CA Penal Code §§ 31645, 31650.)

10    c.    Any person who takes delivery of a handgun from a firearms dealer

11        must first successfully demonstrate to a DOJ Certified Instructor that

12        he or she is able to handle that handgun safely and that he or she can

13        properly operate all of the safety features. Any person who has an

14        exemption to the HSC requirement is also exempt from this

15        requirement. (CA Penal Code §§ 26850(a)-(b), 26853, 26856, 26859)

16 22.   Furthermore gun stores are partners with federal, state and local law

17     enforcement agencies on the issues of gun safety and helping to stop gun

18     crimes.  For example, in California private party transfers of all firearms

19     must occur through a licensed dealer unless the transfer is subject to very

20     narrow exceptions (e.g., antique, curio, relic, long-gun transfers between

21     immediate family members) (CA Penal Code §§ 16130, 16400, 16550, 16810,

22     17110, 26700-26915 (inclusive), 27500-27590, 28050-28070).

23 23.   Licensed gun stores are one of only two places (firearm dealer and law

24     enforcement agency) where someone subject to a "domestic violence

25     restraining order" can turn in their guns in order to comply with federal and

26     state law.  See CA Family Code § 6389 *et seq.*

27 24.   Thus licensed gun stores facilitate making sure that appropriate safety

28     training has occurred, that the person is not prohibited from acquiring

Excerpts of Record, page 000100

1    firearms, and that consumers are advised of their duties of safe storage of

2    firearms.  They also act as a temporary repository for the safe-keeping of

3    firearms during domestic disputes.

4    25.   Far from being a necessary evil, licensed gun stores are a net positive to the

5          communities they serve.  They not only provide the means of exercising a

6          fundamental right, but they ensure that transfer laws are complied with and

7          government mandated safety programs are effective.

8

9                               *Case Specific Facts*

10   26.   In the Fall of 2010, plaintiffs JOHN TEIXEIRA , STEVE NOBRIGA and

11         GARY GAMAZA formed a business partnership named VALLEY GUNS AND

12         AMMO (VGA) for the purpose of opening a gun store in Alameda County.

13         The products and services to be offered at VGA include but are not limited to:

14         a.    Training and certification in firearm safety. (e.g., state-mandated

15               Hunter Safety Classes, Handgun Safety Certificates, etc...)

16         b.    General gun-smithing services.

17         c.    Sale and advice regarding reloading equipment and their components.

18         d.    Consignment sale of used firearms.

19         e.    Sale of new and used firearms.

20         f.    Sale of Ammunition.

21         g.    Offering classes in gun safety, including safe storage of firearms in

22               accordance with state law.

23   27.   As part of their plan for opening a gun store VGA conducted market research

24         among gun enthusiasts in and around Alameda County and obtained

25         feedback from approximately 1,400 people indicating that a full service gun

26         store located in San Lorenzo would be a success, in part, because existing

27         retail establishments (e.g., general sporting good stores) do not meet

28         customer needs and demands.  In fact, gun stores that can provide the level

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000101

1   of personal service contemplated by VGA are a central and important

2   resource for individuals trying to exercise their Second Amendments rights.

3   Not only do smaller retail establishments provide arms and ammunition for

4   exercising Second Amendments, they also provide personalized training and

5   instruction in firearm safety and operation.  Plaintiffs therefore bring this

6   action on behalf of their actual and prospective customers, as well as

7   themselves.  *Craig v. Boren*, 429 U.S. 190 (1976).

8   28.   A licensed gun store like the one VGA contemplate opening, would facilitate

9         making sure that appropriate safety training has occurred, that the

10        prospective gun-buyer is not prohibited from acquiring firearms, and that

11        consumers are advised of their duties of safe storage of firearms. They also

12        act as a temporary repository for the safe-keeping of firearms during

13        domestic disputes.

14  29.   Plaintiff TEIXEIRA had previously owned a gun store in Castro Valley, both

15        he and Plaintiff NOBRIGA either already hold valid Federal Firearms

16        Licenses or would easily qualify to hold such a license.

17  30.   Plaintiffs TEIXEIRA, NOBRIGA and GAMAZA either already hold valid

18        licenses from the State of California to engage in the business of selling

19        firearms or would easily qualify to hold such a license.

20  31.   Plaintiff TEIXEIRA, NOBRIGA and GAMAZA set about the process of

21        contacting the Alameda County Planning Department for advice on obtaining

22        the appropriate land use permits to open their store in the Fall of 2010.

23  32.   In November of 2010, plaintiffs TEIXEIRA, NOBRIGA, and GAMAZA were

24        informed that their business location would have to meet a requirement that

25        gun stores must not be located within 500 feet of any school, liquor store or

26        residence. (Alameda County Land Use Regulations – Conditional Uses –

27        Firearms Sales.  17.54.131)

28  33.   From Alameda Ordinance § 17.54.131, those requirements are:

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000102

a.    That the district in which the proposed sales activity is to occur is
      appropriate;

b.    That the subject premises is not within five hundred (500) feet of any of
      the following: Residentially zoned district; elementary, middle or high
      school; pre-school or day care center; other firearms sales business; or
      liquor stores or establishments in which liquor is served;

c.    That the applicant possesses, in current form, all of the firearms dealer
      licenses required by federal and state law;

d.    That the applicant has been informed that, in addition to a conditional use
      permit, applicant is required to obtain a firearms dealer license issued by
      the county of Alameda before sale activity can commence, and that
      information regarding how such license may be obtained has been
      provided to the applicant;

e.    That the subject premises is in full compliance with the requirements of
      the applicable building codes, fire codes and other technical codes and
      regulations which govern the use, occupancy, maintenance, construction
      or design of the building or structure;

f.    That the applicant has provided sufficient detail regarding the intended
      compliance with the Penal Code requirements for safe storage of firearms
      and ammunition to be kept at the subject place of business and building
      security.

34.   This 500 foot zoning rule is a recent land use regulation. The 500 foot zoning
      regulation has no basis in empirical studies or criminological science.  It is
      NOT a long-standing rule/regulation with respect to retail firearm sales.

35.   The County of Alameda only requires Conditional Use Permits (CUP) for
      Firearm Sales and "Superstores."  (Alameda Ordinance §§ 17.54.131,
      17.54.132) Thus retail stores selling firearms – even though they are already
      strictly regulated by state and federal law – are treated differently from other

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1     retail stores selling similar products without any reasonable basis for

2     believing that the CUP will advance public safety.

3  36.   Plaintiffs allege on information and belief, that as of February 2013, there

4     are 29 Federal Firearm Licensees (FFLs) in Alameda County. Many of these

5     FFLs are not located in commercial buildings open for retail firearm sales.

6  37.   Plaintiffs further allege on information and belief, that the CUP

7     requirements of Alameda Ordinance § 17.54.131, have not been imposed

8     against many of these 29 FFLs, who either: (A) are not currently in

9     compliance with the restrictions imposed against VGA, or (B) were never

10     required to comply with the restrictions imposed against VGA.

11  38.   In attempting to assess a proposed site for compliance with the CUP, VGA

12     was informed by the Alameda County Planning Department that the 500 foot

13     measurement should be taken from the closest door in the subject property to

14     the front door of any disqualifying property. VGA relied upon this

15     information – the only information provided by county authorities – in

16     seeking an appropriate commercial location to open their gun store.

17  39.   In April of 2011, plaintiffs TEIXEIRA, NOBRIGA, and GAMAZA located a

18     suitable property at 488 Lewelling Blvd., in San Leandro. They met with the

19     landlord and formed an agreement to lease the property. They obtained the

20     landlords permission to conduct preliminary preparations to comply with

21     federal and state requirements for operating a gun store. (e.g., building

22     security studies, commissioning architectural drawings, etc...)

23  40.   The subject property has only one door which faces Lewelling Blvd.

24  41.   Plaintiffs TEIXEIRA, NOBRIGA, and GAMAZA obtained a survey which

25     shows the distance to one residential property on Albion Ave, located across

26     Hesperian Blvd., measured 534 feet from the front door of the subject

27     property (facing Lewelling Blvd.) to the front door of the residential property

28     on Albion Ave. The same survey showed a distance of 532 feet and 560 feet,

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000104

1      respectively, to the two front doors of the next closest residential properties

2      located across 12 lanes of Interstate 880 in the San Lorenzo Village.

3    42.    There are no other buildings located within a 500 foot radius of the front door

4      of the subject property that would disqualify the subject property from use as

5      a gun store under the County's land use regulations.

6    43.    Based on these surveys and assurances from the Alameda County Planning

7      Department, Plaintiffs TEIXEIRA, NOBRIGA, and GAMAZA incurred

8      contractual obligations and expenses to begin preparing the subject property

9      for their gun store.

10   44.    Notwithstanding the fact that the property at 488 Lewelling Blvd., did not

11      come within 500 feet of any disqualifying property, a hearing was scheduled

12      by the West County Board of Zoning Adjustment on or about November 16,

13      2011 to take up the issue of a Conditional Use Permit and a Variance of the

14      subject property. Said hearing was continued to December 14, 2011. The

15      staff reports issued for both hearings recommended a denial of the

16      (unnecessary) variance based (erroneously) on the proposition that the

17      subject property was less than 500 feet from a disqualifying property.

18   45.    Plaintiffs allege on information and belief, that in order to disqualify the

19      property at 488 Lewelling Blvd., Defendants or some co-actor working with

20      them, sought to defeat the variance, and caused the measurements to be

21      taken from the front doors of the disqualifying residential properties to the

22      closest possible part of the building that was to become the Plaintiffs' gun

23      store. The end-point used to defeat the variance at the subject property was

24      a brick wall with no door. This trick of moving the end-points to defeat the

25      variance was done to defeat the plaintiffs' project of opening a gun store at

26      the subject property. Furthermore, this trick was also motivated by an

27      animus toward the rights of the plaintiffs and their potential customers and

28      patrons to exercise their rights to acquire – and therefore "keep and bear

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

arms."  The burdens on the plaintiffs and their customers' Second

Amendment rights include, but is not limited to a restriction on convenient

access to a neighborhood gun store and the corollary burden of having to

travel to other, more remote locations to exercise their rights to acquire

firearms and ammunition in compliance with the state and federal laws

requiring the purchase of these constitutionally significant artifacts from

licensed stores.

46.   On or about November 16, 2011 the Alameda County Community

Development Agency Planning Department issued its Staff Report on the

CUP and Variance for our store.  A true and correct copy is attached as

**Exhibit A**.  Please note the following adoptive admissions and/or undisputed

facts regarding the Planning Department's findings.  (page numbers refer to

the PDF page number of the Exhibit, not the page number of the report):

a.   Heading: **SITE AND CONTEXT DESCRIPTION**,

   i.   Pg. 2: Sub-Heading: <u>Physical features</u>: "The only access to the

        property is the frontage on Lewelling Boulevard."

   ii.  Pg. 2: Sub-Heading: <u>Adjacent area</u>: "The residential properties

        are across Highway 880 to the southwest, and across Hesperian

        Boulevard to the east.

b.   Heading: **PROJECT DESCRIPTION,** Pg. 3:

   i.   Alameda County claims that the distance from the gun shop to

        the nearest residential district is 446 feet.

   ii.  The County admits that it measured the distance from the

        closest building exterior wall of the gun shop to the property line

        of the residentially zoned district.

   iii. By negative admission, there are no other disqualifying

        properties within a 500 foot radius from any point of

        measurement from the proposed gun shop.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

c.  Heading: **REFERRAL RESPONSES**,

   i.  Pg. 3: Most of the other "stake-holders" only wanted to be sure that the gun store would comply with existing federal and state laws regarding firearms sales, safe-storage and licenses.

   ii.  Pg. 4: This is the part of the staff report that repeats the extraordinary claims by the <u>San Lorenzo Village Home Association</u>, none of which specifically addressed why a gun store located 500 feet away from disqualifying property would be safe for the community, but a gun store located an (alleged) 446 feet away would not be safe for the community. Similar vague and ambiguous complaints are lodged against the variance by the <u>Cherryland Community Association</u>, and the <u>Ashland Area Community Association</u>.

   iii.  Pg. 4: The <u>City of San Lorenzo</u> took no position on the proposed variance to allow the gun store to open.

d.  Heading: **STAFF ANALYSIS**,

   i.  Pg. 4 - 6: Sub-Heading: <u>Conformance with the General Plan</u>: This section of the report deals with the entirely arbitrary and subjective opinion of Staff as to whether a gun store would be a "questionable use" when guided by the *Eden Area General Plan*.

   ii.  Pg. 6: Sub-Heading: <u>Conformance with the Specific Plan</u>: In this sections Staff admits that firearm retail sales are "illustrative examples of the types of general commercial and land uses along busy streets that access from freeways."

   iii.  Pg. 7: Sub-Heading: <u>Conformance with the Zoning Ordinance</u>: Here the report sets out the text of §§ 17.54.131 and 17.54.141 regarding Conditional Use Permits for gun stores.

e.  Heading: **GENERAL DISCUSSION**,

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000107

| | |
|---|---|
| 1 | i. Pg. 7: The report notes that applicants have 38 years of firearm |
| 2 | retail experience and knowledge. That they are owner/operators |
| 3 | who will personally attend the shop five days a week, Tuesday |
| 4 | through Saturday, 10:00 a.m. to 6:00 p.m. |
| 5 | ii. Pg. 8: confirms that VGA's business partners collected 1,200 |
| 6 | individually signed letters of support from the general public |
| 7 | and 113 letters were from police officers and a personal letter of |
| 8 | endorsement from the former Sheriff of Alameda County – |
| 9 | Charles C. Plummer. |
| 10 | iii. Pg. 8: Sub-Heading: **SERVICES PROVIDED**, notes that VGA |
| 11 | was set to provide more than just gun and ammunition sales. |
| 12 | The business was also set to provide: |
| 13 | (1)   firearm instruction, |
| 14 | (2)   classes in hunter safety by certified instructors, |
| 15 | (3)   handgun safety certificate testing (as required by law), |
| 16 | (4)   repairs, |
| 17 | (5)   consignment sales and appraisals, |
| 18 | (6)   sales of gun safes, |
| 19 | (7)   hunting and fishing tags and licenses, |
| 20 | (8)   and although they are currently illegal to buy or sell to |
| 21 | the general population in California, VGA agreed that no |
| 22 | ASSAULT WEAPONS would be sold at the store. |
| 23 | iv. Pg. 8: Sub-Heading: **DISTANCE FROM OTHER** |
| 24 | **BUSINESSES & NON-RESIDENTIAL SENSITIVE USES**, |
| 25 | Here the County admits that there are no other disqualifying |
| 26 | property uses within 500 feet of VGA's proposed gun store. (e.g., |
| 27 | elementary, middle or high school; pre-school or day care center, |
| 28 | other firearms sales business or liquor store.) |

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    v.    Pg. 8: Sub-Heading: **DISTANCE FROM RESIDENTIAL**
2          **ZONED PROPERTY**, Here the County admits that it uses
3          more than one endpoint to measure distances to residentially
4          zoned properties.
5          (1)    The County measured a distance of 446 feet from the
6                 closest exterior wall to the property at Albion Avenue.
7                 (The current resident at this property has no objection to
8                 the store.)
9          (2)    It measured the same 446 foot distance from the closest
10                exterior wall, to a another property across 12 lanes of
11                Interstate 880 and concrete barriers, located at Paseo del
12                Rio in San Lorenzo Village.
13   vi.   Pg. 8: Sub-Heading: **PARKING**.  The County admits that there
14         is adequate parking for the proposed gun store.
15   f.    Heading: **TENTATIVE FINDINGS BASED ON INFORMATION**
16         **AVAILABLE PRIOR TO THE PUBLIC HEARING**
17   i.    Pg. 9: Sub-Heading: <u>Conditional Use Permit:</u>
18         (1)    To the question: "Is the use required by the public need?"
19                The County answers:  Yes.
20         (2)    To the question: "Will the use properly relate to other
21                land uses and transportation and service facilities in the
22                vicinity?"  The County answers: Yes.
23         (3)    To the question: "Will the use, if permitted, under all
24                circumstances and conditions of this particular case,
25                materially affect adversely the health or safety of persons
26                residing or working in the vicinity, or be materially
27                detrimental to the public welfare or injurious to property
28                or improvements in the neighborhood?"  The County

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

answers: No.

(4)     To the question: "Will the use be contrary to the specific

intent clauses or performance standards established for

the District in which it is to be considered?" The County

answers: Yes, citing the 500 foot rule and noting that a

variance would be required and that a variance

application has been made.

ii.     Pgs. 9 - 10: Under a section of additional findings,

(1)     The County again raises the wholly subjective opinion

about whether a gun store is desirable under the *Eden*

*Area General Plan*.

(2)     The County again notes the 500 foot requirement but

concedes that the one of disqualifying properties is 446

feet across the 880 freeway.  However the County

erroneously states that the other residential property that

is also 446 feet from the proposed gun shop is easily

accessed.  But that can only be true if the person is able to

walk through existing fences as the crow flies.  The

walking distance is well over 500 feet.

(3)     The County concedes that VGA has all required licenses

and knowledge to run a gun store and that plaintiffs can

meet the additional requirements imposed by the Sheriff

and Fire Marshall, in addition to bringing the building up

the modern code requirements for wheel chair access and

other building codes.

g.     Heading: **TENTATIVE FINDINGS BASED ON INFORMATION**

**AVAILABLE PRIOR TO THE PUBLIC HEARING**.

i.     Pgs. 10 - 11: Nevertheless, staff recommended a denial of the

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1   request for a variance based solely on the alleged less-than 500

2   foot distance between the gun store property and the Albion

3   Way property, based on the ease of traversal from the gun store

4   to the disqualifying property.  (The one where the current

5   resident has no objection to a gun store and where it would

6   require someone to walk though fences to get from the gun store

7   to the Albion Way property.)

8       ii.   The County made a finding that the residential properties

9           located across the 12 lanes of Highway 880 **would not** be

10          detrimentally effected by the proposed gun store due to the

11          physical barrier of the highway.  These were the properties

12          located in the San Lorenzo Village Homes Association.

13  h.  The rest of **Exhibit A** are the County's exhibits attached to the Staff

14      Report.

15  47.  It so happened that the November 16, 2011 Hearing did not take place and

16      was postponed to December 14, 2011.  A true and correct copy of the revised

17      STAFF REPORT is attached as **Exhibit B**:

18  a.  The only substantive changes from the November 16, 2011 Report are

19      the insertion of various pages under a Heading: **CURRENT**

20      **CHANGES**, starting at page 4 and continuing to page 6.

21  b.  This appears to be an insertion dealing with the different ways in

22      which the 500 foot rule was to be implemented.

23  c.  For the record, the County appeared to acknowledge that different

24      distances could be obtained if the one used a different starting point

25      from the gun store premises. By using the Plaintiffs' equally rational

26      definition of a starting point, the distances to residential properties

27      would measure, respectively, 560 feet, 532 feet and 534 feet.

28  d.  There do not appear to be any other substantive changes to the STAFF

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1   REPORT or their conclusions. (i.e., Staff still recommended <u>against</u>

2   granting the variance.)

3   48.   Despite the Staff recommendation that the variance be denied, THE WEST

4   COUNTY BOARD OF ZONING ADJUSTMENTS granted both the

5   Conditional Use Permit and Variance in their December 14, 2012 meeting.

6   See **Exhibit C**.

7   49.   VGA has been ready, willing and able to comply with all of the requirements

8   of RESOLUTION NO. Z-11-70. (Which is also part of Exhibit C.)

9   50.   In a letter dated December 16, 2011, plaintiffs TEIXEIRA, NOBRIGA, and

10   GAMAZA were informed that the resolution would be effective on the

11   eleventh day following December 14, 2011 unless an appeal was filed with

12   the Alameda County Planning Department.

13   51.   In an email dated February 23, 2012, plaintiffs TEIXEIRA, NOBRIGA, and

14   GAMAZA were informed that the San Lorenzo Village Homes Association

15   filed an appeal with the Planning Department challenging the West County

16   Board of Zoning Adjustment Resolution Z-11-70.

17   52.   Plaintiffs TEIXEIRA, NOBRIGA, and GARY GAMAZA allege on information

18   and belief that the appeal by the San Lorenzo Village Homes Association was

19   filed on or after December 29, 2011.  To be timely, under the eleven-day rule,

20   the appeal was required to be filed on or before December 26, 2011.

21   53.   All plaintiffs allege on information and belief that the late appeal and the

22   illegal consideration of the late appeal by the San Lorenzo Village Homes

23   Association was orchestrated and encouraged by a person or persons hostile

24   to the civil rights of the plaintiffs as guaranteed by the SECOND AND

25   FOURTEENTH AMENDMENTS to the United States Constitution.

26   54.   On February 28, 2012, the Board of Supervisors, acting through Supervisors

27   CHAN, MILEY and CARSON voted to sustain the late-filed appeal by the

28   San Lorenzo Village Homes Association and overturn the decision of the West

Excerpts of Record, page 000112

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    County Board of Zoning Adjustment in Resolution Z-11-70. Thus the CUP

2    and Variance granted to VGA by the Board of Zoning Adjustment was

3    revoked.

4    55.  The Alameda County Board of Supervisors appeared to be acting with

5    deliberate indifference to the rights of the Plaintiffs and overt hostility to the

6    fact that it was a gun store, rather than attempt to address any identifiable

7    public safety interest in a reasonable way. Indeed, the Staff Report indicated

8    there were no public safety concerns if the Variance and CUP were granted

9    (as long as VGA ensured compliance with the terms of RESOLUTION NO. Z-

10   11-70). The Staff Report only made the tautological argument that the

11   proposed gun store was allegedly less than 500 feet away from a disqualifying

12   property; without making any argument as to how this wholly arbitrary

13   distance is somehow relevant to land use regulations involving gun stores.

14   56.  Both the "500 Foot Rule" on its face and the erroneous and unreasonable

15   methodology of taking measurements from other than the front door of the

16   subject property have deprived plaintiffs TEIXEIRA, NOBRIGA, and

17   GAMAZA of the ability to open their gun store at the subject property and

18   are thus the proximate cause of the violation of their rights.

19   57.  The gun store that Plaintiffs TEIXEIRA, NOBRIGA and GAMAZA seek to

20   open at 488 Lewelling Blvd., is essential to them assisting their patrons and

21   customers in exercising their SECOND AMENDMENT rights.

22   58.  The gun store that TEIXEIRA, NOBRIGA and GAMAZA seek to open is

23   essential to them exercising their own SECOND AMENDMENT rights.

24   59.  Furthermore, a well and reasonably regulated market for firearms and

25   ammunition is essential to the safety and liberty of all residents in any given

26   community. The proliferation of retail firearm dealers, reasonably regulated

27   in a way that confines gun ownership to law-abiding persons who receive the

28   competence tests and safety training required by state law is an effective

Excerpts of Record, page 000113

1    means of curbing violent crime through exercising the right of self-defense.

2    Defendants' red-lining of gun stores out of existence burdens this right.

3    60.    Subsequent to filing this law suit, in part to mitigate their damages,

4           plaintiffs TEIXEIRA, NOBRIGA, and GAMAZA have investigated at least

5           three (3) additional properties in Alameda County that would otherwise be

6           suitable (location, building security, parking, etc...) for a gun store.  All

7           prospects were disqualified by either the "500 Foot Rule" or some other

8           insurmountable obstacle.

9    61.    Subsequent to filing this law suit, plaintiffs commissioned a study to

10          determine if any prospective gun store could satisfy the CUP based solely on

11          having to comply with the "500 Foot Rule."  Their conclusion is that it is

12          virtually impossible to open a gun store in unincorporated Alameda County

13          while complying with this rule due to the density of disqualifying properties.

14          Specifically, the study indicates that there is only one parcel in the entire

15          unincorporated county that is greater than 500 feet from a residentially

16          zoned property, and that parcel is also unavailable as it lies within 500 feet of

17          an establishment that sells alcohol. Thus, according to the plaintiffs'

18          research, which is based primarily on government agency data, there are no

19          parcels in the unincorporated areas of Alameda County which would be

20          available for firearm retail sales.

21   62.    Plaintiffs TEIXEIRA, NOBRIGA, and GAMAZA have incurred damages in

22          the form of expenses and costs in securing the use of the subject property and

23          for lost profits due to the delay in opening their store.

24

25                         *Facts Relating to the "500 Foot Rule"*

26   63.    Alameda's "500 foot rule" for firearm retail sales is not reasonably related to

27          any possible public safety concerns a retail gun store might raise, especially

28          when that gun store is otherwise in compliance with all federal, state and

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

*Teixeira v. County of Alameda*          Page 21 of 26          First Amended Complaint

1 local laws relating to firearm sales.   Nor does Alameda County articulate

2 how the "500 Foot Rule" is narrowly tailored to achieve any legitimate

3 government interest.

4  64.   The "500 foot rule" appears to be exclusively designed to limit gun stores by

5        red-lining (or zoning) them out of existence and thus establishing a condition

6        that is practically impossible to satisfy in metropolitan areas.

7  65.   This pretext of land-use regulations is not unlike the pattern and practice of

8        local governments using these same regulations to restrict retail

9        establishments selling constitutionally protected adult-oriented material as

10       described in a line of U.S. Supreme Court Cases that began with: *Young v.*

11       *American Mini Theatres, Inc.,* 427 U.S. 50 (1976); and *Schad v. Borough of*

12       *Mount Ephraim*, 452 U.S. 61 (1981), and continuing through with the cases:

13       *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986); *Barnes v. Glen*

14       *Theatre, Inc.,* 501 U.S. 560 (1991).   These latter cases developed what has

15       come to be known as the *secondary effects* doctrine.

16 66.   There is no justification for red-lining gun stores.  Unlike adult bookstores,

17       adult live-entertainment establishments and liquor stores, the employees and

18       patrons of gun stores are – by definition and force of law – law-abiding

19       citizens.  No one can work in a gun store, buy a gun (or ammunition), possess

20       a gun (or ammunition), or transport a gun (or ammunition) if they are:

21       a.     A convicted felon,

22       b.     A misdemeanant convicted of various enumerated crimes of violence,

23              including domestic violence,

24       c.     A person subject to terms of probation that prohibit the possession of

25              weapons,

26       d.     A person subject to a restraining order,

27       e.     A person found to be a danger to themselves or others due to mental

28              illness,

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

f.      A person addicted to narcotics,

g.      A person under indictment in any court for a crime punishable by imprisonment for a term exceeding one year,

h.      A person who has been discharged from the military under dishonorable conditions,

i.      A person who is a fugitive from justice

67.     Plaintiffs allege on information and belief that the County has not conducted (or cited) any *secondary effects* study to back up any claim that the "500 foot rule" serves any compelling, let alone any important, government interest which is required when courts look at "land-use" regulations impacting First and Second Amendment rights.  See generally: *Ezell v. City of Chicago*, 651 F.3d 684, 2011 U.S. App. LEXIS 14108. (7th Cir., July 6, 2011).

## FIRST CLAIM FOR RELIEF
### (Equal Protection - As Applied)

68.     Plaintiffs repeat and reallege each of the allegations set forth above in paragraphs 1 through 67 above, and incorporate them by reference as though fully set forth herein.

69.     Plaintiffs TEIXEIRA, NOBRIGA and GAMAZA have been denied equal protection of the law under the Fourteenth Amendment to the United States Constitution in that the Defendants have intentionally discriminated against them and engaged in unreasonable conduct by enacting and enforcing regulations that are inapplicable or unenforced against similar situated parties. Particularly, Defendant's singling out the plaintiffs business as one that is subject to requirements, including the necessity of a Conditional Use Permit and the particulars of obtaining such a permit, but not requiring the same of similar situated parties violates the Constitution's guarantee of equal protection.

70.     Plaintiffs are engaged in, or assisting others in exercising a core fundamental

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000116

1    right, the Government's actions infringe on a fundamental right.

2 71.   As Plaintiffs have been singled out for different treatment they are a class of

3    one in a matter where land use regulations are infringing their rights.

4 72.   The government's actions lack a proper basis and are constitutionally

5    impermissible.

6

7 <center>**SECOND CLAIM FOR RELIEF**
**(Equal Protection - Facial Challenge)**</center>

8 73.   Plaintiffs repeat and reallege each of the allegations set forth above in

9    paragraphs 1 through 67 above, and incorporate them by reference as though

10    fully set forth herein.

11 74.   Alameda's Land Use Regulations, including but not limited to its

12    requirement that Retail Firearm Businesses are required to obtain a

13    Conditional Use Permit, and the subordinate requirements for obtaining such

14    permit such as the "500 Foot Rule," different treatment from other similarly

15    situated retail businesses.

16 75.   The requirement that a gun store obtain a Conditional Use Permit and the

17    subordinate requirements for obtaining such permit such as the "500 Foot

18    Rule" have no proper basis and are constitutionally impermissible.

19

20 <center>**THIRD CLAIM FOR RELIEF**
**(Second Amendment - Facial Challenge)**</center>

21

22 76.   Plaintiffs repeat and reallege each of the allegations set forth above in

23    paragraphs 1 through 67 above, and incorporate them by reference as though

24    fully set forth herein.

25 77.   Alameda's zoning laws requiring that gun stores obtain a Conditional Use

26    Permit and be located 500 feet away from residential zones are unreasonable

27    on their face and cannot withstand any form of constitutional scrutiny under

28    the Second Amendment to the United States Constitutional as that right is

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000117

1    applied through the Fourteenth Amendment's due process clause.

2    78.   The requirement that a gun store obtain a Conditional Use Permit and the

3          subordinate requirements for obtaining such permit such as the "500 Foot

4          Rule" have no proper basis and are constitutionally impermissible.

5

6                          **FOURTH CLAIM FOR RELIEF**
                           **(Second Amendment  – As Applied)**
7

8    79.   Paragraphs 1 through 67 are incorporated by reference as though fully set

         forth herein.
9

10   80.   Alameda's zoning laws requiring that gun stores be located 500 feet away

11         from residential properties is irrational as applied to the facts of this case

12         and cannot withstand any form of constitutional scrutiny under the SECOND

13         AMENDMENT to the United States Constitutional as that right is applied

         through the FOURTEENTH AMENDMENT'S Due Process Clause.
14

15   81.   The requirement that a gun store obtain a Conditional Use Permit and the

16         subordinate requirements for obtaining such permit such as the "500 Foot

17         Rule" have no proper basis and are constitutionally impermissible.

18

19                            **PRAYER FOR RELIEF**

20   WHEREFORE, Plaintiffs prays that this Court will enter judgment as follows:

21   A.    Declaratory and injunctive relief that the appeal granted to the San Lorenzo

22         Village Homes Association by the Alameda Board of Supervisors was

23         improperly granted and that the subject property located at 488 Lewelling

24         Blvd., intended for use by Plaintiffs TEIXEIRA, NOBRIGA and GAMAZA as

25         a gun store, may open under the conditions set forth in the West County

26         Board of Zoning's Resolution Z-11-70.

27   B.    Declaratory and injunctive relief that Alameda's zoning requirements that

28         gun stores be located 500 feet away from residential properties is

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Excerpts of Record, page 000118

1   unconstitutional on its face as to all Plaintiffs and as applied to Plaintiffs

2   TEIXEIRA, NOBRIGA and GARY GAMAZA. Furthermore, that the

3   requirement that a gun store obtain a Conditional Use Permit and the

4   subordinate requirements for obtaining such permit such as the "500 Foot

5   Rule" have no proper basis and are constitutionally impermissible.

6   C.   Damages, including pre-judgment interest, for costs, expenses, and lost

7        profits for Plaintiffs TEIXEIRA, NOBRIGA and GARY GAMAZA in an

8        amount according to proof.

9   D.   Award Plaintiffs their reasonable attorney fees and costs under 28 U.S.C. §

10       2412, 42 U.S.C. §§ 1983, 1988.

11  E.   Such other and further relief as this Court deems just and proper.

12       Respectfully Submitted on April 1, 2013,

13          /s/ Donald Kilmer

14       Attorney for Plaintiffs

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

28

Excerpts of Record, page 000119

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:12-cv-03288-WHO

Teixeira et al v. County of Alameda et al
Assigned to: Hon. William H. Orrick
Case in other court:  13-17132
Cause: 42:1983 Civil Rights Act

Date Filed: 06/25/2012
Date Terminated: 09/09/2013
Jury Demand: Plaintiff
Nature of Suit: 440 Civil
Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**John Teixeira**                represented by    **Donald E.J. Kilmer , Jr**
Offices of Donald Kilmer
1645 Willow Street
Suite 150
San Jose, CA 95125
408/264-8489
Fax: 408/264-8487
Email: Don@DKLawOffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles William Hokanson**
4401 Atlantic Boulevard
Ste 200
Long Beach, CA 90807
562-316-1476
Email:
cwhokanson@towerlawcenter.com
*ATTORNEY TO BE NOTICED*

**Jason A. Davis**

Davis & Associates
27281 Las Ramblas
Suite 200
Mission Viejo, CA 92691
949-310-0817
Fax: 949-288-6894
Email:
Jason@CalGunLawyers.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steve Nobriga**                represented by **Donald E.J. Kilmer , Jr**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Charles William Hokanson**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Jason A. Davis**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gary Gamaza**                 represented by **Donald E.J. Kilmer , Jr**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Charles William Hokanson**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Jason A. Davis**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Calguns Foundation (CGF), Inc.**                    represented by     **Donald E.J. Kilmer , Jr**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Charles William Hokanson**
                                                                        (See above for address)
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Jason A. Davis**
                                                                        (See above for address)
                                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation (SAF), Inc.**          represented by     **Donald E.J. Kilmer , Jr**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Charles William Hokanson**
                                                                        (See above for address)
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Jason A. Davis**
                                                                        (See above for address)
                                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**California Association of Federal Firearms Licensees (Cal-FFL)**       represented by     **Donald E.J. Kilmer , Jr**
                                                                        (See above for address)
                                                                        *LEAD ATTORNEY*
                                                                        *ATTORNEY TO BE NOTICED*

                                                                        **Charles William Hokanson**
                                                                        (See above for address)
                                                                        *ATTORNEY TO BE NOTICED*

**Jason A. Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**County of Alameda**                    represented by    **Mary Ellyn Gormley**
                                                           Office of the County Counsel
                                                           County of Alameda
                                                           1221 Oak Street, Suite 450
                                                           Oakland, CA 94612
                                                           (510) 272-6700
                                                           Fax: 510-272-5020
                                                           Email:
                                                           mary.ellyn.gormley@acgov.org
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Alameda Board of**                     represented by    **Mary Ellyn Gormley**
**Supervisors**                                            (See above for address)
*as a policy making body*                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Wilma Chan**                           represented by    **Mary Ellyn Gormley**
*in her official capacity*                                 (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Nate Miley**                           represented by    **Mary Ellyn Gormley**
*in his official capacity*                                 (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Keith Carson**                         represented by    **Mary Ellyn Gormley**
*in his official capacity*                                 (See above for address)

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/25/2012 | 1 | COMPLAINT with Jury Demand, against Alameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley ( Filing fee $ 350, receipt number 34611075590). Filed by Gary Gamaza, Steve Nobriga, John Teixeira, Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc.. (jlm, COURT STAFF) (Filed on 6/25/2012) Modified on 6/26/2012 (jlm, COURT STAFF). (Additional attachment(s) added on 6/27/2012: # 1 Civil Cover Sheet) (cjl, COURT STAFF). Modified on 6/27/2012 (cjl, COURT STAFF). (Entered: 06/26/2012) |
| 06/25/2012 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 9/20/2012. Case Management Conference set for 9/27/2012 01:30 PM. (Attachments: # 1 Standing Order - KAW)(jlm, COURT STAFF) (Filed on 6/25/2012) (Entered: 06/26/2012) |
| 06/25/2012 | 3 | Summons Issued as to Alameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley. (jlm, COURT STAFF) (Filed on 6/25/2012) (cjl, COURT STAFF). (Entered: 06/26/2012) |
| 06/28/2012 | 4 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira.. (Kilmer, Donald) (Filed on 6/28/2012) (Entered: 06/28/2012) |
| 07/02/2012 | 5 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (sisS, COURT STAFF) (Filed on 7/2/2012) (Entered: 07/02/2012) |
| 07/03/2012 | 6 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Susan Illston for all further proceedings. Magistrate Judge Kandis A. Westmore no longer assigned to the case. |

| | | |
|---|---|---|
| | | Signed by the Executive Committee on July 3, 2012. (cjl, COURT STAFF) (Filed on 7/3/2012) (Entered: 07/03/2012) |
| 07/10/2012 | 7 | CLERKS NOTICE Initial Case Management Conference set for 9/28/2012 02:30 AM in Courtroom 10, 19th Floor, San Francisco. This is a docket text entry only, there is no document associate with this notice. (tfS, COURT STAFF) (Filed on 7/10/2012) (Entered: 07/10/2012) |
| 07/10/2012 | 8 | JUDGE ILLSTON'S STANDING ORDER (tfS, COURT STAFF) (Filed on 7/10/2012) (Entered: 07/10/2012) |
| 08/01/2012 | 9 | WAIVER OF SERVICE Returned Executed filed by Wilma Chan, Nate Miley, Keith Carson, County of Alameda. Service waived by Wilma Chan waiver sent on 7/2/2012, answer due 8/31/2012; Nate Miley waiver sent on 7/2/2012, answer due 8/31/2012; Keith Carson waiver sent on 7/2/2012, answer due 8/31/2012; County of Alameda waiver sent on 7/2/2012, answer due 8/31/2012. (Gormley, Mary Ellyn) (Filed on 8/1/2012) (Entered: 08/01/2012) |
| 08/23/2012 | 10 | STIPULATION WITH PROPOSED ORDER *re: case management* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 8/23/2012) (Entered: 08/23/2012) |
| 08/24/2012 | 11 | ORDER GRANTING REQUEST TO CONTINUE CASE MANAGEMENT CONFERENCE, Motions terminated: 10 STIPULATION WITH PROPOSED ORDER *re: case management* filed by California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc., Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, John Teixeira. Initial Case Management Conference set for 11/2/2012 02:30 PM in Courtroom 10, 19th Floor, San Francisco.. Signed by Judge Susan Illston on 8/23/12. (tfS, COURT STAFF) (Filed on 8/24/2012) (Entered: 08/24/2012) |

| 09/10/2012 | 12 | WAIVER OF SERVICE Returned Executed filed by Wilma Chan, Nate Miley, Keith Carson, County of Alameda. (Gormley, Mary Ellyn) (Filed on 9/10/2012) (Entered: 09/10/2012) |
|---|---|---|
| 09/27/2012 | 13 | MOTION to Dismiss filed by Alameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley. Motion Hearing set for 10/18/2013 11:00 AM in Courtroom 4, 3rd Floor, Oakland before Magistrate Judge Kandis A. Westmore. Responses due by 10/11/2012. Replies due by 10/18/2012. (Attachments: # 1 Memorandum of Points and Authorities in Support of Motion to Dismiss, # 2 Proposed Order, # 3 Request for Judicial Notice, # 4 Proposed Order) (Gormley, Mary Ellyn) (Filed on 9/27/2012) (Entered: 09/27/2012) |
| 10/05/2012 | 14 | STIPULATION WITH PROPOSED ORDER *to set hearing and filing deadlines* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 10/5/2012) (Entered: 10/05/2012) |
| 10/11/2012 | 15 | ORDER: Initial Case Management Conference set for 11/2/12 is continued to 1/25/2013 02:30 PM in Courtroom 10, 19th Floor, San Francisco., Motions terminated: 14 STIPULATION WITH PROPOSED ORDER *to set hearing and filing deadlines* filed by California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc., Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, John Teixeira.. Signed by Judge Susan Illston on 10/5/12. (tfS, COURT STAFF) (Filed on 10/11/2012) (Entered: 10/11/2012) |
| 10/17/2012 | 16 | CLERKS NOTICE Continuing Motion Hearing, Set/Reset Deadlines as to 13 MOTION to Dismiss . Motion Hearing set for 12/20/12 is continued 12/21/2012 09:00 AM in Courtroom 10, 19th Floor, San Francisco before Hon. Susan Illston. This is a docket text entry only, there is no document assocaited with |

| | | |
|---|---|---|
| | | this notice.(tfS, COURT STAFF) (Filed on 10/17/2012) (Entered: 10/17/2012) |
| 11/05/2012 | 17 | Declaration of Gene Hoffman *in Support of 21 Request for Preliminary Injunction* filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 11/5/2012) Modified on 11/6/2012 (ysS, COURT STAFF). (Entered: 11/05/2012) |
| 11/05/2012 | 18 | Declaration of Alan Gottlieb *in Support of 21 Request for Preliminary Injunction* filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 11/5/2012) Modified on 11/6/2012 (ysS, COURT STAFF). (Entered: 11/05/2012) |
| 11/05/2012 | 19 | Declaration of Brandon Combs *in support of 21 Request for Preliminary Injunction* filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Attachments: # 1 Exhibit Ex A: CA Prohibited Persons)(Kilmer, Donald) (Filed on 11/5/2012) Modified on 11/6/2012 (ysS, COURT STAFF). (Entered: 11/05/2012) |
| 11/05/2012 | 20 | Declaration of Steve Nobriga, John Teixeira, Gary Gamaza *in support of 21 Request for Preliminary Injunction* filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S)(Kilmer, Donald) (Filed on 11/5/2012) Modified |

| | | |
|---|---|---|
| | | on 11/6/2012 (ysS, COURT STAFF). (Entered: 11/05/2012) |
| 11/05/2012 | 21 | MOTION for Preliminary Injunction filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. Motion Hearing set for 12/21/2012 09:00 AM in Courtroom 10, 19th Floor, San Francisco before Hon. Susan Illston. Responses due by 11/30/2012. Replies due by 12/7/2012. (Kilmer, Donald) (Filed on 11/5/2012) (Entered: 11/05/2012) |
| 11/16/2012 | 22 | RESPONSE (re 13 MOTION to Dismiss ) filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 11/16/2012) (Entered: 11/16/2012) |
| 11/30/2012 | 23 | RESPONSE (re 21 MOTION for Preliminary Injunction ) filed byAlameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley. (Attachments: # 1 Declaration, # 2 Declaration)(Gormley, Mary Ellyn) (Filed on 11/30/2012) (Entered: 11/30/2012) |
| 12/03/2012 | 24 | REPLY (re 13 MOTION to Dismiss ) filed byAlameda Board of Supervisors. (Attachments: # 1 Exhibit Request for Judicial Notice in Support of Defendants' Reply ISO Motion to Dismiss)(Gormley, Mary Ellyn) (Filed on 12/3/2012) (Entered: 12/03/2012) |
| 12/04/2012 | 25 | NOTICE of Manual Filing of Exhibit T by Plaintiffs re 20 Declaration in Support. (ysS, COURT STAFF) (Filed on 12/4/2012) (Entered: 12/07/2012) |
| 12/04/2012 | 26 | EXHIBIT T (DVD) to re 20 Declaration in Support filed byCalguns Foundation (CGF), Inc.. (Related document(s) 20 ) (ysS, COURT STAFF) (Filed on 12/4/2012) (Entered: 12/07/2012) |
| 12/07/2012 | 27 | REPLY (re 21 MOTION for Preliminary Injunction ) filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve |

| | | |
|---|---|---|
| | | Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Attachments: # 1 Exhibit A)(Kilmer, Donald) (Filed on 12/7/2012) (Entered: 12/07/2012) |
| 12/07/2012 | 28 | ERRATA re 20 Declaration in Support,, 21 MOTION for Preliminary Injunction by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 12/7/2012) (Entered: 12/07/2012) |
| 12/14/2012 | 29 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 12/14/2012) (Entered: 12/14/2012) |
| 12/18/2012 | 30 | ORDER RE: SUPPLEMENTAL BRIEFING; RE-SETTING HEARING (Illston, Susan) (Filed on 12/18/2012) (Entered: 12/18/2012) |
| 12/19/2012 | | Set/Reset Deadlines as to 21 MOTION for Preliminary Injunction , 13 MOTION to Dismiss . Supplemental Briefs (not to exceed 30 pages) due by 1/25/2013. Motion Hearing re-set to 2/22/2013 09:00 AM in Courtroom 10, 19th Floor, San Francisco before Hon. Susan Illston. (tlS, COURT STAFF) (Filed on 12/19/2012) (Entered: 12/19/2012) |
| 01/16/2013 | 31 | STIPULATION WITH PROPOSED ORDER *Vacate CMC* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 1/16/2013) (Entered: 01/16/2013) |
| 01/17/2013 | 32 | ORDER Initial Case Management Conference set for 1/25/13 is continued to 3/29/2013 02:30 PM in Courtroom 10, 19th Floor, San Francisco.. Signed by Judge Susan Illston on 1/17/13., Motions terminated: 31 STIPULATION WITH |

|            |    | PROPOSED ORDER *Vacate CMC* filed by California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc., Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, John Teixeira. (tfS, COURT STAFF) (Filed on 1/17/2013) (Entered: 01/17/2013) |
|------------|----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 01/25/2013 | 33 | Brief re 13 MOTION to Dismiss *Defendants Supplemental Brief in Support of Motion to Dismiss* filed byAlameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley. (Related document(s) 13 ) (Gormley, Mary Ellyn) (Filed on 1/25/2013) (Entered: 01/25/2013) |
| 01/25/2013 | 34 | Brief *Supplemental (see Doc #30)* filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 1/25/2013) (Entered: 01/25/2013) |
| 02/21/2013 | 35 | CLERKS NOTICE : the motion to dismiss and for preliminary injunction has been taken off calendar and the motions are deemed submitted without argument. The Court will issue an order shortly. This is a docket text entry only, there is no document associated with this notice. (tfS, COURT STAFF) (Filed on 2/21/2013) (Entered: 02/21/2013) |
| 02/26/2013 | 36 | DISREGARD - FILED IN ERROR; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION 13 21 (Illston, Susan) (Filed on 2/26/2013) Modified on 2/26/2013 (Illston, Susan). (Entered: 02/26/2013) |
| 02/26/2013 | 37 | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION re 13 , 21 motions. If plaintiffs wish to amend the complaint, they must do so no later than March 15, 2013.(Illston, Susan) (Filed on 2/26/2013) Modified on 2/27/2013 (ysS, COURT STAFF). (Entered: 02/26/2013) |
| 03/08/2013 | 38 | STIPULATION WITH PROPOSED ORDER *Reset CMC and* |

| | | |
|---|---|---|
| | | *Extend Time to File Amended Complaint* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 3/8/2013) (Entered: 03/08/2013) |
| 03/12/2013 | 39 | ORDER: Initial Case Management Conference set for 3/29/13 is continued 4/26/2013 02:30 AM in Courtroom 10, 19th Floor, San Francisco. Plaintiffs shall have until April 1, 2013 to file any amended complaint. Signed by Judge Susan Illston on 3/11/13., Motions terminated: 38 STIPULATION WITH PROPOSED ORDER *Reset CMC and Extend Time to File Amended Complaint* filed by California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc., Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, John Teixeira. (tfS, COURT STAFF) (Filed on 3/12/2013) Modified on 3/13/2013 (ysS, COURT STAFF). (Entered: 03/12/2013) |
| 04/01/2013 | 40 | AMENDED COMPLAINT *(First)* against All Defendants. Filed byGary Gamaza, Steve Nobriga, John Teixeira, Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc.. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Kilmer, Donald) (Filed on 4/1/2013) (Entered: 04/01/2013) |
| 04/02/2013 | | Set/Reset Hearing Initial Case Management Conference set for 4/26/2013 02:30 PM in Courtroom 10, 19th Floor, San Francisco. (tfS, COURT STAFF) (Filed on 4/2/2013) (Entered: 04/02/2013) |
| 04/18/2013 | 41 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *filed by Plaintiffs* (Kilmer, Donald) (Filed on 4/18/2013) (Entered: 04/18/2013) |
| 04/18/2013 | 42 | STIPULATION WITH PROPOSED ORDER *to continue CMC* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation |

| | | |
|---|---|---|
| | | (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 4/18/2013) (Entered: 04/18/2013) |
| 04/24/2013 | 43 | **ORDER Initial Case Management Conference set for 8/9/2013 02:30 PM in Courtroom 10, 19th Floor, San Francisco.. Signed by Judge Susan Illston on 4/23/13. (tfS, COURT STAFF) (Filed on 4/24/2013) (Entered: 04/24/2013)** |
| 05/28/2013 | 44 | MOTION to Dismiss *Plaintiffs' First Amended Complaint* filed by County of Alameda. Motion Hearing set for 8/8/2013 09:00 AM in Courtroom 10, 19th Floor, San Francisco before Hon. Susan Illston. Responses due by 6/11/2013. Replies due by 6/18/2013. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Request for Judicial Notice, # 3 Proposed Order, # 4 Exhibit E, # 5 Exhibit F through L)(Gormley, Mary Ellyn) (Filed on 5/28/2013) (Entered: 05/28/2013) |
| 05/30/2013 | 45 | Declaration in Support of 44 MOTION to Dismiss *Plaintiffs' First Amended Complaint --Declaration of Mary Ellyn Gormley in Support of Request for Judicial Notice re Motion to Dismiss Amended Complaint* filed byCounty of Alameda. (Related document(s) 44 ) (Gormley, Mary Ellyn) (Filed on 5/30/2013) (Entered: 05/30/2013) |
| 06/03/2013 | 46 | STIPULATION WITH PROPOSED ORDER *resetting motion hearing and CMC* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 6/3/2013) (Entered: 06/03/2013) |
| 06/11/2013 | 47 | **ORDER GRANTING 46 STIPULATION WITH PROPOSED ORDER *resetting motion hearing and CMC* filed by California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc., Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, John Teixeira.. Signed by Judge Susan Illston on 6/11/13. (tfS, COURT STAFF) (Filed on 6/11/2013) (tfS, COURT STAFF). (Entered: 06/11/2013)** |

| | | |
|---|---|---|
| 06/11/2013 | | Set/Reset Deadlines as to 44 MOTION to Dismiss *Plaintiffs' First Amended Complaint*. Motion Hearing set for 8/16/2013 09:00 AM in Courtroom 10, 19th Floor, San Francisco before Hon. Susan Illston. (tfS, COURT STAFF) (Filed on 6/11/2013) (Entered: 06/11/2013) |
| 06/11/2013 | | Set/Reset Hearing Initial Case Management Conference set for 8/9/13 is continued to 8/16/2013 02:30 PM in Courtroom 10, 19th Floor, San Francisco. (tfS, COURT STAFF) (Filed on 6/11/2013) (Entered: 06/11/2013) |
| 06/27/2013 | | **CASE REASSIGNED to the Honorable William H. Orrick, United States District Judge. All parties must review the reassignment order posted at http://cand.uscourts.gov/orders/who-order.pdf and comply with its requirements, including submitting a case management statement. This is a text only docket entry. The reassignment order associated with this notice may be viewed at http://cand.uscourts.gov/orders/who-order.pdf. Signed by Executive Committee on 6/27/13. (ysS, COURT STAFF) (Filed on 6/27/2013) (Entered: 06/27/2013)** |
| 07/03/2013 | 48 | STIPULATION WITH PROPOSED ORDER *re: Case Management* filed by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Kilmer, Donald) (Filed on 7/3/2013) (Entered: 07/03/2013) |
| 07/08/2013 | 49 | **STIPULATION AND ORDER re 48 STIPULATION WITH PROPOSED ORDER *re: Case Management*. Case Management Statement due by 8/28/2013. Motion Hearing and Case Management Conference set for 9/4/2013 02:00 PM in Courtroom 2, 17th Floor, San Francisco before Hon. William H. Orrick. Signed by Judge 07/08/2013 on 07/08/2013. (jmdS, COURT STAFF) (Filed on 7/8/2013) (Entered: 07/09/2013)** |
| 07/19/2013 | 50 | RESPONSE (re 44 MOTION to Dismiss *Plaintiffs' First Amended Complaint* ) filed byCalguns Foundation (CGF), |

| | | |
|---|---|---|
| | | Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Hokanson, Charles) (Filed on 7/19/2013) (Entered: 07/19/2013) |
| 08/02/2013 | 51 | REPLY (re 44 MOTION to Dismiss *Plaintiffs' First Amended Complaint* ) *Defendant County of Alameda's Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint* filed byAlameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley. (Gormley, Mary Ellyn) (Filed on 8/2/2013) (Entered: 08/02/2013) |
| 08/06/2013 | 52 | AFFIDAVIT in Support re 44 MOTION to Dismiss *Plaintiffs' First Amended Complaint Statement of recent decision i/s/o motion to dismiss plaintiff's FAC* filed byAlameda Board of Supervisors. (Attachments: # 1 Exhibit A)(Related document(s) 44 ) (Gormley, Mary Ellyn) (Filed on 8/6/2013) (Entered: 08/06/2013) |
| 08/28/2013 | 53 | CASE MANAGEMENT STATEMENT *Joint Case Management Statement* filed by Alameda Board of Supervisors, Keith Carson, Wilma Chan, County of Alameda, Nate Miley. (Gormley, Mary Ellyn) (Filed on 8/28/2013) (Entered: 08/28/2013) |
| 08/30/2013 | 54 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byCalguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira. (Related document(s) 50 ) (Hokanson, Charles) (Filed on 8/30/2013) (Entered: 08/30/2013) |
| 09/04/2013 | 55 | Minute Entry: Motion Hearing held on 9/4/2013 before William H. Orrick re 13 Motion to Dismiss. Motion taken under advisement; written order to follow. Discovery stayed pending issuance of the order. (Court Reporter FTR 2:20-2:22) (jmdS, COURT STAFF) (Date Filed: 9/4/2013) (Entered: 09/05/2013) |

| 09/09/2013 | 56 | **ORDER GRANTING 44 MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE by Judge William H. Orrick. (jmdS, COURT STAFF) (Filed on 9/9/2013) (Entered: 09/09/2013)** |
|---|---|---|
| 09/17/2013 | 57 | Proposed Order re 56 Order on Motion to Dismiss by Alameda Board of Supervisors. (Attachments: # 1 Proposed Order) (Gormley, Mary Ellyn) (Filed on 9/17/2013) (Entered: 09/17/2013) |
| 09/23/2013 | 58 | **JUDGMENT FOLLOWING ORDER GRANTING DEFENDANTS MOTION TO DISMISS. Signed by Judge William H. Orrick on 09/23/2013. (jmdS, COURT STAFF) (Filed on 9/23/2013) (Entered: 09/23/2013)** |
| 10/21/2013 | 59 | NOTICE OF APPEAL re 58 Judgment to the 9th CCA Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira.(Appeal fee of $455 receipt number 0971-8096471 paid.) (Hokanson, Charles) (Filed on 10/21/2013) Modified on 10/22/2013 (aaaS, COURT STAFF). (Additional attachment(s) added on 10/28/2013: # 1 **USCA NUMBER: 13-17132**) (aaa, COURT STAFF). (Entered: 10/21/2013) |
| 10/22/2013 | 60 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira re 59 Notice of Appeal, (aaaS, COURT STAFF) (Filed on 10/22/2013) (Additional attachment(s) added on 10/22/2013: # 1 Civil Docket) (aaaS, COURT STAFF). (Entered: 10/22/2013) |
| 10/22/2013 | 61 | Copy of 59 Notice of Appeal and Docket sheet mailed to all counsel and to all parties without an e-mail address. (aaaS, COURT STAFF) (Filed on 10/22/2013) (Additional attachment(s) added on 10/22/2013: # 1 Civil Docket) (aaaS, COURT STAFF). (Entered: 10/22/2013) |

| | | |
|---|---|---|
| 10/28/2013 | 62 | **USCA Case Number 13-17132** for 59 Notice of Appeal, filed by California Association of Federal Firearms Licensees (Cal-FFL), Second Amendment Foundation (SAF), Inc., Calguns Foundation (CGF), Inc., Gary Gamaza, Steve Nobriga, John Teixeira. (aaa, COURT STAFF) (Filed on 10/28/2013) (Entered: 10/28/2013) |
| 02/07/2014 | 63 | Transcript Designation Form for proceedings held on 09/04/2013 before Judge WHO, re 59 Notice of Appeal, Transcript due by 2/14/2014. (Hokanson, Charles) (Filed on 2/7/2014) (Entered: 02/07/2014) |
| 02/07/2014 | 64 | TRANSCRIPT ORDER by Calguns Foundation (CGF), Inc., California Association of Federal Firearms Licensees (Cal-FFL), Gary Gamaza, Steve Nobriga, Second Amendment Foundation (SAF), Inc., John Teixeira for Court Reporter FTR - San Francisco. (Hokanson, Charles) (Filed on 2/7/2014) (Entered: 02/07/2014) |
| 03/07/2014 | 65 | Transcript of Proceedings held on 9/4/13, before Judge William H. Orrick. Court Reporter/Transcriber Candace Yount, Telephone number 415-994-5619, email: candace.yount@gmail.com. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 6/5/2014. (Related documents(s) 64 ) (Yount, Candace) (Filed on 3/7/2014) (Entered: 03/07/2014) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 03/14/2014 19:29:19 |

PROOF OF SERVICE

I, Charles Hokanson, hereby certify that I electronically filed the document entitled

**Appellants' Excerpts of Record** in this matter with the Clerk of the Court for the United States

Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 15,

2014.

I also certify that all participants in the case are registered CM/ECF users and that service

will be accomplished by the appellate CM/ECF system.

___ s/ *Charles Hokanson* ___
Charles W. Hokanson
Attorney for Appellants