# Law Offices of Donald Kilmer
A Professional Corporation

1645 Willow Street, Suite 150
San Jose, California 95125
E-Mail: Don@DKLawOffice.com
Phone: 408/264-8489
Fax: 408/264-8487

November 9, 2015

     Via: E-File

Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
95 7th Street
San Francisco, California 94103-1526

     Re: _Teixeira, et al., v. County of Alameda, et al.,_
     Case No.: 13-17132[1]
          Status:    The case is set for Oral Argument Dec. 8, 2015
          Action:    Distribute this Fed. R. App. Proc. Rule 28(j)
                    letter as appropriate given the status of the case.

Your Honors:

The case of _Jackson, et al., v. City and County of San Francisco_; 746 F.3d 953 (9th Cir. 2014) was already cited in Appellants' Reply Brief (Doc 49, pp 6, 7).

It contains favorable and unfavorable points of law in support of Appellants' case. Most notable it makes a finding that commerce in the means of exercising Second Amendment rights (buying ammunition) is part of the protected right. _Id._ at 968.

On June 8, 2015 the U.S. Supreme Court denied _certiorari_ in that case. Normally the denial of _certiorari_ is not a legally significant event, except that this denial came with a dissent which strongly suggests that the lower courts are misinterpreting and misapplying the analysis

---

[1] Originally filed on November 6, 2015. Case Number had typo.

of Second Amendment rights set forth in *Heller v. District of Columbia*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010).

That dissent is reported at *Jackson v. City and County of San Francisco;* 135 S. Ct. 2799; 2015 U.S. LEXIS 3722; 83 U.S.L.W. 3889 (2015). A copy is attached.

This letter contains 175 words.

> Respectfully Submitted,
> /s/
> Donald Kilmer
> Attorney for Appellants

## CERTIFICATE OF SERVICE

On this, November 9, 2015, I served the foregoing NOTICE OF SUPPLEMENTAL AUTHORITY by electronically filing it with the Court's ECF/CM system, which generated a Notice of Filing and effects service upon counsel for all parties in the case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2015.

> /s/ Donald Kilmer_____
> Attorney of Record for Appellants



1 of 1 DOCUMENT

**Espanola Jackson, et al., Petitioner v. City and County of San Francisco, California, et al.**

**No. 14-704.**

**SUPREME COURT OF THE UNITED STATES**

**135 S. Ct. 2799; 2015 U.S. LEXIS 3722; 83 U.S.L.W. 3889**

**June 8, 2015, Decided**

**NOTICE:**

The LEXIS pagination of this document is subject to change pending release of the final published version.

**PRIOR HISTORY:** [**1] ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
Jackson v. City & County of San Francisco, 746 F.3d 953, 2014 U.S. App. LEXIS 5498 (9th Cir. Cal., 2014)

**JUDGES:** Roberts, Scalia, Kennedy, Thomas, Ginsburg, Breyer, Alito, Sotomayor, Kagan.

**OPINION**

[*2799] Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied.

**DISSENT BY:** THOMAS

**DISSENT**

Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting from the denial of certiorari.

"Self-defense is a basic right" and "the central component" of the Second Amendment's guarantee of an individual's right to keep and bear arms. *McDonald* v. *Chicago*, 561 U. S. 742, 767, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (emphasis deleted). Less than a decade ago, we explained that an ordinance requiring firearms in the home to be kept inoperable, without an exception for self-defense, conflicted with the Second Amendment because it "ma[de] it impossible

for citizens to use [their firearms] for the core lawful purpose of self-defense." *District of Columbia* v. *Heller*, 554 U. S. 570, 630, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Despite the clarity with which we described the Second Amendment's core protection for the right of self-defense, lower courts, including the ones here, have failed to protect it. Because Second Amendment rights are no less protected by our Constitution than [*2800] other rights enumerated in that document, I would have granted this petition.

I

Section 4512 of the San Francisco Police Code provides that "[n]o person shall keep a handgun within a residence owned or [**2] controlled by that person unless" (1) "the handgun is stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice" or (2) "[t]he handgun is carried on the person of an individual over the age of 18" or "under the control of a person who is a peace officer under [California law]." San Francisco Police Code, Art. 45, §§4512(a), (c) (2015). The law applies across the board, regardless of whether children are present in the home. A violation of the law is punishable by up to six months of imprisonment and/or a fine of up to $1,000. §4512(e).

Petitioners--six San Francisco residents who keep handguns in their homes, as well as two organizations--filed suit to challenge this law under the Second Amendment. According to petitioners, the law impermissibly rendered their handguns "[in]operable for the purpose of immediate self-defense" in the home. *Heller*, *supra*, at 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637. Because it is impossible to "carry" a firearm on one's person while sleeping, for example, petitioners contended that the law effectively denies them their right to self-defense at times when their potential need for that defense is most acute. In support of that point, they cited a Department of Justice, Bureau of Justice Statistics, [**3] survey estimating that over 60 percent of all robberies of occupied dwellings between 2003 and 2007 occurred between 6 p.m. and 6 a.m.

The District Court for the Northern District of California denied them a preliminary injunction, and the U. S. Court of Appeals for the Ninth Circuit affirmed. The Court of Appeals readily acknowledged that the law "burdens the core of the Second Amendment right" because "[h]aving to retrieve handguns from locked containers or removing trigger locks makes it more difficult 'for citizens to use them for the core lawful purpose of self-defense' in the home." 746 F. 3d 953, 964 (2014) (quoting *Heller*, *supra*, at 630, 128 S. Ct. 2783, 171 L. Ed. 2d 637). But it reasoned that this was not a "severe burden" justifying the application of strict scrutiny because "a modern gun safe may be opened quickly." 746 F. 3d, at 964. Applying intermediate scrutiny, the court evaluated San Francisco's proffered "evidence that guns kept in the home are most often used in suicides and against family and friends rather than in self-defense and that children are particularly at risk of injury and death." *Id.*, at 965. The court concluded that the law served "a significant government interest by reducing the number of gun-related injuries and deaths from having an unlocked handgun in the home" [**4] and was "substantially related" to that interest. *Id.*, at 966.

II

The decision of the Court of Appeals is in serious tension with *Heller*. We explained in *Heller* that the Second Amendment codified a right "'inherited from our English ancestors,'" a key component of which is the right to keep and bear arms for the lawful purpose of self-defense. 554 U. S., at 599, 128 S. Ct. 2783, 171 L. Ed. 2d 637. We therefore rejected as inconsistent with the Second Amendment a ban on possession of handguns in the home because "handguns are the most

popular weapon chosen by Americans for self-defense in the home" and because a trigger-lock requirement prevented residents from rendering their firearms "operable for the purpose of immediate self-defense." *Id.*, at 629, 635, 128 [*2801] S. Ct. 2783, 171 L. Ed. 2d 637. San Francisco's law allows residents to *use* their handguns for the purpose of self-defense, but it prohibits them from *keeping* those handguns "operable for the purpose of *immediate* self-defense" when not carried on their person. The law thus burdens their right to self-defense at the times they are most vulnerable--when they are sleeping, bathing, changing clothes, or otherwise indisposed. There is consequently no question that San Francisco's law burdens the core of the Second Amendment right.

That burden is significant. One petitioner, an elderly woman who [**5] lives alone, explained that she is currently forced to store her handgun in a lock box and that if an intruder broke into her home at night, she would need to "turn on the light, find [her] glasses, find the key to the lockbox, insert the key in the lock and unlock the box (under the stress of the emergency), and then get [her] gun before being in position to defend [herself]." Declaration of Espanola Jackson in Support of Motion for Preliminary Injunction, Record in Case 3:09-cv-02143 (ND Cal.), Doc. 136-3, p. 2. As she is over 79 years old, that would "not [be] an easy task." *Ibid.* Another petitioner stated that she is forced to store her gun in a code-operated safe and, in the event of an emergency, would need to get to that safe, remember her code under stress, and correctly enter it before she could retrieve her gun and be in a position to defend herself. If she erroneously entered the number due to stress, the safe would impose a delay before she could try again. A third petitioner explained that he would face the same challenge and, in the event the battery drains on his battery-operated safe, would need to locate a backup key to access his handgun. In an emergency situation, [**6] the delay imposed by this law could prevent San Francisco residents from using their handguns for the lawful purpose of self-defense. And that delay could easily be the difference between life and death.

Since our decision in *Heller*, members of the Courts of Appeals have disagreed about whether and to what extent the tiers-of-scrutiny analysis should apply to burdens on Second Amendment rights. Compare *Heller* v. *District of Columbia*, 670 F. 3d 1244, 399 U.S. App. D.C. 314 (CADC 2011) ("We ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny"), with *id.*, at 1271 (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny"). One need not resolve that dispute to know that something was seriously amiss in the decision below. In that decision, the Court of Appeals recognized that the law "burdens the core of the Second Amendment right," yet concluded that, because the law's burden was not as "severe" as the one at issue in *Heller*, it was "not a substantial burden on the Second Amendment right itself." [**7] 746 F. 3d, at 963-965. But nothing in our decision in *Heller* suggested that a law must rise to the level of the absolute prohibition at issue in that case to constitute a "substantial burden" on the core of the Second Amendment right. And when a law burdens a constitutionally protected right, we have generally required a higher showing than the Court of Appeals demanded here. See generally *Heller*, 554 U. S., at 628-635, 128 S. Ct. 2783, 171 L. Ed. 2d 637; *Turner Broadcasting System, Inc.* v. *FCC*, 512 U. S. 622, 662, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994) (explaining that even intermediate scrutiny requires that a regulation not "burden substantially more speech than is necessary to [*2802] further the government's legitimate interests" (internal quotation marks omitted)).

The Court should have granted a writ of certiorari to review this questionable decision and to reiterate that courts may not engage in this sort of judicial assessment as to the severity of a burden imposed on core Second Amendment rights. See *Heller*, 554 U. S., at 634, 128 S. Ct. 2783, 171 L. Ed. 2d 637 ("The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis what is *really worth* insisting upon"); *id.*, at 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (explaining that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home").

The Court's refusal to review this decision is difficult [**8] to account for in light of its repeated willingness to review splitless decisions involving alleged violations of other constitutional rights. See, *e.g., Glossip* v. *Gross*, 574 U. S. ___, 135 S. Ct. 1173, 190 L. Ed. 2d 929 (2015) (cert. granted) (Eighth Amendment); *Ontario* v. *Quon*, 560 U. S. 746, 130 S. Ct. 2619, 177 L. Ed. 2d 216 (2010) (Fourth Amendment); *Hill* v. *Colorado*, 530 U. S. 703, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000) (First Amendment). Indeed, the Court has been willing to review splitless decisions involving alleged violations of rights it has never previously enforced. See, *e.g.*, *BMW of North America, Inc.* v. *Gore*, 517 U. S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) (right to limit on punitive damages awards). And it has even gone so far as to review splitless decisions involving alleged violations of rights expressly foreclosed by precedent. See, *e.g.*, *Boumediene* v. *Bush*, 553 U. S. 723, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008) (right of aliens held outside U. S. territory to the privilege of habeas corpus); *Lawrence* v. *Texas*, 539 U. S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) (right to engage in adult, consensual same-sex intimate behavior). I see no reason that challenges based on Second Amendment rights should be treated differently.

\*\*\*

We warned in *Heller* that "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." 554 U. S., at 634, 128 S. Ct. 278, 171 L. Ed. 2d 637. The Court of Appeals in this case recognized that San Francisco's law burdened the core component of the Second Amendment guarantee, yet upheld the law. Because of the importance of the constitutional right at stake and the questionable nature of the Court of Appeals' judgment, I would have granted a writ [**9] of certiorari.