No. 13-17132

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**John Teixeira; et al.,**
*Plaintiffs/Appellants,*

v.

**County of Alameda; et al.,**
*Defendants/Appellees*

On Appeal from the United States District Court
for the Northern District Of California
Case No. 3:12-CV-03288-WHO, Hon. William H. Orrick

## BRIEF OF AMICUS CURIAE DEAN ERWIN CHEMERINSKY
## IN SUPPORT OF DEFENDANTS-APPELLEES' PETITION
## FOR REHEARING OR REHEARING EN BANC

ANTON A. WARE
DAVID A. CAINE
ARNOLD & PORTER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111
Tel: (415) 471-3100
Fax: (415) 471-3400

LISA HILL FENNING
AMANDA SEMAAN
ERIC D. MASON
STEPHANIE N. KANG
ARNOLD & PORTER LLP
777 South Figueroa St.
44th Floor
Los Angeles, CA 90017
Tel: (213) 243-4000
Fax: (213) 243-4199

*Counsel for Amicus Curiae Dean Erwin Chemerinsky*

# TABLE OF CONTENTS

Page

INTEREST OF *AMICUS CURIAE*........................................................1

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................4

**I.**    THE SECOND AMENDMENT DOES NOT ENCOMPASS A CONSTITUTIONAL RIGHT TO *SELL* FIREARMS ...........................4

    **A.**    There Is No Freestanding Individual Right to Sell Firearms............................................................................4

    **B.**    Laws Regulating the Commercial Sale of Firearms Are "Presumptively Lawful" and Thus Not Subject to Heightened Scrutiny ........................................................7

    **C.**    Pre-*Heller* Challenges to Gun Store Zoning Ordinances Consistently Ruled that Such Regulations Are Outside the Scope of the Second Amendment ...........................10

**II.**    THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM UNDER THE SECOND AMENDMENT .................................11

    **A.**    Plaintiffs Must Allege Facts Demonstrating a Burden on the Individual Right to Keep and Bear Arms for Self-Defense .....................................................................11

    **B.**    Plaintiffs Do Not Meet This Pleading Standard.............................13

        **1.**    Plaintiffs' *De Facto* Ban Allegation Is Not Plausible................................................................13

        **2.**    Plaintiffs' Convenience-Based Allegations Are Also Insufficient...............................................15

    **C.**    Rational Basis Review Applies .......................................16

CONCLUSION .....................................................................................17

CERTIFICATE OF COMPLIANCE...................................................19

CERTIFICATE OF SERVICE .............................................................20

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................12

*Cent. States, Se. & Sw. Areas Pension Fund v. Lady Balt. Foods, Inc.*,
960 F.2d 1339 (7th Cir. 1992) ........................................................16

*District of Columbia v. Heller*,
554 U.S. 570 (2008)............................................................... passim

*Ezell v. City of Chi.*,
651 F.3d 684 (7th Cir. 2011) ...........................................................5

*Githere v. Consol. Amusement Corp. Inc.*,
258 F. App'x 122 (9th Cir. 2007)...................................................11

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011)..................................................5, 12

*Ill. Sporting Goods Ass'n v. Cty. of Cook*,
845 F. Supp. 582 (N.D. Ill. 1994)...................................................10

*Jackson v. City & Cty. of S.F.*,
746 F.3d 953 (9th Cir. 2014) ...........................................................8

*Jackson Water Works, Inc. v. Pub. Utils. Comm'n of State of Cal.*,
793 F.2d 1090 (9th Cir. 1986) ........................................................16

*Koscielski v. City of Minneapolis*,
393 F. Supp. 2d 811 (D. Minn. 2005)............................................10

*Lone Star Sec. & Video, Inc. v. City of L.A.*,
989 F. Supp. 2d 981 (C.D. Cal. 2013), *aff'd*, 2016 WL 3632375
(9th Cir. July 7, 2016)......................................................................15

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)...............................................................................3, 4, 17

*Mont. Shooting Sports Ass'n v. Holder*,
    No. CV-09-147, 2010 WL 3926029 (D. Mont. Aug. 31, 2010),
    *adopted*, 2010 WL 3909431 (D. Mont. Sept. 29, 2010)..................................6

*Second Amendment Arms v. City of Chi.*,
    135 F. Supp. 3d 743, 753 (N.D. Ill. 2015)...............................................12, 13

*Teixeira v. Cty. of Alameda*,
    No. 12-cv-03288, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013) ........... passim

*Teixeira v. Cty. of Alameda*,
    No. 13-17132, 2016 WL 2849245 (9th Cir. May 16, 2016) ................. passim

*Torraco v. Port Auth. of N.Y. & New Jersey*,
    615 F.3d 129 (2d Cir. 2010) ..........................................................................15

*United States v. 12 200-Foot Reels of Super 8mm. Film*,
    413 U.S. 123 (1973)........................................................................................7

*United States v. Barton*,
    633 F.3d 172 (3d Cir. 2011) ..........................................................................13

*United States v. Chafin*,
    423 F. App'x 342 (4th Cir. 2011)..................................................................6, 7

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) .......................................................................12

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) ...........................................................................5

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ...........................................................................6, 9

*Williams v. Pryor*,
    240 F.3d 944 (11th Cir. 2001) .......................................................................16

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. II.............................................................................. passim

## STATUTES, RULES AND REGULATIONS

Fed. R. App. P. 29(c)(5)..........................................................................1

# INTEREST OF *AMICUS CURIAE*[1]

This amicus curiae brief is submitted on behalf of Erwin Chemerinsky in support of Defendants-Appellees' Petition for Rehearing or Rehearing En Banc (ECF No. 79). Erwin Chemerinsky is a renowned professor of constitutional law, and the author of eight books and more than 200 articles in leading law reviews. He is the founding Dean and Distinguished Professor of Law, and Raymond Pryke Professor of First Amendment Law, at the University of California, Irvine School of Law. He was formerly a professor of law at the University of Southern California for more than twenty-one years.

Plaintiffs-Appellants and Defendants-Appellees have both consented through counsel to the filing of this amicus brief. 9th Cir. R. 29-2(a).

## INTRODUCTION

The Court should grant Defendants-Appellees' Petition for Rehearing or Rehearing En Banc ("Petition for Rehearing") because the panel's opinion in this case misapplies the governing Second Amendment jurisprudence and will, if not reversed, improperly interfere with the ability of local and state governments in this Circuit to regulate the commercial sale of arms.

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of the brief. No person other than amicus curiae or its counsel made a monetary contribution to the preparation or submission of this brief. Fed. R. App. P. 29(c)(5).

This case involves a zoning ordinance imposing restrictions on the location of new gun stores in the unincorporated areas of Alameda County (the "Ordinance"). *Teixeira v. Cty. of Alameda*, No. 13-17132, 2016 WL 2849245, at *1 (9th Cir. May 16, 2016). Plaintiffs allege that the Ordinance violates their own Second Amendment rights as well as the Second Amendment rights of their prospective customers, including because it places "a restriction on convenient access to a neighborhood gun store" and requires potential customers "to travel to other, more remote locations to exercise their rights to acquire firearms and ammunition . . . from licensed stores." First Am. Compl. ("FAC") ¶ 45, *Teixeira v. Cty. of Alameda*, No. 12-cv-03288, 2013 WL 4804756 (N.D. Cal. Sept. 9, 2013). The district court dismissed Plaintiffs' complaint on the ground that the Ordinance is a presumptively lawful regulatory measure under the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller*") and thus subject only to rational basis review, which the Ordinance survives. *Teixeira*, 2013 WL 4804756, at *1. This was the correct analysis and outcome under *Heller*.

In a 2-1 decision, this Court reversed the district court's decision. The majority reasoned that the Second Amendment right to keep and bear arms for self-defense encompasses a constitutional right to *sell* firearms, *Teixeira*, 2016 WL 2849245, at *7, and that the Ordinance accordingly must be subjected to

heightened scrutiny, *id.* at \*9.  The panel further held that the County had failed

to establish as a matter of law that the Ordinance survived such scrutiny.  *Id.* at

\*13-14.  The panel decision erred in at least two important respects.

*First*, it improperly expanded the scope of the Second Amendment to

encompass a purported constitutional right to *sell* firearms.  The Supreme Court

has never recognized such a right.  Moreover, subjecting restrictions on the

commercial sale of firearms to heightened scrutiny is in conflict with the

Supreme Court's clear and unequivocal statement in *Heller* that "laws imposing

conditions and qualifications on the commercial sale of arms" are

"presumptively lawful regulatory measures."  *Heller*, 554 U.S. at 626-27 &

n.26.  The Supreme Court reaffirmed this principle two years later, in *McDonald*

*v. City of Chicago*, 561 U.S. 742 (2010).  Presumptively lawful regulations

should be subjected to rational basis review, *not* heightened scrutiny.

*Second*, as Judge Silverman correctly points out in his dissent, the

complaint does not contain any well-pled allegations that the Ordinance keeps

anyone from lawfully acquiring firearms in Alameda County.  *Teixeira*, 2016

WL 2849245, at \*15 (Silverman, J., dissenting)  ("Conspicuously missing from

this lawsuit is any honest-to-God resident of Alameda County complaining that

he or she cannot lawfully buy a gun nearby.").  The complaint thus fails to state

a claim under the Second Amendment, "no matter what level of scrutiny is applied." *Id.*

If left to stand, the panel decision will encourage gun store operators to challenge any and every zoning or regulatory restriction as presumptively invalid. Such a decision will interfere unduly in state and local regulation of firearms commerce. "In California alone, at least seventeen cities and counties have zoning laws that prohibit gun stores from opening in residential areas. *See* Addendum B." Appellees' Pet. Reh'g or Reh'g En Banc ("Pet. Reh'g") at 21. All of these laws and others would be imperiled by the panel's erroneous decision. These consequences run contrary to the Supreme Court's repeated "assurances" that its decision in *Heller*—which was the first time the Court ever invalidated a law for violating the Second Amendment—should not be taken to cast doubt on laws imposing conditions or qualifications on the commercial sale of arms. *McDonald*, 561 U.S. at 786.

In light of these serious implications, en banc review is warranted.

## ARGUMENT

## I. THE SECOND AMENDMENT DOES NOT ENCOMPASS A CONSTITUTIONAL RIGHT TO *SELL* FIREARMS

### A. There Is No Freestanding Individual Right to Sell Firearms

In *Heller*, the Supreme Court held that the Second Amendment protects an individual's right to keep and bear firearms for self-defense. Subsequent

cases have described this individual right to keep and bear arms for self-defense as the "core lawful purpose" protected by the Second Amendment. *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1255 (D.C. Cir. 2011) ("*Heller II*") (affirming that "the core lawful purpose" protected by the Second Amendment is that of "a person lawfully to acquire and keep a firearm, including a handgun, for the purpose of self-defense in the home") (internal quotation marks and citation omitted); *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012) ("The core right recognized in *Heller* is the right of law-abiding, responsible citizens to use arms in defense of hearth and home.") (internal quotation marks and citation omitted); *Ezell v. City of Chi.*, 651 F.3d 684, 689 (7th Cir. 2011) ("[T]he [Second] Amendment secures an individual right to keep and bear arms, the core component of which is the right to possess operable firearms—handguns included—for self-defense, most notably in the home.") (citation omitted).

As framed by the panel majority, the question presented by this case is whether this individual right to keep and bear arms for self-defense "necessarily includes the right of law-abiding Americans to purchase *and to sell* firearms." *Teixeira*, 2016 WL 2849245, at *1 (emphasis added). The panel's conclusion that the Second Amendment encompasses an individual's "right to *acquire* the very firearms they are entitled to keep and to bear," *id.* at *6 (emphasis added),

is not controversial. However, the panel's further holding that the Second

Amendment also encompasses a freestanding individual right to engage in the

*commercial sale* of firearms, *id.* at \*6-7, is unsupported and erroneous.

The Supreme Court has never recognized or implied that the Second

Amendment protects a right to engage in the commercial sale of firearms. *Mont.*

*Shooting Sports Ass'n v. Holder*, No. CV-09-147, 2010 WL 3926029, at \*21 (D.

Mont. Aug. 31, 2010) ("*Heller* said nothing about extending Second

Amendment protection to firearm manufacturers or dealers."), *adopted*, 2010

WL 3909431 (D. Mont. Sept. 29, 2010). Until the panel decision in the present

case, no circuit court had held that the Second Amendment protects a right to

sell firearms.[2] Surveying the law on this issue in 2011, the Fourth Circuit found

no authority "that remotely suggests that, at the time of its ratification, the

Second Amendment was understood to protect an individual's right to *sell* a

firearm." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011). The

court further held that "although the Second Amendment protects an

individual's right to bear arms, it does not necessarily give rise to a

corresponding right to sell a firearm." *Id.* This is consistent with analogous

---

[2] The only circuit-level support for this proposition is the Third Circuit's dicta
in a footnote to the effect that regulations on the commercial sale of firearms fall
within the scope of the Second Amendment. *United States v. Marzzarella*, 614
F.3d 85, 92 n.8 (3d Cir. 2010). The panel decision in the present case
inappropriately relied upon this fundamentally flawed dicta, as discussed *infra*
Part I.B.

Supreme Court precedent holding that "the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others." *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 128 (1973). *Chafin* is unpublished, but its analysis is correct.

The logic behind *Heller* and its progeny is that the Second Amendment is concerned with the right of the individual to keep and bear arms for self-defense, not with any supposed right of economic actors to enter the market for commercial arms sales, much less to do so in a particular location. Recognizing a constitutional right to engage in the commercial sale of firearms would convert every would-be gun merchant into a member of a constitutionally protected class, entitled to heightened scrutiny of any laws affecting the class. As discussed below, such a result would be directly contrary to the Supreme Court's inclusion of regulations on the commercial sale of firearms within the category of "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 627 n.26.

**B.   Laws Regulating the Commercial Sale of Firearms Are "Presumptively Lawful" and Thus Not Subject to Heightened Scrutiny**

The Supreme Court has stated unequivocally that "laws imposing conditions and qualifications on the commercial sale of firearms" are

"presumptively lawful regulatory measures." *Id.* at 626-27 & n.26. As the

panel majority correctly noted, the law of this Circuit treats *Heller*'s

"presumptively lawful regulatory measures" as examples of measures "that

simply 'fall outside the historical scope of the Second Amendment.'" *Teixeira*,

2016 WL 2849245, at *8 (quoting *Jackson v. City & Cty. of S.F.*, 746 F.3d 953,

959-60 (9th Cir. 2014)). Such regulations "are not subjected to the more

exacting scrutiny normally applied when reviewing a regulation that burdens a

fundamental right." *Id.* Accordingly, because the Ordinance is "quite literally"

a law imposing conditions on the commercial sale of firearms, it falls outside the

scope of the Second Amendment and should not be subjected to heightened

scrutiny. *See id.* at *15 (Silverman, J., dissenting) ( "The district court was right

on target in dismissing the plaintiffs' zoning case for failure to state a Second

Amendment claim, because the district court correctly ruled that the ordinance

restricting the location of a gun store is 'quite literally a 'law[] imposing

conditions and qualifications on the commercial sale of arms . . . .'"). That

should be the end of the analysis.

The panel majority, however, concluded that contrary to *Heller*'s plain

language, "laws imposing conditions and qualifications on the commercial sale

of arms" should be treated differently than the other categories of

"presumptively lawful regulatory measures" identified in the same sentence of

*Heller* and should *not* be considered to be outside the scope of the Second Amendment. *Id.* at \*8 (majority opinion) (stating that the "exemption" for laws imposing conditions on the commercial sale of arms "does not mean that there is a categorical exception from Second Amendment scrutiny for the regulation of gun stores"). Relying on the dubious authority of dicta *in a footnote* in the Third Circuit's decision in *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), the panel majority reasoned that if gun store regulations were categorically exempted from Second Amendment scrutiny, "the County could enact a total prohibition on the commercial sale of firearms," *Teixeira*, 2016 WL 2849245, at \*8, a result the panel stated would be "untenable under *Heller*," *id.* (quoting *Marzzarella*, 614 F.3d at 92 n.8) (internal quotation marks omitted).

The basic flaw in this argument is that a measure "imposing *conditions* and *qualifications* on the commercial sale of arms," *i.e.*, mere regulation of commercial gun sales, is different from a "*total prohibition* on the commercial sale of firearms." The fact that the latter may fall within the scope of the Second Amendment does not mean the same is true of the former.

It is, of course, possible to conceive of a hypothetical scenario in which the "conditions" imposed on commercial gun sales are so onerous as to effect a *de facto* prohibition of such sales. But, as the Appellees rightly note, the burden rests on the plaintiff to plead (and ultimately to establish) that such a measure

has an effect beyond mere regulation and in fact deprives residents of the ability to lawfully possess a gun for self-defense. Pet. Reh'g at 9. As discussed in Part II, *infra*, the operative complaint in this case contains no such well-pled allegations.

### C. Pre-*Heller* Challenges to Gun Store Zoning Ordinances Consistently Ruled that Such Regulations Are Outside the Scope of the Second Amendment

*Heller* acknowledges that regulations on the commercial sale of firearms are, and always have been, "presumptively lawful." Pre-*Heller* challenges to zoning-type restrictions on gun stores reaching the federal courts were invariably rejected, based upon review under the rational basis test. *See, e.g.*, *Koscielski v. City of Minneapolis*, 393 F. Supp. 2d 811, 815 (D. Minn. 2005) ("Because Plaintiffs do not allege that the City's zoning ordinance involves suspect classifications or impinges on fundamental rights, the ordinance is examined under the rational basis test.") (challenge by gun store operators to zoning ordinance restricting locations of gun stores); *Ill. Sporting Goods Ass'n v. Cty. of Cook*, 845 F. Supp. 582, 588 (N.D. Ill. 1994) ("Because the licensing procedures contained in Article II of the Ordinance do not interfere with any constitutionally protected fundamental rights, the court must examine the Ordinance under the rational basis test.") (challenge by gun store operators to ordinance prohibiting gun stores in proximity to schools). These cases are fully

consistent with and supported by the historical analysis set forth in the Petition

for Rehearing demonstrating the long-standing tradition of "closely regulat[ing]"

firearms dealers. *See* Pet. Reh'g at 16-21. *Heller* did nothing to disturb these

earlier decisions; to the contrary, it reaffirmed the presumptive validity of

regulations on the commercial sale of firearms.

## II. THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM UNDER THE SECOND AMENDMENT

Assuming *arguendo* that a measure regulating commercial gun sales is not

categorically outside the scope of the Second Amendment, a plaintiff

challenging such a "presumptively lawful regulatory measure" on Second

Amendment grounds would at the very least need to allege well-pled facts

sufficient to demonstrate that the measure burdens the individual right to keep

and bear firearms for self-defense. Here, as the district court correctly held, the

complaint is devoid of such allegations and thus fails to state a viable Second

Amendment claim.

### A. Plaintiffs Must Allege Facts Demonstrating a Burden on the Individual Right to Keep and Bear Arms for Self-Defense

Plaintiffs bear the "burden of alleging facts sufficient to defeat a motion to

dismiss." *Githere v. Consol. Amusement Corp. Inc.*, 258 F. App'x 122, 123 (9th

Cir. 2007). As the district court below properly noted, to avoid dismissal for

failure to state a claim, a complaint must allege "enough facts to state a claim for

relief that is plausible on its face." *Teixeira*, 2013 WL 4804756, at *4 (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

In any Second Amendment challenge, the plaintiff must allege facts demonstrating that the challenged measure burdens conduct protected by the Second Amendment right to possess firearms for self-defense.  *See United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013).  This pleading standard should be even stricter for challenges to presumptively lawful regulatory measures imposing conditions on the commercial sale of guns (again assuming *arguendo* that such measures even implicate conduct protected by the Second Amendment, which is doubtful for the reasons discussed in Part I, *supra*).

For example, in *Heller II*, the D.C. Circuit held that a plaintiff challenging a "presumptively lawful" regulatory measure must establish that "the regulation [has] more than a de minimis effect" on the individual right to possess guns for self-defense.  *Heller II*, 670 F.3d at 1253.  Similarly, in *Second Amendment Arms v. City of Chicago*, the Northern District of Illinois explained that plaintiffs challenging presumptively lawful regulatory measures at a minimum must allege facts sufficient to overcome that presumption:

> The presumption afforded to such restrictions, at a minimum, puts the initial burden on the plaintiff to establish that the restriction on the sale of firearms violates the Second Amendment. At the pleading stage, plaintiffs accomplish this by articulating specific facts to create a plausible inference that the restrictions on the sale of firearms abridge the individual right to possess firearms for protection.

*Second Amendment Arms v. City of Chi.*, 135 F. Supp. 3d 743, 753 (N.D. Ill. 2015); *see also United States v. Barton*, 633 F.3d 172, 174 (3d Cir. 2011) ("To raise a successful as-applied challenge, [Plaintiff] must present facts . . . that distinguish his circumstances from those . . . historically barred from Second Amendment protections.").

## B. Plaintiffs Do Not Meet This Pleading Standard

As the district court and Judge Silverman in his dissent correctly recognized, the operative complaint in this case fails to allege facts sufficient to state a viable Second Amendment claim.

### 1. Plaintiffs' *De Facto* Ban Allegation Is Not Plausible

Plaintiffs' primary contention is that the Ordinance violates the Second Amendment because the regulation makes it "virtually impossible *to open* a gun store in *unincorporated* Alameda County . . . due to the density of disqualifying properties." FAC ¶ 61, *Teixeira*, 2013 WL 4804756 (emphasis added). Plaintiffs do not allege that the Ordinance is a ban on *all* gun stores in Alameda County. Nor do they allege that the Ordinance affects gun stores within

*incorporated* areas of the county.  The complaint contains no well-pled allegations that would-be purchasers cannot acquire guns from existing gun stores in the county.  Instead, the complaint *concedes* that county residents have access to numerous licensed firearms dealers.  *See id.* ¶ 36.

The record confirms that multiple commercial outlets are available to would-be firearms purchasers throughout Alameda County, including in the unincorporated areas of the county where the Ordinance applies.  *See* Pet. Reh'g at 3 ("As of 2011, ten gun stores operated within the County, four of which are in the unincorporated areas of the County governed by the ordinance.  Excerpts of Record (ER) 121, 179."); *id*. at 4 ("Indeed, guns are readily available at a 'Big 5 Sporting Goods' store 607 feet away from the proposed site.  SER 9; ER 120."); *id*. at 10.  As Judge Silverman in his dissent notes, "there is no claim that, due to the zoning ordinance in question, individuals cannot lawfully buy guns in Alameda County.  It is undisputed that they *can*." *Teixeira*, 2016 WL 2849245, at *15 (Silverman, J., dissenting).

Absent any allegation that would-be purchasers are unable to acquire guns for self-defense in Alameda County, Plaintiffs have not stated a claim that the Ordinance infringes the Second Amendment right to possess firearms.  Nor could they allege in good faith that would-be purchasers cannot buy guns in Alameda County, given the record in this case.

### 2. Plaintiffs' Convenience-Based Allegations Are Also Insufficient

Plaintiffs also contend that the Ordinance violates the Second Amendment because it restricts "convenient access to a neighborhood gun store."  FAC ¶ 45, *Teixeira*, 2013 WL 4804756.  The Constitution, however, does not guarantee "convenience," and courts have held as such with respect to other fundamental rights.  *See, e.g.*, *Torraco v. Port Auth. of N.Y. & New Jersey*, 615 F.3d 129, 140-41 (2d Cir. 2010) ("[T]ravelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right." (internal quotation marks and citation omitted)); *Lone Star Sec. & Video, Inc. v. City of L.A.*, 989 F. Supp. 2d 981, 992 (C.D. Cal. 2013) ("[T]he First Amendment does not guarantee a right to the cheapest and most convenient means of advertising."), *aff'd*, 2016 WL 3632375 (9th Cir. July 7, 2016).

Plaintiffs' claim that would-be purchasers are entitled to the enhanced customer service experience Plaintiffs intended to supply has no merit either. Judge Silverman was right to point out that "good customer service . . . is not a constitutional right."  *Teixeira*, 2016 WL 2849245, at *15 (Silverman, J., dissenting).

## C.    Rational Basis Review Applies

Because Plaintiffs have not alleged specific facts sufficient to create a plausible inference that a Second Amendment right has been impaired, the Ordinance—a presumptively lawful and commonplace regulation on the commercial sale of firearms—need only survive rational basis review to be upheld.  Courts have consistently held that regulations governing economic and commercial transactions are subject to rational basis review, not heightened scrutiny.  *See, e.g.*, *Jackson Water Works, Inc. v. Pub. Utils. Comm'n of State of Cal.*, 793 F.2d 1090, 1093-94 (9th Cir. 1986) ("The proper test for judging the constitutionality of statutes regulating economic activity challenged on equal protection grounds is whether the legislation bears a rational relationship to a legitimate state interest."); *see also Williams v. Pryor*, 240 F.3d 944, 953 (11th Cir. 2001) (finding an Alabama statute regulating the right to sell or buy sexual devices "would receive little constitutional protection because ordinary economic and commercial regulations are subject only to rational basis scrutiny"); *Cent. States, Se. & Sw. Areas Pension Fund v. Lady Balt. Foods, Inc.*, 960 F.2d 1339, 1343 (7th Cir. 1992) ("[t]he Supreme Court continues to invalidate discriminatory state taxes," but persons challenging other economic regulation for lack of rational basis face "extraordinary and perhaps insuperable burden").

**CONCLUSION**

In *Heller*, the Supreme Court expressly declined to undertake an exhaustive analysis of the Second Amendment's boundaries. It left to the lower courts the task of sifting through the expected wave of challenges to gun regulations. But the Court did provide clear and unequivocal guidance regarding "laws imposing conditions and qualifications on the commercial sale of arms," which the Court stated are "presumptively lawful regulatory measures" outside the scope of the constitutional protection it recognized in *Heller*.

Here, Plaintiffs seek to push the limits of Second Amendment protections into dangerous new territory, claiming protection for their own competitive commercial gain but under circumstances where no burden on county residents' access to guns has been demonstrated. The panel's majority decision in this case would wholly undermine the ability of municipalities to regulate the commercial sale of firearms, contrary to the Supreme Court's assurances in *Heller* and *McDonald*.

This Court should rehear this case and hold that the complaint is fatally deficient. Clear-cut standards of pleading for Second Amendment injury would serve to guide the lower courts in sorting out potentially viable claims from frivolous ones at the pleading stage. Doing so will help reduce the burden on

the numerous local governments that will otherwise be drawn into protracted and costly fights to defend long-standing and commonplace regulations on the commercial sale of firearms.

Dated: August 1, 2016     Respectfully submitted,


By: /s/ Lisa Hill Fenning
    LISA HILL FENNING
    ANTON A. WARE
    DAVID A. CAINE
    ARNOLD & PORTER LLP
    *Counsel for Amicus Curiae*
    *Dean Erwin Chemerinsky*

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Circuit Rules 29-2(c)(2), the foregoing amicus curiae brief uses a proportionally space typeface of 14-point or larger and contains 4,023 words.

Dated: August 1, 2016      By: /s/ Lisa Hill Fenning

LISA HILL FENNING
ANTON A. WARE
DAVID A. CAINE
ARNOLD & PORTER LLP
*Counsel for Amicus Curiae*
*Dean Erwin Chemerinsky*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 1, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 1, 2016      By: /s/ Lisa Hill Fenning
                                  LISA HILL FENNING
                                  ANTON A. WARE
                                  DAVID A. CAINE
                                  ARNOLD & PORTER LLP
                                  *Counsel for Amicus Curiae*
                                  *Dean Erwin Chemerinsky*