No. 13-17132

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JOHN TEIXEIRA, ET AL.,
*Plaintiffs-Appellants*

v.

COUNTY OF ALAMEDA, ET AL.,
*Defendants-Appellees*

On Appeal from the United States District Court of the Northern
District of California, No. 3:12-cv-03288-WHO (Orrick, J.)

## BRIEF OF *AMICI CURIAE* THE LAW CENTER TO PREVENT GUN VIOLENCE AND YOUTH ALIVE! IN SUPPORT OF DEFENDANTS-APPELLEES' PETITION FOR REHEARING OR REHEARING EN BANC

LAURA J. EDELSTEIN
STEPTOE & JOHNSON LLP
1891 Page Mill Road
Suite 200
Palo Alto, California 94304
Telephone: (650) 687-9500

*Counsel for Amici Curiae the Law
Center to Prevent Gun Violence and
Youth ALIVE!*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, the Law Center to Prevent Gun Violence and Youth ALIVE! state they are non-profit organizations, have no parent companies, and have not issued shares of stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................... i

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iii

INTEREST OF *AMICI CURIAE* ...........................................................................1

INTRODUCTION ..................................................................................................3

REASONS WHY REHEARING SHOULD BE GRANTED ..................................6

I.    ALAMEDA COUNTY HAS THE AUTHORITY TO REGULATE
      THE COMMERCIAL SALE OF GUNS AND ITS ORDINANCE IS
      CONSTITUTIONAL .....................................................................................6

II.   THE PANEL'S OPINION CONFLICTS WITH *HELLER* AND
      BREAKS WITH NINTH CIRCUIT PRECEDENT ......................................9

III.  THE PANEL'S OVERLY RESTRICTIVE INTERPRETATION OF
      "LONGSTANDING" IS CONTRARY TO *HELLER*  AND THIS
      CIRCUIT'S PRECEDENT ...........................................................................13

CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bauer* v. *Harris*,
94 F. Supp. 3d 1149 (E.D. Cal. 2015),
*appeal docketed*, No. 15-15428 (9th Cir. Mar. 9, 2015) ....................................12

*Bonidy* v. *U.S. Postal Serv.*,
790 F.3d 1121 (10th Cir. 2015) ...........................................................................10

*Commonwealth* v. *McGowan*,
982 N.E.2d 495 (Mass. 2013) ..............................................................................10

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008) ......................................................................................*passim*

*Drake* v. *Filko*,
724 F.3d 426 (3d Cir. 2013) ................................................................................14

*Fyock* v. *City of Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) ........................................................................12, 14

*Great Western Shows, Inc.* v. *County of Los Angeles*,
27 Cal. 4th 853 (2002) ..........................................................................................6

*Heller* v. *District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ....................................................................11, 14

*Jackson* v. *City & Cty. of San Francisco*,
746 F.3d 953 (9th Cir. 2014) .....................................................................9, 10, 11

*McDonald* v. *City of Chicago*,
561 U.S. 742 (2010) ...............................................................................................1

*National Rifle Ass'n of Am.* v. *Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
700 F.3d 185 (5th Cir. 2012) ...............................................................................14

*Nordyke* v. *King*,
681 F.3d 1041 (9th Cir. 2012) .............................................................................12

*Pena* v. *Lindley*,
No. 09 Civ. 1185, 2015 WL 854684 (E.D. Cal. Feb. 26, 2015),
*appeal docketed*, No. 15-15449 (9th Cir. Mar. 11, 2015) ...................................12

*Suter* v. *City of Lafayette*,
57 Cal. App. 4th 1109 (1997) .........................................................................6

*Town of Los Altos Hills* v. *Adobe Creek Properties, Inc.*,
32 Cal. App. 3d 488 (1973) .............................................................................7

*United States* v. *Barton*,
633 F.3d 168 (3d Cir. 2011) .....................................................................10, 11

*United States* v. *Booker*,
644 F.3d 12 (1st Cir. 2011).......................................................................13, 14

*United States* v. *Castro*,
No. 10-50160, 2011 WL 6157466 (9th Cir. Nov. 28, 2011) ............................12

*United States* v. *Chovan*,
735 F.3d 1127 (9th Cir. 2013) .........................................................................12

*United States* v. *Dugan*,
657 F.3d 998 (9th Cir. 2011) ...........................................................................10

*United States* v. *Skoien*,
614 F.3d 638 (7th Cir. 2010) .....................................................................13, 14

*United States* v. *Vongxay*,
594 F.3d 1111 (9th Cir. 2010) ...................................................................10, 12

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. II.....................................................................*passim*

Cal. Const. art. XI, 7 .........................................................................6

## STATUTES

Federal Firearms Act of 1938,
Pub. L. No. 75-785, § 2(a), 52 Stat. 1250 (1938) .............................................15

iv

Gun Control Act of 1968,
    Pub. L. No. 90-618, 82 Stat. 1213 (1968) ........................................15

Nonmailable Firearms Act of 1927,
    Pub. L. No. 69-583, § 1, 44 Stat. 1059 (1927) ...................................15

1911 Colo. Laws 408, ch. 136, § 3 ..............................................................15

26 Del. Laws 28, ch. 15, § 2 (1911)..............................................................15

1837 Ga. Laws 90 § 1 ...................................................................................15

1921 Mo. Laws 691, ch. 2, § 1......................................................................15

1913 Or. Laws 497, ch. 256, §§ 1, 3.............................................................15

1901 S.C. Acts 748, No. 435, § 1 ..................................................................15

1879 Tenn. Pub. Acts 135, ch. XCVI § 1 .....................................................15

## CITY AND COUNTY ORDINANCES

Alameda Cty., CA, Mun. Code § 17.54.131.............................................*passim*

Albany, CA, City Code § 8.19.6(i) ..................................................................7

Burbank CA, Mun. Code § 10-1-673.1(A)(5) .................................................7

Carver, MN, City Code § 50.118 ....................................................................7

Cathedral City, CA., Mun. Code § 5.32.040 ..................................................7

Columbia Heights, MN, City Code § 9.107(c)(21) .........................................7

Contra Costa Cty., CA., Code § 82-36.604 ....................................................7

Culver City, CA, Mun. Code § 17.400.050 .....................................................7

Diamond Bar, CA, Mun. Code § 5.08.060(c)..................................................7

East Palo Alto, CA, Mun. Code § 5.28.110(I)................................................7

El Cerrito, CA, Mun. Code § 6.70.100 ...........................................................7

Grass Valley, CA, Mun. Code § 5.48.040(I) ...................................................7

Hercules City, CA, Mun. Code, title 14, § 4-14.06(i) ................................7

Laurel, MD, Land Dev. Code § 20-7.8(o) ................................7

Monterey Cty., CA, Code § 7.70.060 ................................7

New Haven, CT, Zoning Ordinance § 42.4 ................................7

Oakland, CA, Mun. Code § 5.26.070(I) ................................7

Pacifica, CA, Mun. Code, title 9, ch. 4, § 9-4.2316(d) ................................7

Palo Alto, CA, Mun. Code § 4.57.050 ................................7

Pinole, CA, Mun. Code § 17.63.140 ................................7

Pleasant Hill, CA, Mun. Code § 18.25.160 ................................7

Salinas, CA, Mun. Code, § 12A-6(i) ................................7

San Bruno, CA, Mun. Code, § 6.08.070(H) ................................7

San Francisco, CA, Police Code, art. 9 § 613.3(i) ................................7

San Pablo, CA, Mun. Code, § 9.10.140 ................................7

San Rafael, CA, Code,§ 14.17.075(C)(4) ................................7

Santa Cruz Cty., CA, Code § 5.62.080 ................................7

Santa Cruz, CA, Mun. Code, § 9.26.080(a) ................................7

West Hollywood, CA, Mun. Code, § 5.60.030(6) ................................7

## OTHER AUTHORITIES

Bureau of Alcohol, Tobacco, Firearms and Explosives, *List of Federal Firearms Licensees*, *California*, June 2016, *available at* https://www.atf.gov/firearms/listing-federal-firearms-licensees-ffls-2016 ..........4

Law Center to Prevent Gun Violence, *The California Model:  Twenty Years of Putting Safety First*, *available at* http://smartgunlaws.org/resources/publications/ ..................................................8

Public Health, *County Health Status Profiles 2016*, *available at* http://www.cdph.ca.gov/programs/ohir/Documents/OHIRProfiles2016.pdf ..................................................................................................................3

U.S Centers for Disease Control and Prevention, National Center for Injury Prevention and Control, *Web-Based Injury Statistics Query & Reporting System (WISQARS), Fatal Injury Report, 1981-1998*, *available at* http://webappa.cdc.gov/sasweb/ncipc/mortrate9.html .........................................8

US. Environmental Protection Agency, *County FIPS Code Listing for the State of California*, *available at* https://www.epa.gov/enviro/county-fips-code-listing-state-california ................................................................4

Violence Policy Center, *Lost Youth, A County-by-County Analysis of 2013 California Homicide Victims Ages 10 to 24*, *available at* http://www.vpc.org/studies/cayouth2015.pdf......................................................3

*WISQARS Injury Mortality Reports, 1999-2010, for National, Regional, and States* (Feb. 2013), *available at* http://webappa.cdc.gov/sasweb/ncipc/dataRestriction_inj.html. .........................8

# INTEREST OF *AMICI CURIAE*

*Amicus curiae* the Law Center to Prevent Gun Violence ("Law Center") is a national, non-profit organization dedicated to reducing gun violence. Founded after an assault weapon massacre at a San Francisco law firm in 1993, the Law Center provides comprehensive legal expertise in support of common sense gun laws. The Law Center tracks and analyzes federal, state, and local firearms legislation, monitors Second Amendment litigation nationwide, and provides support to jurisdictions facing legal challenges to their gun laws. The Law Center has provided informed analysis as an *amicus* in a wide variety of important firearm-related cases nationwide, including the Supreme Court cases *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) and *McDonald* v. *City of Chicago*, 561 U.S. 742 (2010).

For more than twenty years, the Law Center has worked with California cities and counties on the development of local laws to reduce gun violence and has a substantial interest in ensuring that localities retain the authority to enact and enforce such laws. The Law Center submits this brief to assist the Court in developing the appropriate jurisprudence for local laws regulating the commercial sale of guns, such as Alameda County Municipal Code § 17.54.131 (the "Ordinance"). The Ordinance provides a safe distance between gun dealers and sensitive areas such as residential neighborhoods and school zones.

1

*Amicus curiae* Youth ALIVE! is an Alameda County-based non-profit agency dedicated to preventing violence and developing youth leaders who advocate for smart anti-violence policies. A public health worker and a group of East Oakland high school students founded Youth ALIVE! in 1991 in response to shootings that were happening on and around their campus. Youth experience significant stress daily from gun violence and the threat of gun violence. A large part of Youth ALIVE!'s work is ministering directly to youth who have suffered firearm injuries and to families who have lost loved ones to gun violence. Youth ALIVE! stands with victims of gun violence, who are members of the organization's board, staff, and youth leadership and whose voices must be heard in legal challenges to common sense gun laws to help prevent future suffering by Alameda County residents.

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no party's counsel authored this brief in whole or part. No party's counsel contributed money that was intended to fund the preparation or submission of this brief. No person – other than the amici curiae, its members, or its counsel – contributed money that was intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

**INTRODUCTION**

Alameda County suffers from unacceptably high levels of gun violence. Between 2012 and 2014, the County had the second highest firearm-related death rate in California for counties with populations over one million, averaging 145.7 firearm-related homicides per year.[1] In 2013, the County had one of the highest homicide rates among youth and young adults ages 10-24 – a rate of 19.51 per 100,000 population – more than double the statewide rate.[2] For homicides in which the weapon could be identified, 97 percent of the victims ages 10-24 in the County were shot and killed with guns.[3]

In 1998, the County enacted a local zoning ordinance to provide a safe distance between new gun dealers and sensitive areas such as residential neighborhoods and school zones. The Ordinance requires new gun dealers to be located 500 feet away from residentially-zoned districts, schools, day care centers, and liquor stores. The Ordinance does not prohibit gun dealers or gun sales in the County, either directly or indirectly. Nor does it limit in any way a person's ability

---

[1] *See* California Department of Public Health, *County Health Status Profiles 2016*, at 38, *available at* http://www.cdph.ca.gov/programs/ohir/Documents/OHIRProfiles2016.pdf.

[2] *See* Violence Policy Center, *Lost Youth, A County-by-County Analysis of 2013 California Homicide Victims Ages 10 to 24*, at 4-5, *available at* http://www.vpc.org/studies/cayouth2015.pdf.

[3] *Id.* at 26.

to purchase, possess, or use firearms for self-defense.  As of 2011, there were ten gun dealers in the County, including a Big 5 Sporting Goods store operating only 607 feet from plaintiffs' proposed site for their dealership.[4]  (Excerpt of Record (ER) 120-21.)  The Ordinance merely regulates the distance between gun dealers and sensitive areas.

A divided panel of this Court refused to affirm the constitutionality of the County's local zoning ordinance even though the majority conceded it is a law imposing conditions and qualifications on the commercial sale of guns – one of the categorical limits to the Second Amendment the Supreme Court identified in *Heller*.  The majority's decision, if allowed to stand, would constitute an unwarranted expansion of *Heller* and substantially increase the burden on governments seeking to enact and defend constitutional limitations on the commercial sale of guns.  Rehearing is necessary to realign this Circuit's jurisprudence on a matter of exceptional importance.

---

[4] The Bureau of Alcohol, Tobacco, Firearms and Explosives' list of federal firearms licensees in Alameda County as of June 2016 shows 30 firearms dealers currently operating in the County.  *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, *List of Federal Firearms Licensees*, *California*, June 2016, *available at* https://www.atf.gov/firearms/listing-federal-firearms-licensees-ffls-2016.  Alameda County is licensed county "001."  *See* US. Environmental Protection Agency, *County FIPS Code Listing for the State of California*, *available at* https://www.epa.gov/enviro/county-fips-code-listing-state-california.

The majority's decision disregarded the Supreme Court's determination in *Heller* that laws imposing conditions on the commercial sale of guns are presumptively lawful.  It also failed to follow binding Circuit precedent that if a challenged law falls into one of *Heller*'s categorical exceptions to the Second Amendment, the court's Second Amendment analysis is complete.  Instead, the majority required the County to demonstrate not only that the Ordinance was a law imposing a condition or qualification on the commercial sale of guns, but also that the regulation was "longstanding."  Under this Circuit's framework for analyzing Second Amendment claims, however, the County was not required to make an independent showing that the Ordinance is longstanding.  As a presumptively lawful regulatory measure falling within one of *Heller*'s enumerated categories and outside the scope of the Second Amendment, the Ordinance is constitutional.

The majority further compounded its errors by applying an overly restrictive interpretation of "longstanding."  *Heller* demonstrates – and this Circuit has recognized – that gun regulations can be deemed "longstanding" even if they cannot boast a founding era analogue.  It was not necessary for the Court to engage in a historical analysis of the Ordinance because it falls within one of *Heller*'s enumerated categories of presumptively lawful regulations.  But even if a historical analysis were required, the Ordinance is sufficiently "longstanding" to withstand scrutiny, as it is a zoning law akin to those on the books since the early twentieth

century and is heir to a longstanding class of federal and state regulations on the sale of guns.

Gun regulations are effective in reducing gun violence and gun-related deaths. Protecting the ability of local governments to enact sensible laws regulating the commercial sale of guns is a matter of increasing urgency, particularly in light of recent firearm tragedies. Rehearing is warranted.

## REASONS WHY REHEARING SHOULD BE GRANTED

## I. ALAMEDA COUNTY HAS THE AUTHORITY TO REGULATE THE COMMERCIAL SALE OF GUNS AND ITS ORDINANCE IS CONSTITUTIONAL

The California Constitution provides that a "county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, 7. It is well settled that a local government's police power includes the power to enact zoning ordinances and also to regulate the sale of guns. *See Great Western Shows, Inc.* v. *County of Los Angeles*, 27 Cal. 4th 853, 866-70 (2002) (upholding county authority to regulate gun sales on its property); *Suter* v. *City of Lafayette*, 57 Cal. App. 4th 1109, 1117-31 (1997) (recognizing county's authority to restrict gun dealers to certain commercially zoned areas). California courts have recognized that local zoning ordinances "constitute a justifiable exercise of police power," and the

courts presume these ordinance to be valid. *Town of Los Altos Hills* v. *Adobe Creek Properties, Inc.*, 32 Cal. App. 3d 488, 508 (1973).

Twenty-five California cities and counties have exercised their legal authority to enact local zoning ordinances regulating the location of gun dealers.[5] In *Heller*, the Supreme Court specifically identified laws that "impose conditions and qualifications on the commercial sale of arms" as "presumptively lawful regulatory measures" that do not burden conduct within the Second Amendment. *Heller*, 554 U.S. at 626-27 & n.26. These local zoning ordinances impose exactly the type of reasonable condition on the commercial sale of guns the Supreme Court endorsed in *Heller*.[6]

---

[5] *See* Albany, CA, City Code § 8.19.6(i); Burbank CA, Mun. Code § 10-1-673.1(A)(5); Cathedral City, CA., Mun. Code § 5.32.040; Culver City, CA, Mun. Code § 17.400.050; Diamond Bar, CA, Mun. Code § 5.08.060(c); East Palo Alto, CA, Mun. Code § 5.28.110(I); El Cerrito, CA, Mun. Code § 6.70.100; Grass Valley, CA, Mun. Code § 5.48.040(I); Hercules City, CA, Mun. Code, title 14, § 4-14.06(i); Oakland, CA, Mun. Code § 5.26.070(I); Pacifica, CA, Mun. Code, title 9, ch. 4, § 9-4.2316(d); Palo Alto, CA, Mun. Code § 4.57.050; Pinole, CA, Mun. Code § 17.63.140; Pleasant Hill, CA, Mun. Code § 18.25.160; Salinas, CA, Mun. Code, § 12A-6(i); San Bruno, CA, Mun. Code, § 6.08.070(H); San Francisco, CA, Police Code, art. 9 § 613.3(i); San Pablo, CA, Mun. Code, § 9.10.140; San Rafael, CA, Code,§ 14.17.075(C)(4); Santa Cruz, CA, Mun. Code, § 9.26.080(a); West Hollywood, CA, Mun. Code, § 5.60.030(6); Alameda Cty., CA. Mun. Code, § 17.54.131; Contra Costa Cty., CA., Code § 82-36.604; Monterey Cty., CA, Code § 7.70.060; Santa Cruz Cty., CA, Code § 5.62.080.

[6] Similar ordinances are in effect in cities nationwide. *See, e.g.,* Carver, MN, City Code § 50.118; Columbia Heights, MN, City Code § 9.107(c)(21); Laurel, MD, Land Dev. Code § 20-7.8(o); New Haven, CT, Zoning Ordinance § 42.4.

Local gun laws in California have had a tremendous impact. Since the mid-1990s, California cities and counties have enacted more than 300 local firearm ordinances in an effort to reduce gun-related deaths and injuries.[7] Those legislative efforts have "trickled up" to the state level, and California now has the strongest gun laws in the nation.[8] As a result, over the last two decades, California's gun death rate has been cut by 56% – a reduction that translates to thousands of lives saved every single year.[9]

The majority ignored the County's authority to enact local zoning ordinances, including those regulating where guns may be sold. As the dissent emphasized, "what we're dealing with here is a mundane zoning dispute dressed up as a Second Amendment challenge." (Dissent 35.) Rehearing should be granted to protect the ability of local governments to enact sensible and effective laws, including zoning ordinances, that regulate the commercial sale of guns.

---

[7] *See* Law Center to Prevent Gun Violence, *The California Model: Twenty Years of Putting Safety First*, at 3, *available at* http://smartgunlaws.org/resources/publications/.

[8] *Id.*

[9] *Id.* at 4 (citing U.S Centers for Disease Control and Prevention, National Center for Injury Prevention and Control, *Web-Based Injury Statistics Query & Reporting System (WISQARS), Fatal Injury Report, 1981-1998*, *available at* http://webappa.cdc.gov/sasweb/ncipc/mortrate9.html (accessed on July 11, 2013) and *WISQARS Injury Mortality Reports, 1999-2010, for National, Regional, and States* (Feb. 2013), *available at* http://webappa.cdc.gov/sasweb/ncipc/dataRestriction_inj.html.)

## II. THE PANEL'S OPINION CONFLICTS WITH *HELLER* AND BREAKS WITH NINTH CIRCUIT PRECEDENT

In *Heller*, the Supreme Court held for the first time that the Second Amendment protects the individual right of responsible, law-abiding citizens to possess an operable handgun in the home for self-defense purposes. However, the Court was careful to emphasize that this right is "not unlimited." *Heller*, 554 U.S. at 626. It is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes." *Id.* The Court identified specific limitations on the Second Amendment right, including prohibitions on dangerous and unusual weapons and "presumptively lawful regulatory measures." *Id.* at 626-27 & n. 26. Among the categories of "presumptively lawful regulatory measures" the Court enumerated are "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* These laws do not burden conduct protected by the Second Amendment and fall outside its scope. *See Jackson* v. *City & Cty. of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

This Circuit has adopted a two-pronged approach to determining whether a challenged law falls outside the scope of Second Amendment. A challenged law does not burden conduct protected by the Second Amendment if *either*: (1) "the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller*;" *or* (2) "the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of

9

the Second Amendment." *Id.* If a challenged law falls within one of Heller's

categorical exceptions under the first prong, the court's Second Amendment

analysis is complete. *Id.* at 960, 962-63. Following the Supreme Court's

instruction, this Circuit treats each of *Heller's* enumerated categories as a discrete

class of laws that do not burden conduct within the scope of the Second

Amendment. *See Jackson*, 746 F.3d at 960; *United States* v. *Dugan*, 657 F.3d 998,

999-1000 (9th Cir. 2011); *United States* v. *Vongxay*, 594 F.3d 1111, 1115 (9th Cir.

2010).[10]

The majority's decision conceded, as it must, that "the Ordinance is a law[]

imposing conditions and qualifications on the commercial sale of arms." (Maj. Op.

22 (internal quotations and citation omitted).) Under binding Circuit precedent, the

court's Second Amendment analysis was complete. As the dissent noted, the

Ordinance is "quite literally a 'law[] imposing conditions and qualifications on the

commercial sale of arms'" and falls squarely into one of Heller's enumerated

---

[10] The Ninth Circuit is not alone in this approach. Other courts treat laws falling
within *Heller*'s enumerated categories as outside the scope of the Second
Amendment. *See, e.g., Bonidy* v. *U.S. Postal Serv.*, 790 F.3d 1121, 1125-26 (10th
Cir. 2015); *United States* v. *Barton*, 633 F.3d 168, 172 (3d Cir. 2011);
*Commonwealth* v. *McGowan*, 982 N.E.2d 495, 500 (Mass. 2013).

categories of presumptively lawful regulatory measures. (Dissent 36.) No further

inquiry was required.[11]

The majority also broke with Ninth Circuit precedent by requiring the

County to make an additional showing – to demonstrate, independently, that the

Ordinance is "longstanding." (Maj. Op. 22.) This Circuit rejects any inquiry into

the historical background of laws falling within *Heller*'s categorical exceptions.

The Court's decision in *Jackson* makes clear that a law regulates conduct outside

the scope of the Second Amendment if it *either* falls into an enumerated category

*or* if "persuasive historical evidence" shows that the law affects conduct outside

the Amendment's traditional scope. *Jackson*, 746 F.3d at 960.

When this Circuit has determined that a law is within one of *Heller*'s

identified categories, it has not addressed whether the law independently is

longstanding because the "Supreme Court has made it clear that the government

---

[11] Several courts have stated that a plaintiff may rebut the presumption of lawfulness by showing that the regulation has more than a *de minimis* effect upon his or her right. *See, e.g.*, *Heller* v. *District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) (*Heller II*); *Burton*, 633 F.3d at 172-73. To the extent a plaintiff has a right to rebut the presumption of lawfulness, it would be an as-applied challenge. The district court determined that plaintiffs failed to make the requisite showing. (*See* ER 19-21.) The Ordinance is not total ban on gun sales or purchases in the County. It merely regulates *where* guns may be sold. Plaintiffs' complaint, as the district court noted, "makes quite clear that there *are* existing retail establishments operating in Alameda County that provide guns." (ER 23 (emphasis in original).) The district court thus concluded that any barrier to the purchase or sale of guns is *de minimis*. (*See* ER 20; *see also* Supp. Excerpts of Record (SER) 009.)

can continue to regulate commercial gun dealing." *United States* v. *Castro*, No. 10-50160, 2011 WL 6157466, at *1 (9th Cir. Nov. 28, 2011). *See, e.g., Vongxay*, 594 F.3d at 1115; *Nordyke* v. *King*, 681 F.3d 1041, 1044 (9th Cir. 2012); *accord Bauer* v. *Harris*, 94 F. Supp. 3d 1149, 1154-55 (E.D. Cal. 2015), *appeal docketed*, No. 15-15428 (9th Cir. Mar. 9, 2015); *Pena* v. *Lindley*, No. 09 Civ. 1185, 2015 WL 854684, at *13 (E.D. Cal. Feb. 26, 2015), *appeal docketed*, No. 15-15449 (9th Cir. Mar. 11, 2015). When this Circuit has undertaken a historical analysis, it has examined the historical record separately from *Heller*'s enumerated categories or only after concluding that the challenged law did not fall within one of the categories. *See, e.g.*, *Fyock* v. *City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015); *United States* v. *Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013).

This Circuit's rejection of an independent "longstanding" requirement is consistent with *Heller*. Under *Heller*, a law falling within the enumerated categories is not required to meet a minimum standard of historical vintage. The Court in *Heller* already concluded that each enumerated exception is historically justified: "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Heller*, 554 U.S. at 635. Indeed, the enumerated exceptions in *Heller* are from a wide range of eras. It is thus impossible to discern from *Heller* any specific time period against which such laws should be measured.

The Seventh Circuit has also pointed out the arbitrariness of using a law's age to determine whether it falls into one of *Heller*'s categorical limits on the possession of guns: "It would be weird to say that [the prohibition on misdemeanants convicted of domestic violence crimes possessing firearms] is unconstitutional in 2010 but will become constitutional by 2043, when it will be as 'longstanding' as [the prohibition on felons possessing firearms] was when the Court decided *Heller*." *United States* v. *Skoien*, 614 F.3d 638, 641 (7th Cir. 2010). *See also United States* v. *Booker*, 644 F.3d 12, 24 (1st Cir. 2011) ("Nor can it be that the relative age of a regulation is the key to its constitutionality.").

Rehearing is necessary to realign this Circuit's jurisprudence with the Supreme Court's decision in *Heller*.

## III. THE PANEL'S OVERLY RESTRICTIVE INTERPRETATION OF "LONGSTANDING" IS CONTRARY TO *HELLER* AND THIS CIRCUIT'S PRECEDENT

A historical analysis of the Ordinance was not required because it falls squarely within *Heller*'s categorical exception for laws imposing conditions on the sale of guns. The panel further broke from *Heller* and this Circuit's precedent by requiring the County to show that the Ordinance "is a type of regulation that Americans at the time of the adoption of the Second Amendment or the Fourteenth Amendment . . . would have recognized as a permissible infringement of the traditional right" to bear arms. (Maj. Op. 22-23.) This Circuit recently recognized

that a firearm regulation can be "longstanding" regardless of whether it existed around the time of the adoption of the Second and Fourteenth Amendments.  *See Fyock*, 779 F.3d at 997.

This Circuit's recognition that a firearm regulation can be deemed "longstanding" even if it lacks a direct connection to the founding era is derived directly from *Heller*.  Courts applying *Heller* have consistently observed that *Heller*'s examples of "longstanding" "presumptively lawful" regulations have their origins in the mid-twentieth century.  *See, e.g., Drake* v. *Filko*, 724 F.3d 426, 434 n.11 (3d Cir. 2013); *Booker*, 644 F.3d at 23-24; *Heller II*, 670 F.3d at 1253; *Skoien*, 614 F.3d at 640-41.  *Heller* and its progeny thus demonstrate that "a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue."  *National Rifle Ass'n of Am.* v. *Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 196 (5th Cir. 2012).  As the Seventh Circuit declared, "we do take from *Heller* the message that exclusions need not mirror limits that were on the books in 1791."  *Skoien*, 614 F.3d at 641.

The majority recognized that zoning laws have existed since at least the early twentieth century.  (Maj. Op. 22-23.)  Zoning laws, like the County's Ordinance, have been in effect longer than *Heller*'s examples of "longstanding" "presumptively lawful" regulations, whose origins date back only to the mid-

twentieth century. Thus, even if a historical analysis were required – which is not the case here – under *Heller* and its progeny, the Ordinance is "longstanding."

The Ordinance is also the heir to a longstanding class of federal and state regulations on the sale of guns. Georgia regulated gun sales as early as 1837, limiting the type of pistols that could be sold. *See* 1837 Ga. Laws 90 § 1. Tennessee and South Carolina followed. *See* 1879 Tenn. Pub. Acts 135, ch. XCVI § 1; 1901 S.C. Acts 748, No. 435, § 1. At the beginning of the twentieth century, states began licensing gun dealers and imposing recording and reporting requirements on dealers and manufacturers. *See* 26 Del. Laws 28, ch. 15, § 2 (1911); 1911 Colo. Laws 408, ch. 136, § 3; 1913 Or. Laws 497, ch. 256, §§ 1, 3; 1921 Mo. Laws 691, ch. 2, § 1. The federal government began regulating gun sellers with the passage of the Nonmailable Firearms Act of 1927, Pub. L. No. 69-583, § 1, 44 Stat. 1059 (1927). In 1938, Congress created a licensing scheme for gun sellers, *see* Federal Firearms Act of 1938, Pub. L. No. 75-785, § 2(a), 52 Stat. 1250 (1938), which it expanded in 1968. *See* Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968).

The majority's approach represents an unwarranted expansion of *Heller* and a misreading of binding Ninth Circuit precedent. The majority's refusal to follow *Heller* and its progeny will make it significantly more difficult for governments to show that a regulation is "longstanding" and therefore outside the scope of the

Second Amendment.  This increased burden will detrimentally affect the ability of governments to defend legislation regulating the commercial sale of guns, which the Supreme Court has deemed "presumptively lawful."  Rehearing is warranted to address this issue of exceptional importance.

## CONCLUSION

The Ordinance does nothing to prevent law-abiding residents of Alameda County from possessing firearms in the home for self-defense.  In refusing to affirm the constitutionality of the Ordinance, the majority applied the wrong test to determine whether the Ordinance falls outside the scope of the Second Amendment.  It also erred in requiring an overly demanding showing that the Ordinance is "longstanding."

For the foregoing reasons, *amici curiae* Law Center to Prevent Gun Violence and Youth ALIVE! respectfully request that the County of Alameda's petition for rehearing or rehearing en banc be granted.

Respectfully submitted,

STEPTOE & JOHNSON LLP

Dated:  August 1, 2016

/s/ Laura J. Edelstein
Laura J. Edelstein
1891 Page Mill Road
Suite 200
Palo Alto, California 94304
Telephone:  (650) 687-9500

*Counsel for Amici Curiae the Law Center to Prevent Gun Violence and Youth ALIVE!*

# CERTIFICATION OF COMPLIANCE

I hereby certify that:

1.     This brief complies with the type-volume limitation of Ninth Circuit Rule 29-2(c)(2) because this brief contains 3,795 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

STEPTOE & JOHNSON LLP

Dated:  August 1, 2016

/s/ Laura J. Edelstein
Laura J. Edelstein
1891 Page Mill Road
Suite 200
Palo Alto, California 94304
Telephone:  (650) 687-9500

*Counsel for Amici Curiae the Law Center to Prevent Gun Violence and Youth ALIVE!*

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2016, I electronically filed the foregoing

Brief of *Amici Curiae* Law Center to Prevent Gun Violence and Youth ALIVE! in

Support of the Petition of Defendants-Appellees for Rehearing or Rehearing En

Banc with the Clerk of the Court of the United States Court of Appeals for the

Ninth Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.


STEPTOE & JOHNSON LLP


Dated:  August 1, 2016                    /s/ Laura J. Edelstein
                                          Laura J. Edelstein
                                          1891 Page Mill Road
                                          Suite 200
                                          Palo Alto, California 94304
                                          Telephone:  (650) 687-9500

                                          *Counsel for Amici Curiae the Law
                                          Center to Prevent Gun Violence and
                                          Youth ALIVE!*