No. 13-17132

(Decision: May 16, 2016 | Panel: O'Scannlain, Bea, Silverman)

IN THE
UNITED STATES COURT OF APPEAL
FOR THE NINTH CIRCUIT

JOHN TEIXEIRA; et al.,
*Plaintiffs - Appellants*,

vs.

COUNTY OF ALAMEDA; et al.,
*Defendants - Appellees*.

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
[Dist Ct. No.: 3:12-CV-03288-WHO]

APPELLANTS' RESPONSE:
OPPOSING APPELLEES'
PETITION FOR REHEARING
OR REHEARING EN BANC

Donald E. J. Kilmer, Jr.
CA State Bar No.: 179986
1645 Willow Street, Suite 150
San Jose, California 95125
Voice: 408/264-8489
Fax: 408/264-8487
Don@DKLawOffice.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

THE CALGUNS FOUNDATION, INC., (CGF) is a non-profit organization incorporated under the laws of California with its principal place of business in Roseville, California. CGF supports the California firearms community by promoting education for all stakeholders about California and federal firearms laws, rights and privileges, and by defending and protecting the civil rights of California gun owners. CGF is not a publicly traded corporation.

SECOND AMENDMENT FOUNDATION, INC., (SAF) is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including California. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately owned and possess firearms, and the consequences of gun control. SAF is not a publicly traded corporation.

CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, INC., (Cal-FFL) is a non-profit industry association of, by, and for firearms manufacturers, dealers, collectors, training professionals, shooting ranges, and others, advancing the interests of

its members and the general public through strategic litigation, legislative efforts, and education. Cal-FFL is not a publicly traded corporation.

These institutional plaintiffs have provided funding for this suit.

Dated: September 20, 2016

   /s/   Donald Kilmer

Donald Kilmer
Attorney for Appellants

# TABLE OF CONTENTS

I.   NEITHER PANEL REHEARING NOR *EN BANC*
     REHEARING IS WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Panel Rehearing Should be Denied . . . . . . . . . . . . . . . . . . . . . . 1
     B.   En Banc Rehearing Should be Denied . . . . . . . . . . . . . . . . . . 2
     C.   The County Cannot Meet Its Burden. . . . . . . . . . . . . . . . . . . 2

II.  THE PANEL PROPERLY APPLIED
     CONTROLLING PRECEDENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.   The Panel Properly Applied Supreme Court Precedent . . . . . 4
     B.   The Panel Properly Applied Ninth Circuit Precedent
          and Harmonized Sister Circuit Precedent. . . . . . . . . . . . . . . 5

III. THE PANEL PROPERLY REMANDED THE
     CASE TO THE DISTRICT COURT FOR
     DEVELOPMENT OF AN ADEQUATE RECORD. . . . . . . . . . . . 10

     A.   Strict Scrutiny Applies if the 500-Foot Rule
          is a *De Facto* Ban on Future Gun Stores. . . . . . . . . . . . . . . 10
     B.   If Intermediate Scrutiny Applies,
          A "Secondary Effects" Analysis Requires
          An Evidentiary Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.   The 500-Foot Rule Burdens
               the Second Amendment. . . . . . . . . . . . . . . . . . . . . . . . 12
          2.   The 500-Foot Rule Fails the Second Part
               of the *Chovan* Test. . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     C.   An Analysis Under theSecond Amendment Should
          Conform to the Same Evidentiary
          Requirements as Other Fundamental Rights. . . . . . . . . . 17

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Notice of Related Action / Certificate of Compliance . . . . . . . . . . . . . . 21

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## __Table of Authorities__

## __Cases__

*Agostini v. Felton*, 521 U.S. 203 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Andrews v. State,*
    50 Tenn. 165, 178, 8 Am. Rep. 8, 13 (1871) . . . . . . . . . . . . . . . . . 5

*Annex Books v. City of Indianapolis*,
    581 F.3d 460, 463 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 16

*Armster v United States District Court*,
    806 F.2d 1347 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Barnes v. Glen Theatre, Inc.,* 501 U.S. 560 (1991) . . . . . . . . . . . . . . . 15

*Binderup v. Attorney General of the*
    *United States*, 2016 U.S. App. LEXIS 16407
    (Sept. 7, 2016)(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*City of L.A. v. Alameda Books*, 535 U.S. 425 (2002) . . . . . . . . . . . . . . 15

*City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986) . . . . . . 15

*Craig v. Boren,* 429 U.S. 190 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . 5, 6, 8, 10, 14

*Drake v. Filko*, 724 F.3d 426 (3rd Cir. 2013) . . . . . . . . . . . . . . . . . . . . 7

*Ezell v. Chicago*, 651 F. 3d 684 (7th Cir. 2011) . . . . . . . . . . . . 6, 8, 10, 13

*Fantasyland Video, Inc. v. County of San Diego*,
    505 F.3d 996, 1004 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 14

*Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) . . . . . . . . . . . 6

*GeorgiaCarry.Org, Inc. v. U.S. Army*
    *Corps of Eng'rs*, 788 F.3d 1318 (11th Cir. 2015) . . . . . . . . . . . . . 6, 8

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hill v. Colorado*, 530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996) . . . . . . . . 13

*Isacson v. Horne*, 716 F.3d 1213 (9th Cir. 2013) . . . . . . . . . . . . . . 17, 19

*Jackson v. City and County of San Francisco*,
    746 F. 3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2nd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kirkbride v. Continental Cas. Co.*,
    933 F.2d 729, 732 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 13

*Kolbe v. Hogan*, 813 F.3d 160 (4th Cir. 2016) . . . . . . . . . . . . . . . . . . 6, 7

*McDonald v. Chicago*,
    561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8, 10

*NRA of Am. v. Bureau of Alcohol, Tobacco,*
    *Firearms and Explosives*, 700 F.3d 185 (5th Cir. 2012) . . . . 6, 7, 13

*Planned Parenthood of Wis., Inc. v. Schimel*,
    806 F.3d 908 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 19

*Planned Parenthood Southwest, Inc. v.*
    *Strange,* 33 F. Supp. 3d 1330 (Ala. M. Dist. Ct. 2013) . . . . . . . . 20

*Reed v. Town of Gilbert*,
    707 F.3d 1057, 1074 n.16 (9th Cir. 2013) . . . . . . . . . . . . . . . . . 14

*Schad v. Mt. Ephraim*, 452 U.S. 61 (1981) . . . . . . . . . . . . . . . . . . . . . 15

*Tyler v. Hillsdale Cnty. Sheriff's Dept.*,
2016 U.S. App. Lexis 16880
(6th Cir. Sept. 15, 2016)(en banc) . . . . . . . . . . . . . . . . . 6, 7, 10, 11

*U.S. v. Chovan*,
735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Chovan*,
735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . 2, 6, 8, 10, 13

*United States v. Carter*,
669 F.3d 411 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Chafin*,
423 F. App'x 342 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Chester*,
628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*United States v. Marzzarella*,
614 F.3d 85 (3[th] Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 14

*United States v. One (1) Palmetto State Armory*
*PA-15 Machinegun Reciever/Frame*,
822 F.3d 136 (3rd Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Reese*,
627 F.3d 792 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Whole Woman's Health v. Hellerstedt*,
___ U.S. ___, 136 S.Ct. 2292 (June 27, 2016) . . . . . . . . . . . 17-20

*Wollard v. Gallagher*,
712 F.3d 865 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) . . . . . . . . . 15

*Young v. City of Simi Valley*,
216 F.3d 807 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **Statutes**

18 U.S.C. § 923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Penal Code § 23635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 23690 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 26700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 26815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Penal Code § 26850 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 26915 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 27540 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

California Penal Code § 31610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 31670 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code § 32000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **Rules**

Fed. R. App. P. 35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. App. P. 35(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. App. P. 40(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# I.   NEITHER PANEL REHEARING NOR *EN BANC* REHEARING IS WARRANTED.

## A.   Panel Rehearing Should be Denied.

Panel rehearing is unwarranted. A petition must "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." Fed. R. App. P. 40(a)(2).

"[P]etitions for rehearing serve the limited purpose of enabling a panel to correct an error in its decision." *Armster v United States District Court*, 806 F.2d 1347, 1355 n.9. (9ᵗʰ Cir. 1986).

Given the procedural posture of the case (dismissal under Fed. R. Civ. P. 12) the only facts are those alleged in the First Amended Complaint (FAC). [ER: 30-183]  The panel did not misread the FAC.

As shown below, the panel followed circuit precedent and established precedent from other circuits.

This panel's May 16, 2016 decision should not be reconsidered.

## B.   *En Banc* Rehearing Should be Denied.

Nor is *en banc* consideration justified. "An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or ***maintain uniformity***

of the court's decisions; or (2) the proceeding involves a question of *exceptional* importance."  Fed. R. App. P. 35(a) (emphasis added).

First, the District Court itself did not have the benefit of recent precedent on emerging Second Amendment analysis within this Circuit. *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) was published <u>after</u> the Motion to Dismiss was granted.  Second, the County has not answered the suit or proffered any of the kind of evidence necessary to adjudicate a case where a state actor seeks to regulate fundamental rights.

If a Ninth Circuit *en banc* panel is going to uniformly address whether local governments can treat Second Amendment rights different from First Amendment rights (or access to reproductive services), it should do so only after a fully developed factual record.

### C.   The County Cannot Meet Its Burden.

The flaw in Appellee's theory for requesting *en banc* review, is that the case cannot be **<u>both</u>** "exceptionally important" and also unworthy of a fully developed factual record.  Stated another way, the "exceptional importance" mandate of Fed. R. App. P. 35(a)(2) should, as a matter of law, rest on the best evidentiary record that can be produced by adversarial litigants in a District Court.  Requesting *en banc* consideration of this case, at this stage, is premature.

If this were a serious petition, the Appellees would have addressed the adverse opinions of the multitude of cases from the other Circuits that address how the right to acquire arms and ammunition is part of the Second Amendment. Instead they appear to rely principally on an unpublished opinion out of the Fourth Circuit for the outlier theory that, while people have the right to acquire firearms, there is no corresponding right to buy or sell them. *United States v. Chafin*, 423 F. App'x 342 (4th Cir. 2011). This argument is a little too cute.

Firearms sold by dealers (i.e., most commercial firearm sales) are governed by federal law[1]. 18 U.S.C. § 923 *et seq.* Furthermore, nearly all firearm transfers (commercial sales of new and used guns, private party sales, gun show sales, loans, gifts, etc.) require the use of licensed dealers under California law.[2] It is sophistry to concede the existence of a right, and then argue that acquiring the means to exercise that right can be regulated out of existence. A woman's right to an abortion is not limited to the coat hangers she keeps in her closet.

---

[1] The BATFE publishes a 237 page guide, available at https://www.atf.gov/file/11241/download.

[2] California's voluminous laws are given a lay-man's interpretation by the Attorney General's Office and are collected here: https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/pdf/cfl2016.pdf?.

Addressing the Fourteenth Amendment's Privileges or Immunities Clause, the concurrence in *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) states a constitutional truism for all fundamental rights[3]: "The mere fact that the Clause does not expressly list the rights it protects does not render it incapable of principled judicial application." *Id. at 854.*

Principled application means drawing conclusions based on the mode of analysis of the leading cases, not citation to an unpublished opinion in a different circuit.

## II.   THE PANEL PROPERLY APPLIED CONTROLLING PRECEDENT.

### A.   The Panel Properly Applied Supreme Court Precedent.

The Supreme Court specifically rejected the notion that the rights "recognized in *Heller* [are] a second-class right, subject to an entirely different body of rules than the other *Bill of Rights* guarantees that we have held to be incorporated into the *Due Process Clause*." *McDonald v. Chicago*, 561 U.S. 742, 780 (2010).

Commercial acquisition of firearms and ammunition is a Second Amendment right.  In *Andrews v. State,* 50 Tenn. 165, 178, 8 Am. Rep.

---

[3] Also embodied in the Ninth and Tenth Amendments.

8, 13 (1871) – cited favorably in *District of Columbia v. Heller*, 554 U.S. 570, 617-618 (2008) – the Tennessee Supreme Court equated that State's "right to keep and bear arms" with the Second Amendment when it held "The right to keep and bear arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and purchase and provide ammunition suitable for such arms, and keep them in repair. [...]" <u>This exactly describes Appellants' business model</u>.

"There comes a point . . . at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." *Hill v. Colorado*, 530 U.S. 703, 745 (2000)(Scalia, J., dissenting).

### B.   The Panel Properly Applied Ninth Circuit Precedent and Harmonized Sister Circuit Precedent.

In equating "arms," "weapons," and "firearms" to ammunition, this Court found that "A regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose." *Jackson v. City and County of San Francisco*, 746 F. 3d 953, 967 (9th Cir. 2014). *Jackson* was followed by *Fyock v. City of Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015).

The Seventh Circuit found the Second Amendment right to keep and bear arms, included the right "to acquire and maintain proficiency in

their use," *Ezell v. Chicago*, 651 F. 3d 684, 704 (2011). *Ezell* has been followed by the Fourth Circuit in *Kolbe v. Hogan*, 813 F.3d 160 (2016); the Fifth Circuit in *NRA of Am. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 700 F.3d 185 (2012); the Sixth Circuit in *Tyler v. Hillsdale Cnty. Sheriff's Dept.*, 2016 U.S. App. Lexis 16880 (Sept. 15, 2016)(en banc); the Seventh Circuit (abortion clinic case) in *Planned Parenthood of Wis., Inc. v. Schimel*, 806 F.3d 908 (2015); the Ninth Circuit in *United States v. Chovan*, 735 F.3d 1127 (2013); the Eleventh Circuit in *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318 (2015); and district court cases too numerous to cite.

The County's petition utterly fails to address (let alone cite) a leading case out of the Third Circuit relied upon by the panel. *United States v. Marzzarella*, 614 F.3d 85 (2010). *Marzzarella* addressed the contours of the Second Amendment as set out in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and in footnote 8 noted that:

> Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment under this reading. *Heller* endorsed "laws imposing conditions and qualifications on the commercial sale of firearms." 128 S. Ct. at 2817. In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were

somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.

*Marzzarella* is favorably cited in the Second Circuit: *Kachalsky v. County of Westchester*, 701 F.3d 81 (2012); the Third Circuit: *Binderup v. Attorney General of the United States*, 2016 U.S. App. LEXIS 16407 (Sept. 7, 2016)(en banc), again in: *United States v. One (1) Palmetto State Armory PA-15 Machinegun Reciever/Frame*, 822 F.3d 136 (2016), again in *Drake v. Filko*, 724 F.3d 426 (2013); by the Fourth Circuit in *Kolbe v. Hogan*, 813 F.3d 160 (2016), *Wollard v. Gallagher*, 712 F.3d 865 (2013), *United States v. Carter*, 669 F.3d 411 (2012), *United States v. Chester*, 628 F.3d 673 (2010); the Fifth Circuit in *NRA of Am. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 700 F.3d 185 (2012); the Sixth Circuit in *Tyler v. Hillsdale Cnty. Sheriff's Dept.*, 2016 U.S. App. Lexis 16880 (Sept. 15, 2016)(en banc); the Seventh Circuit in *Ezell v. Chicago*, 651 F. 3d 684 (2011); the Ninth Circuit in *United States v. Chovan*, 735 F.3d 1127 (2013); the Tenth Circuit in *United States v. Reese*, 627 F.3d 792 (2010); the Eleventh Circuit in *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318 (2015); the D.C. Circuit Court of Appeals in *Heller v. District of*

*Columbia*, 670 F.3d 1244 (2011); and again far too many district court opinions to list here.

Neither *Heller* or *McDonald* suggested that the Second Amendment should evolve into a vain and idle parchment. This Circuit's binding precedent compels adjudication of Second Amendment claims *in pari materia* with First Amendment claims. *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013); *Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014). The Second Amendment clearly protects the transactions necessary for acquiring arms. Thus gun stores are exactly like book stores, print shops, newspaper offices, churches, reproductive health clinics, and other constitutionally significant places of business necessary to secure constitutionally significant services and artifacts.

Alameda's specious contention that the assurances in *Heller* regarding "laws imposing conditions on the commercial sale of arms" [*Id.,* 626-27] somehow lowers the bar for local governments to red-line gun stores is contradicted by the holding of *Heller*, *McDonald* and the established precedents in the Circuit Courts.

It is also contra-indicated by the facts of this case[4] and both federal and state law regulating commercial gun sales. California has its own

---

[4] The only County regulation challenged was the 500 foot rule.

highly complex scheme of statutory rules and regulations addressing the commercial sales of firearms. The State mandates all firearm transactions (with very limited exceptions) go through licensed dealers. See California Penal Code[5] §§ 26700 to 26915, inclusive. The State maintains a roster of firearms it deems suitable for commercial sale. P.C. §§ 32000 *et seq.* The State requires firearm safety courses and tests (administered by licensed gun stores) as a prerequisite to a commercial sale. P.C. §§ 31610 to 31670. The State requires proof of safe storage devices before a firearm sale can be completed. P.C. §§ 23635 to 23690. The State limits handgun sales to one per month. P.C. § 27540. Gun dealers must verify safe handling procedures of firearms before delivery of guns that are sold. P.C. § 26850. This is cumulative to background checks and waiting periods. P.C. §§ 26815, 27540.

The 500-foot rule does not regulate commerce at all. It should not be exempt from judicial scrutiny.

### III.   THE PANEL PROPERLY REMANDED THE CASE TO THE DISTRICT COURT FOR DEVELOPMENT OF AN ADEQUATE RECORD.

If a Ninth Circuit *en banc* panel eventually green-lights the red-lining of gun stores, it should have a full factual record.

---

[5] Hereafter citations will be in the format P.C. § 12345.

### A.   Strict Scrutiny Applies if the 500-Foot Rule is a *De Facto* Ban on Future Gun Stores.

As the panel noted, bans – even *de facto* bans – compel a strict scrutiny analysis.  This is consistent with precedent established by the Supreme Court in *Heller* and *McDonald*, by this circuit in *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013), and in the other circuits that have taken up the issue. *Marzzarella*, 614 F.3d 85 (3rd Cir. 2010); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), and most recently *Binderup v. Attorney General of the United States*, 2016 U.S. App. LEXIS 16407 (3rd Cir. Sept. 7, 2016)(en banc) and *Tyler v. Hillsdale Cnty. Sheriff's Dept.*, 2016 U.S. App. Lexis 16880 (6th Cir. Sept. 15, 2016)(en banc).

The FAC states that the Plaintiff/Appellants undertook an informal study of how the 500-Foot Rule disqualified gun stores within unincorporated Alameda County.  The result of that informal study confirmed their hypothesis that the rule makes it difficult, if not impossible, to find a brick and mortar location for a gun store in that jurisdiction.  The hypothesis was confirmed when the Defendants endorsed and ratified the homeowner association's NIMBY[6] objections.

---

[6] Not In My Back Yard.

If, after an adversarial discovery process, the 500-Foot Rule still (4 years later) imposes a *de facto* ban on gun stores, then the record will be clear and the issue can be adjudicated under strict scrutiny.

### B.   If Intermediate Scrutiny Applies, A "Secondary Effects" Analysis Requires An Evidentiary Record.

If the 500-Foot Rule were subject to the lesser, intermediate, scrutiny via the *Chovan-Jackson-Marzzarella-Ezell* line of cases [recently followed by en banc in: *Binderup*, 2016 U.S. App. LEXIS 16407 (3rd Cir. Sept. 7, 2016)(en banc) and *Tyler,* 2016 U.S. App. Lexis 16880 (6th Cir. Sept. 15, 2016)(en banc)], then the trial court will still need to analyze a factual record and conduct a primary and secondary effects analysis that parallels First Amendment jurisprudence.

The Appellees' original Answering Brief [DktEntry 39] and their amici [DktEntry 45] failed to address the issues presented by this case. Namely: (1) Can zoning laws and other land use regulations impact fundamental rights?  And (2) If they do, what is the appropriate form of judicial scrutiny when they are challenged? And (3) What is the quality and quantity of evidence necessary to resolve the claims and defenses? Alameda's petition for rehearing and/or rehearing *en banc* (and their amici) repeat the mistake.

The FAC alleges that the 500-Foot Rule either acts as *de facto* ban on all new gun stores in unincorporated Alameda County or that it burdens the Second Amendment without justification. [ER 50, ¶ 60, 61 of the FAC]. This claim, if supported by evidence, is fatal to the County's ordinance because it is an impermissible burden on access to products and services protected by the Second Amendment.

The County's bare assertion that fundamental rights are not impacted because current non-conforming gun stores are exempt from the ordinance (postulating, not proving, that current market conditions are meeting demand) is a weak enough argument. In the context of evaluating claims involving fundamental rights (like reproductive rights) it must be supported by evidence in the District Court.

### 1. The 500-Foot Rule Burdens the Second Amendment.

Under the two-step Second Amendment framework: (1) the trial court asks whether the challenged law burdens conduct protected by the amendment, and (2) if so, the court determines whether the law meets the appropriate level of scrutiny. See *Chovan*, 735 F.3d at 1136-38; see also *National Rifle Ass'n of Am. v. Bureau of Alochol, Tobacco, Firearms and Explosives*, 700 F.3d 185, 194-95 (5th Cir. 2012) ("N.R.A."); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010).

The first step is a historical inquiry into the scope of the right to keep and bear arms at the time of ratification.  *See: Chovan*, 735 F.3d at 1137 *Chester*, 628 F.3d at 680; *N.R.A.*, 700 F.3d at 194; and *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011). If a law burdens conduct outside of the amendment's scope, the analysis ends, there is no violation.  See *N.R.A.*, 700 F.3d at 195; *Ezell*, 651 F.3d at 703.

The District Court may have committed excusable error because *Chovan* was not the law of the Circuit when the FAC was dismissed. But the intervening change in the law absolutely compels a completely different analysis, and in all likelihood, a different result. *See generally: Agostini v. Felton*, 521 U.S. 203 (1997); *Kirkbride v. Continental Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991); and *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281-282 (9th Cir. 1996).

<u>2.   The 500-Foot Rule Fails the Second Part of the *Chovan* Test.</u>

As to the second step, rational basis review is forbidden.  *Heller*, 554 U.S. at 628 n.27; *Chovan*, 735 F.3d at 1137.  If a law burdens a right within the scope of the Second Amendment, either intermediate or strict scrutiny will be applied.  See *Chovan*, 735 F.3d at 1138; *N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d at 682. If "intermediate scrutiny"

applies that means: (1) the government's stated objective must be significant, substantial, or important, and (2) there is a reasonable fit between the challenged regulation and the government's asserted objective. *Chovan*, 735 F.3d at 1139-41; *N.R.A.*, 700 F.3d at 195; *Chester*, 628 F.3d at 683.

"Reasonable fit" means the regulation must not be substantially broader than necessary to achieve the government's interest. See *Reed v. Town of Gilbert*, 707 F.3d 1057, 1074 n16 (9th Cir. 2013); *Fantasyland Video, Inc. v. County of San Diego*, 505 F.3d 996, 1004 (9th Cir. 2007); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

The County has a split personality when it comes to analyzing this case. Its West County Board of Zoning Adjustment cleared the opening of Plaintiffs' gun store in its findings. [ER 178-183]. It did so after an exhaustive investigation by County staff, and the relevant departments and agencies regulating land use. That Board's reasoned approach took into account the fact that the only parcels disqualifying the proposed site of the gun store were residential properties just barely (mere feet) within the "500-Foot Rule."

Contrast this with the Board of Supervisor's summary reversal of those findings, with no new facts, except the appeals that were lodged

by the San Lorenzo Village Homes Assoc. [ER 48-49, FAC ¶¶ 50-56].
The appeals lodged by the homeowners' association cited no studies, no
evidence, no facts to suggest that Appellants' proposed gun store posed
a public safety risk. The association's objection was to people engaging
in commerce relating to firearms and ammunition at a local business.

This land-use version of a heckler's veto is not sanctioned in this
Circuit. *See Young v. City of Simi Valley*, 216 F.3d 807 (9th Cir. 2000)
Furthermore, *Young* is part of the line of cases holding that challenges
to zoning restrictions impacting fundamental rights are fact specific
and therefore driven by evidence when assessing primary or secondary
effects of particular land uses. *Id.*, at 818. *See also: Young v. American
Mini Theatres, Inc.*, 427 U.S. 50 (1976); *Schad v. Mt. Ephraim*, 452 U.S.
61 (1981); and *City of L.A. v. Alameda Books*, 535 U.S. 425 (2002); *City
of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986); *Barnes v. Glen
Theatre, Inc.,* 501 U.S. 560 (1991).

Interpreting *City of Los Angeles v. Alameda Books, Inc.*, (2002) 535
U.S. 425, the Seventh Circuit held

> [...] [B]ecause books (even of the "adult" variety)
> have a constitutional status different from granola
> and wine, and laws requiring the closure of
> bookstores at night and on Sunday are likely to
> curtail sales, the public benefits of the restrictions

> must be established by evidence, and not just asserted. [...] **[T]here must be evidence; lawyers' talk is insufficient**. (Emphasis added.)
>
> *Annex Books v. City of Indianapolis*,
> 581 F.3d 460, 463 (7th Cir. 2009)

This is the crux of the panel's order remanding the case to the District Court. It is simply not rational for the County to rely on the <u>residential</u> qualities of a structure to prohibit a gun store from opening within 500 feet. At a minimum, the core Second Amendment right protected, is possession of firearms in a residence. Given the number of firearms already owned in this country, if the mere presence of a firearm in a residence was *per se* dangerous, then houses closer to each other than 500 feet should be war zones. They are not.

The County's "500-Foot Rule" has no basis in fact or common sense. Firearms shoot further than 500 feet, even assuming the ordinance was crafted to mitigate negligent discharges. The Fire Department signed off on storage of combustible (gun powder) material and other fire hazards. [ER 153, 162, 164]. The Sheriff mandated security measures. [ER 167]. Even parking availability was addressed. [ER 125].

So why was an otherwise lawful business barred from opening in Alameda County? That allegation is in the Complaint. [ER 32, FAC ¶¶

7]. The Defendants find the products and services offered by that business repugnant. But this proposed business is not selling payroll advances, adult literature, massages, lottery tickets, liquor or cigarettes. They seek to engage in commerce essential for the exercise of a fundamental right. They seek to provide the arms that their customers want to "keep and bear" to exercise their own constitutional right of self-defense. *See generally Craig v. Boren,* 429 U.S. 190 (1976). *Cf., Isacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2013) for similar rationale as applied to reproductive rights.

<u>C. An Analysis Under theSecond Amendment Should Conform to the Same Evidentiary Requirements as Other Fundamental Rights.</u>

There is even fresh (non-Second Amendment) Supreme Court precedent to guide the District Court on remand. *Whole Woman's Health v. Hellerstedt*, ___ U.S. ___, 136 S.Ct. 2292 (June 27, 2016). This case looked at similar issues presented by Alameda's 500-Foot land use rule, albeit in the context of a facility regulatory scheme that imposes an undue burden on a different fundamental right. The procedural history of *Whole Woman's Health* even mirrors this case. Multiple proceedings in the District Court were necessary to fully develop the factual record. *Id.*, at 2300 *et seq.*

The factual record developed in *Whole Woman's Health* included at least fifteen (15) distinct data points as diverse as:

1.  The number of persons exercising the right within a given geographical area.

2.  The frequency and rate of the right being exercised.

3.  Fluctuations in the number of licensed facilities.

4.  Whether the challenged regulation diminished or reduced the number of licensed facilities.

5.  Whether the facilities were clustered around population centers.

6.  Whether diminution in the number of facilities would impact the quality of services.

7.  Whether the number of providers in a given area can meet demand for services.

8.  The distances people must drive to secure services to exercise their rights.

9.  Whether the regulations erect a particularly high barrier for the poor, rural or disadvantaged.

10. Whether providers are already addressing public safety.

11. Whether service providers are more or less safe than other providers or businesses providing similar services.

12. Whether the regulation in question will actually result in lower risks.

13. Whether the regulation will improve outcomes when exercising the fundamental right in question.

14. Whether "grand-fathered" facilities provide greater risks or benefits than a facility required to comply.

15. The cost of compliance with the regulation.

*Id.*, 2301 – 2304. This kind, type and quality of data (evidence) was necessary to analyze the burden Texas was imposing on reproductive rights. That same analysis of regulations imposed on medical facilities and professionals is equally applicable to any licensed gun dealer assisting customers exercise their Second Amendment rights. *Cf., Isacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2013).

While the First Amendment is the established framework for adjudication of the Second Amendment, some courts find parallel lines of reasoning with the "undue burden" test as applied to reproductive rights. *Planned Parenthood of Wis., Inc. v. Schimel*, 806 F.3d 908, 918[7] (7th Cir. 2015). A road map for how the District Court should conduct a factual inquiry on remand can be cribbed from an abortion case out of the Middle District of Alabama. *Planned Parenthood Southwest, Inc. v. Strange,* 33 F. Supp. 3d 1330 (Ala. M. Dist. Ct. 2013) [cited favorably in *Whole Woman's Heath*, 136 S. Ct. at 2312].

---

[7] Citing *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) for the proposition that regulations forcing someone to travel to exercise a fundamental right is a burden on the right.

The FAC fairly alleges that the Alameda County "500 Foot Rule" is designed and intended, and will have the eventual effect through attrition of existing stores, of banning gun stores in Alameda County. Therefore, the same judicial skepticism toward regulations that burden reproductive rights should apply to Alameda's 500-Foot Rule.

Appellants should enjoy at least the same judicial scrutiny for opening a gun store in Alameda County that they would receive if they were seeking to open/maintain an abortion clinic in Alabama.

## IV.   CONCLUSION

The matter was correctly decided by the 3-judge panel. Reversal and remand is both prudent and justified by Supreme Court and Circuit precedent.  The petition for rehearing and/or rehearing *en banc* should be denied.

Respectfully Submitted on September 20, 2016.

  /s/   Donald Kilmer

Donald E. J. Kilmer, Jr.
CA State Bar No.: 179986
1645 Willow Street, Suite 150
San Jose, California 95125
Voice: 408/264-8489
Fax: 408/264-8487
Don@DKLawOffice.com

## NOTICE OF RELATED CASES

Plaintiff/Appellants are not aware of any pending cases in Northern District of California or the Ninth Circuit that could be related to this action.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Circuit because it consists of 4175 words and because this brief has been prepared in proportionally spaced typeface using WordPerfect Version X8 in Century Schoolbook 14 point font. Dated: September 20, 2016.

 /s/ Donald Kilmer

Donald Kilmer, Attorney for Appellants

## CERTIFICATE OF SERVICE

On September 20, 2016, I served the foregoing APPELLANTS' RESPONSE OPPOSING REHEARING AND/OR HEARING *EN BANC* by electronically filing it with the Court's ECF/CM system, which generated a Notice of Filing and effects service upon counsel for all parties in the case. I declare under penalty of perjury that the foregoing is true and correct. Executed September 20, 2016.

/s/ Donald Kilmer

Attorney for Appellants